**Filed Under Seal**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO:  11-_____ |
| v. | : | DATE FILED: |
| NORMAN M. WERTHER | : | VIOLATIONS: |
| WILLIAM STUKES, | | 21 U.S.C. § 846 (conspiracy to |
|    a/k/a "Derek Stukes," | : | distribute controlled substances – 1 |
|    a/k/a "Bones," | | count) |
|    a/k/a "Twin," | : | 21 U.S.C. § 841 (distribution of |
|    a/k/a "Shooter," | | controlled substances – 8 counts) |
|    a/k/a "Shotgun," | : | 21 U.S.C. § 841 (possession with the |
| GERALD BRINKLEY, | | intent to distribute controlled |
|    a/k/a "Muhammad," | : | substances – 10 counts) |
| IHSANULLAH MAAF, | | 18 U.S.C. § 1347 (health care fraud - |
|    a/k/a "Sean," | : | 240 counts) |
| RITA MYLES | | 18 U.S.C. § 1956(a)(1) (money |
| RASHIDA LYLES | : | laundering - 119 counts) |
| TINA WEISZ | | 31 U.S.C. § 5324(a)(1) (structuring |
| DARRAH ROBINSON | : | of financial transactions - 119 |
| HERBERT HUGHES, | | counts) |
|    a/k/a "Zack," | : | 31 U.S.C. § 5324(a)(1), (d)(2) |
| CARLOS RICHARDS | | (aggravated structuring of financial |
| WARREN JOHNSON, | : | transactions - 1 count) |
|    a/k/a "Anwar," | | 18 U.S.C. § 2 (aiding and abetting) |
| GREGORY JOHNSON, | : | Notices of forfeiture |
|    a/k/a "Quadire," | | |
| CLAUDE NOLAN, | : | |
|    a/k/a "Habeeb," | | |
| TIMOTHY PEDEN, | : | |
|    a/k/a "Lou," | | |
| DARRELL HENDRICKS | : | |
| TROY FLETCHER, | | |
|    a/k/a "James," | : | |
| CHRISTOPHER PIZZO, | | |
|    a/k/a "Jay," | : | |
| ATO STRONG, | | |
|    a/k/a "Toomey," | : | |
| SYLVESTER ADAMS, | | |
|    a/k/a "Link," | : | |
| JASON ROMM, | | |
|    a/k/a "Jay," | : | |

**JAMES LYLES,**                    :
        **a/k/a "Little,"**
**MICHAEL SANDERS,**                :
        **a/k/a "Kadeer,"**
**ZANIAH BEARD**                    :
**DONALD BROWN**
**KIM CARTER**                      :
**ANDRE DAWKINS**
**EVETTE GRINGROW**                 :
**LEON HARRIS**
**DENISE HAWKINS**                  :
**RONNIE JACKSON**
**CARLA JENKINS**                   :
**BEATRICE LEWIS**
**MICHAEL LITTLEJOHN**              :
**VERNELL MCDANIELS**
**ERIC PERRY**                      :
**MARK REID**
**MICHAEL ROMINIECKI**              :
**WAYNE RUCKER**
**PATRICIA SIMMONS**                :
**LAWRENCE STITH**
**DEBRA STUKES**                    :
**VIOLA STUKES**
**STEVEN THOMPSON**                 :
**ERIC TREADWELL**
**JULIA TURNER**                    :
**GERALDINE WATKINS**
**YOLANDA WILLIAMS**                :
**LAMONT BUTCHER**
**KHALIFF HEADEN**                  :
**SOPHIA HOLDER**
**LATOISHA JONES**                  :
**DAWN LITTLE**
**DEREK STUKES**                    :

2

# I N D I C T M E N T

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

## BACKGROUND

1.  Defendant NORMAN M. WERTHER is a physician licensed by the Commonwealth of Pennsylvania and held a Pennsylvania medical license as well as a Drug Enforcement Administration ("DEA") registration number, and conducted a practice out of an office located on Davisville Road in Willow Grove, Pennsylvania.

2.  Defendant IHSANULLAH MAAF, a/k/a "Sean," is a pharmacist licensed by the Commonwealth of Pennsylvania who holds DEA registration number FN0841418, and who owns and runs Northeast Pharmacy, located at 6730 Bustleton Avenue, in Philadelphia, Pennsylvania.

3.  The Controlled Substances Act governs the manufacture, distribution, and dispensing of controlled substances in the United States.  Under the Controlled Substances Act, there are five schedules of controlled substances – Schedules I, II, III, IV, and V.  Controlled substances are scheduled into these levels based upon their potential for abuse, among other things.  For example, abuse of Schedule II controlled substances may lead to severe psychological or physical dependence.  Abuse of Schedule III controlled substances may lead to moderate or low physical dependence or high psychological dependence.  Abuse of Schedule IV

3

controlled substances may lead to more limited physical dependence or psychological

dependence relative to the drugs or other substances in Schedule III.

       4.     Oxycodone is a narcotic analgesic that is similar to morphine and is

classified as a Schedule II controlled substance, frequently prescribed under the brand name

Oxycontin.  Oxycodone is used to treat severe pain, and, even if taken only in prescribed

amounts, can cause physical and psychological dependence when taken for a long time.

Oxycodone is used in pain relief drugs in varying strengths, including in .10, .30, .40, and .80

milligram amounts.  For example, Percocet is manufactured by numerous pharmaceutical

companies under the following brand names:  Endocet, Roxicet, Roxilox and Tylox.  Percocet,

which contains 10 milligrams of oxycodone, is used to treat moderate to moderately severe pain,

and contains two drugs, oxycodone and acetaminophen.  Even if taken only in prescribed

amounts, Percocet can cause physical and psychological dependence when taken for a long time.

Users who abuse pills containing oxycodone frequently do so by crushing the pills and snorting

the substance.  Based on the potential for abuse of the pills containing larger proportions of

oxycodone, that is, the pills containing .40 and .80 milligrams of oxycodone, in 2010

pharmaceutical manufacturers changed the formulation of pills containing .40 and larger

concentrations of oxycodone in order that the pills not be able to be abused as easily.

Manufacturers changed the formulation so that the time-release component of these pills was in a

gel formulation such that the pills could not be crushed, thereby reducing the ability of abusers to

abuse these pills.

       5.     Title 21, United States Code, Section 841(a) (1), provides that "[e]xcept as

authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally … manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance."

6.      Title 21, United States Code, Section 802(10), provides that the term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for delivery.

7.      Title 21, United States Code, Section 821, provides that "[t]he Attorney General [of the United States] is authorized to promulgate rules and regulations relating to the registration and control of the manufacture, distribution and dispensing of controlled substances."

8.      The Attorney General of the United States has exercised his rulemaking authority regarding the dispensing of controlled substances through the promulgation of 21 Code of Federal Regulations § 1306.04, governing the issuance of prescriptions, which provides, among other things, that a prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.  Moreover, an order purporting to be a prescription issued not in the usual course of professional treatment is not a prescription within the meaning and intent of section 309 of the Act [21 U.S.C. § 829] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances.

5

9.      The Pennsylvania Code of Professional and Vocational Standards, Title 49, Chapter 16.92, defines the authority of physicians licensed by the Commonwealth of Pennsylvania to prescribe or dispense controlled substances.  Chapter 16.92 provides in pertinent part:

(a)   A person licensed to practice medicine and surgery in this Commonwealth or otherwise licensed or regulated by the Board, when prescribing, administering or dispensing controlled substances, shall carry out, or cause to be carried out, the following minimum standards:

(1)      Initial medical history and physical examination....  [B]efore commencing treatment that involves prescribing, administering or dispensing a controlled substance, an initial medical history shall be taken and an initial examination shall be conducted unless emergency circumstances justify otherwise.  Alternatively, medical history and physical examination information recorded by another health care provider may be considered if the medical history was taken and the physical examination was conducted within the immediately preceding thirty days.  The physical examination shall include an evaluation of the heart, lungs, blood pressure and body functions that relate to the patient's specific complaint.

(2)      Reevaluations.  Among the factors to be considered in determining the number and the frequency of follow-up evaluations that should be recommended to the patient are the condition diagnosed, the controlled substance involved, expected results and possible side effects.  For chronic conditions, periodic follow-up evaluations shall be recommended to monitor the effectiveness of the controlled substance in achieving the intended results.

(3)      Patient counseling.  Appropriate counseling shall be given to the patient regarding the condition diagnosed and the controlled substance prescribed, administered or dispensed.  Unless the patient is in an inpatient care setting, the patient shall be specifically counseled about dosage levels, instructions for use, frequency and duration of use and possible side effects.

(4)      Medical Records.  [C]ertain information shall be recorded in the patient's medical record on each occasion when a controlled substance is prescribed, administered or dispensed.  This information shall include the name of the

6

controlled substance, its strength, the quantity and the date it was prescribed, administered or dispensed to a patient. The medical record shall also include a specification of the symptoms observed and reported, the diagnosis of the condition for which the controlled substance is being given and the directions given to the patient for the use of the controlled substance. If the same controlled substance continues to be prescribed, administered or dispensed, the medical record shall reflect changes in the symptoms observed and reported, in the diagnosis of the condition for which the controlled substance is being given and in the directions given to the patient.

10.     Accordingly, as a medical doctor, defendant NORMAN M. WERTHER was authorized to dispense to patients Schedules II controlled substances and to prescribe medicine to patients, including controlled substances, for legitimate medical purposes and in the usual course of professional practice.

11.     DEA regulations provide that pharmacists have a "corresponding responsibility" to ensure that a prescription that they fill was "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice" pursuant to 21 C.F.R. § 1306.04(a).

12.     With the assistance of NORMAN M. WERTHER's medical staff and others who procured and transported the so-called patients (hereinafter referred to as "pseudo-patients") to defendant WERTHER's office, the pseudo-patients paid an "office visit" fee to obtain prescriptions for controlled substances from defendant WERTHER without there being any medical necessity for these controlled substances. After obtaining the prescription, these pseudo-patients had the prescriptions filled at a pharmacy and then turned the narcotics over to another person for a fee; thereafter, the narcotics were sold to a drug dealer who trafficked in the controlled substances.

## THE CONSPIRACY

13.     From in or about September 2009 through the date of this indictment, in

the Eastern District of Pennsylvania, defendants

**NORMAN M. WERTHER,**
**WILLIAM STUKES,**
**a/k/a "Derek Stukes"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun,"**
**GERALD BRINKLEY,**
**a/k/a "Muhammad,"**
**IHSANULLAH MAAF,**
**a/k/a "Sean,"**
**RITA MYLES,**
**RASHIDA LYLES,**
**TINA WEISZ,**
**DARRAH ROBINSON,**
**HERBERT HUGHES,**
**a/k/a "Zack,"**
**CARLOS RICHARDS,**
**WARREN JOHNSON,**
**a/k/a "Anwar,"**
**GREGORY JOHNSON,**
**a/k/a "Quadire,"**
**CLAUDE NOLAN,**
**a/k/a "Habeeb,"**
**TIMOTHY PEDEN,**
**a/k/a "Lou,"**
**DARREL HENDRICKS,**
**TROY FLETCHER,**
**a/k/a "James,"**
**CHRISTOPHER PIZZO,**
**a/k/a "Jay,"**
**ATO STRONG,**
**a/k/a "Toomey,"**
**SYLVESTER ADAMS,**
**a/k/a "Link,"**
**JASON ROMM,**
**a/k/a "Jay,"**

8

**JAMES LYLES,**
**a/k/a "Little,"**
**MICHAEL SANDERS,**
**a/k/a "Kadeer,"**
**ZANIAH BEARD,**
**DONALD BROWN,**
**KIM CARTER,**
**ANDRE DAWKINS,**
**EVETTE GRINGROW,**
**LEON HARRIS,**
**DENISE HAWKINS,**
**RONNIE JACKSON,**
**CARLA JENKINS,**
**BEATRICE LEWIS,**
**MICHAEL LITTLEJOHN,**
**VERNELL MCDANIELS,**
**ERIC PERRY,**
**MARK REID,**
**MICHAEL ROMINIECKI,**
**WAYNE RUCKER,**
**PATRICIA SIMMONS,**
**LAWRENCE STITH,**
**DEBRA STUKES,**
**VIOLA STUKES,**
**STEVEN THOMPSON,**
**ERIC TREADWELL,**
**JULIA TURNER,**
**GERALDINE WATKINS,**
**YOLANDA WILLIAMS,**
**LAMONT BUTCHER,**
**KHALIFF HEADEN,**
**SOPHIA HOLDER,**
**LATOISHA JONES,**
**DAWN LITTLE, and**
**DEREK STUKES**

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and intentionally distribute a mixture and substance containing a detectable amount of

oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code,

Section 841(a)(1), (b)(1)(C).

## MANNER AND MEANS

It was part of the conspiracy that:

14.     Defendant NORMAN M. WERTHER is a physician licensed to practice medicine in the Commonwealth of Pennsylvania, and owns and operates his medical practice at 301 Davisville Road in Willow Grove, Pennsylvania 19090.   Defendant WERTHER issued prescriptions for Schedule II controlled substances containing oxycodone to pseudo-patients without any legitimate medical purpose, and in return received payments in cash or money orders, and in some cases, through health insurance, for the office visits by these pseudo-patients.

15.     Defendant WILLIAM STUKES, a/k/a "Derek Stukes," a/k/a "Bones," a/k/a "Twin," a/k/a "Shooter," arranged for pseudo-patients to go to defendant NORMAN M. WERTHER's office to claim a level of pain sufficient to obtain a prescription for controlled substances, specifically, pills containing oxycodone, a Schedule II controlled substance. Defendant W. STUKES arranged the transportation of the pseudo-patients to defendant WERTHER's office and then to a pharmacy to fill the prescriptions obtained from defendant WERTHER, whereupon the pseudo-patients turned over the controlled substances to one of defendant W. STUKES' workers.  Defendant W. STUKES paid the pseudo-patients a fee for participating in this criminal enterprise, paid the office visit charge at the doctor's office, and also paid for the prescription to be filled if the pseudo-patient did not use his/her own medical insurance to pay for the prescription.  Defendant W. STUKES gave directions to defendant WERTHER and his staff, defendants RITA MYLES, RASHIDA LYLES, and TINA WEISZ, about the handling of pseudo-patients he sent to the office; paid the physician's staff a fee; and gave directions to defendant IHSANULLAH MAAF, a/k/a "Sean," a pharmacist, about the

10

pseudo-patients that defendant W. STUKES directed to defendant MAAF's pharmacy.

Defendant W. STUKES then sold the controlled substances he obtained from the pseudo-patients

to drug dealers for a significant profit.

        16.    Defendants Gerald BRINKLEY, a/k/a "Muhammad," and DARRAH

ROBINSON worked with defendant WILLIAM STUKES to coordinate the transportation of

pseudo-patients to defendant NORMAN M. WERTHER's office to obtain prescriptions for

Schedule II narcotics, the payment of the pseudo-patients, the payment for and filling of the

pseudo-patients' prescriptions, and the sale of the narcotics obtained, and were paid for their

participation.

        17.    Defendant IHSANULLAH MAAF, a/k/a "Sean," is a licensed pharmacist

who owns and operates Northeast Pharmacy, located at 6730 Bustleton Avenue, Philadelphia,

PA.  Defendant MAAF purchased significant quantities of oxycodone products directly from a

pharmaceutical supply company and filled prescriptions of defendant W. STUKES' pseudo-

patients, well knowing that, once filled, the prescriptions were to be immediately turned over to

another person.  To attempt to hide his increased cash proceeds from the illegal dispensing of

these controlled substances to defendant W. STUKES' pseudo-patients, defendant MAAF

opened an array of bank accounts, structured the deposits so as to avoid the reporting

requirements, and purchased property in the names of others.

        18.    Defendants RITA MYLES, RASHIDA LYLES, and TINA WEISZ

worked at the practice of defendant NORMAN M. WERTHER.  They assisted in the scheduling

and rapid movement of defendant WILLIAM STUKES' pseudo-patients through defendant

WERTHER's office, provided what should have been private medical information about the

11

prescribing of narcotics to defendant W. STUKES' pseudo-patients to defendant W. STUKES when he requested it, and received an illegal fee from defendant W. STUKES, knowing that the pseudo-patients sent to defendant WERTHER's office by defendant W. STUKES were turning over their prescribed narcotics to defendant W. STUKES after their visits to defendant WERTHER's office.  Defendants MYLES, LYLES, and WEISZ coordinated with defendant W. STUKES and his people to prepare a daily list of which pseudo-patients would be seen on each day.  Defendants MYLES, LYLES, and WEISZ would confirm to pharmacies that the prescriptions for oxycodone pills for defendant W. STUKES' pseudo-patients were "valid" when pharmacies would call to verify the prescriptions issued by defendant WERTHER.

      19.     The pseudo-patients of defendant NORMAN M. WERTHER normally received only a cursory physical examination but no other medical care or treatment from defendant WERTHER before obtaining a prescription for controlled substances from defendant WERTHER.

      20.     Defendants HERBERT HUGHES, a/k/a "Zack," CARLOS RICHARDS, WARREN JOHNSON, a/k/a "Anwar," GREGORY JOHNSON, a/k/a "Quadire," CLAUDE NOLAN, a/k/a "Habeeb," TIMOTHY PEDEN, a/k/a "Lou, and DARRELL HENDRICKS were drivers who were directed, and paid, by defendants WILLIAM STUKES and GERALD BRINKLEY to transport pseudo-patients from their homes in the Philadelphia area to the office of defendant NORMAN M. WERTHER.  Defendants HUGHES, RICHARDS, W. JOHNSON, G. JOHNSON, NOLAN, PEDEN, and HENDRICKS drove the pseudo-patients to the doctor's office, frequently in vehicles provided by defendant W. STUKES.  The defendant drivers also paid the "office visit" fees of each pseudo-patient, usually $150 per pseudo-patient, to a member

of the office staff with money orders that were purchased in advance with funds provided by W. STUKES.  After the prescriptions were obtained by pseudo-patients from defendant WERTHER, the drivers then transported the pseudo-patients to various pharmacies to have the prescriptions filled, and once filled, collected all of the controlled substances, paid each pseudo-patient with funds provided in advance by defendant W. STUKES, and transported the pseudo-patients back to Philadelphia.  Defendants HUGHES, RICHARDS, W. JOHNSON, G. JOHNSON, NOLAN, PEDEN, and HENDRICKS then turned over the controlled substances to defendants W. STUKES or BRINKLEY, depending upon the type of narcotics.

21.     Defendants TROY FLETCHER, CHRISTOPHER PIZZO, ATO STRONG, a/k/a "Toomey," SYLVESTER ADAMS, a/k/a "Link," JASON ROMM, a/k/a "Jay," JAMES LYLES, a/k/a "Little," MICHAEL SANDERS, a/k/a "Kadeer," were drug dealers who purchased large amounts of the prescribed controlled substances from defendants WILLIAM STUKES and GERALD BRINKLEY for illegal resale.

22.     The defendants referred to pills containing eighty milligrams of oxycodone as "80's" and "big boys," referred to pills containing thirty milligrams of oxycodone as "30's;" and "O's," and "the big ones," and referred to pills containing ten milligrams of oxycodone as "10's," "percs" "bananas," "yellows," and "buses."   The "30's" were more highly valued by these defendants and in more demand by drug dealers.

23.     Defendants ZANIAH BEARD, DONALD BROWN, KIM CARTER, ANDRE DAWKINS, EVETTE GRINGROW, LEON HARRIS, DENISE HAWKINS, RONNIE JACKSON, CARLA JENKINS, BEATRICE LEWIS, MICHAEL LITTLEJOHN, VERNELL MCDANIELS, ERIC PERRY, MARK REID, MICHAEL ROMINIECKI, WAYNE RUCKER,

PATRICIA SIMMONS, LAWRENCE STITH, DEBRA STUKES,VIOLA STUKES, STEVEN

THOMPSON, ERIC TREADWELL, JULIA TURNER, GERALDINE WATKINS, YOLANDA

WILLIAMS, LAMONT BUTCHER, KHALIEF HEADEN, SOPHIA HOLDER, LATOISHA

JONES, DAWN LITTLE, and DEREK STUKES were pseudo-patients of defendant NORMAN

M. WERTHER, who, without any medical reason or necessity and for the sole purpose of aiding

the objectives of this drug trafficking conspiracy, obtained prescriptions for controlled

substances, filled those prescriptions, (using their health care benefit plans to do so if they were

covered by insurance), and then turned over the controlled substances to defendants W. STUKES

and BRINKLEY or their representative, all in return for a fee.

      24.    Some of the defendants procuring drugs for resale from the pseudo-

patients were themselves pseudo-patients at defendant NORMAN M. WERTHER's office, who,

without any medical reason or necessity and for the sole purpose of aiding the objectives of this

drug trafficking conspiracy, obtained prescriptions for controlled substances, including

defendants WILLIAM STUKES, RASHIDA LYLES, DARRAH ROBINSON, HERBERT

HUGHES, CARLOS RICHARDS, GREGORY JOHNSON, CLAUDE NOLAN, and DARRELL

HENDRICKS.

      25.    The defendants unlawfully acquired and distributed over 200,000 pills

containing oxycodone.

## OVERT ACTS

      In furtherance of the conspiracy and to accomplish its objects, defendants

NORMAN M. WERTHER, WILLIAM STUKES, a/k/a "Derek Stukes," a/k/a "Bones," a/k/a

"Twin," a/k/a "Shooter," a/k/a "Shotgun," GERALD BRINKLEY, a/k/a "Muhammad,"

IHSANULLAH MAAF, a/k/a "Sean," RITA MYLES, RASHIDA LYLES, TINA WEISZ,

DARRAH ROBINSON, HERBERT HUGHES, a/k/a "Zack," CARLOS RICHARDS,

WARREN JOHNSON, a/k/a "Anwar," GREGORY JOHNSON, a/k/a "Quadire," CLAUDE

NOLAN, a/k/a "Habeeb," TIMOTHY PEDEN, a/k/a "Lou," DARRELL HENDRICKS, TROY

FLETCHER, CHRISTOPHER PIZZO, a/k/a "Jay," ATO STRONG, a/k/a "Toomey,"

SYLVESTER ADAMS, a/k/a "Link," JASON ROMM, a/k/a "Jay," JAMES LYLES, a/k/a

"Little," MICHAEL SANDERS, a/k/a "Kadeer," ZANIAH BEARD, DONALD BROWN, KIM

CARTER, ANDRE DAWKINS, EVETTE GRINGROW, LEON HARRIS, DENISE

HAWKINS, RONNIE JACKSON, CARLA JENKINS, BEATRICE LEWIS, MICHAEL

LITTLEJOHN, VERNELL MCDANIELS, ERIC PERRY, MARK REID, MICHAEL

ROMINIECKI, WAYNE RUCKER, PATRICIA SIMMONS, LAWRENCE STITH, DEBRA

STUKES, VIOLA STUKES, STEVEN THOMPSON, ERIC TREADWELL, JULIA TURNER,

GERALDine WATKINS, YOLANDA WILLIAMS, LAMONT BUTCHER, KHALIEF

HEADEN, SOPHIA HOLDER, LATOISHA JONES, DAWN LITTLE, and DEREK STUKES

committed the following overt acts, among others, in the Eastern District of Pennsylvania:

On or about September 20, 2010:

1.     Defendant HERBERT HUGHES transported six pseudo-patients to the

office of  Defendant NORMAN M. WERTHER on Davisville Road in Willow Grove,

Pennsylvania, in order to facilitate the pseudo-patients receiving a prescription for controlled

substances, specifically pills containing oxycodone.  One of the pseudo-patients was defendant

ERIC TREADWELL.

2.      Defendant HERBERT HUGHES purchased money orders in the amount of $150.00 at a 7-Eleven convenience store in Willow Grove to use as payment for the pseudo-patients' office visit fees, and turned the money orders over to the office staff.

3.      Once their visits were concluded and each pseudo-patient received a prescription, defendant HERBERT HUGHES transported them to various pharmacies, including Northeast Pharmacy, to fill their prescriptions.

4.      Defendant HERBERT HUGHES took the prescriptions of three of the pseudo-patients into Northeast Pharmacy where defendant IHSANULLAH MAAF filled the prescriptions and gave the narcotics to defendant HUGHES.

5.      Defendant HERBERT HUGHES collected the prescribed narcotics from the pseudo-patients, including defendant ERIC TREADWELL, and later gave them to defendant WILLIAM STUKES.

6.      On or about October 19, 2010, defendant WILLIAM STUKES instructed a person cooperating with law enforcement, (hereinafter "CW"), to make sure that CW gets only 30 milligram oxycodone pills from  Defendant NORMAN M. WERTHER.

On or about October 20, 1010:

7.      Defendant HERBERT HUGHES picked up and drove six pseudo-patients in a Chevrolet Suburban registered to defendant WILLIAM STUKES to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

16

8.      Defendant HERBERT HUGHES transported the pseudo-patients to a pharmacy in the 1700 block of Cottman Avenue to fill the pseudo-patients' prescriptions.

9.      Defendant HERBERT HUGHES collected the prescribed narcotics from the pseudo-patients and drove to meet defendant GERALD BRINKLEY.  Defendant HUGHES gave the narcotics obtained from the pseudo-patients to defendant BRINKLEY.

10.     Defendant GERALD BRINKLEY paid the pseudo-patients a cash fee.

11.     On or about November 19, 2010, defendant WILLIAM STUKES discussed CW's next visit to defendant NORMAN M. WERTHER with CW and defendant W. STUKES advised CW that he would pay him/her $400 for his/her filled prescription, just as he/she had been paid for his/her previous visit to the doctor.

        On or about November 22, 2010:

12.     Defendant HERBERT HUGHES picked up and drove six pseudo-patients in a Chevrolet Suburban registered to defendant WILLIAM STUKES to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.  One of the pseudo-patients was defendant ERIC TREADWELL.

13.     Defendant CARLOS RICHARDS picked up and drove three pseudo-patients in a Nissan Maxima to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

17

14.     Defendant HERBERT HUGHES purchased money orders in the amount of $150.00 at a Giant Food Supermarket in Willow Grove to use as payment for the pseudo-patients' office visit fees.

15.     Defendant CARLOS RICHARDS transported four pseudo-patients, including one who had been driven to the office of defendant NORMAN M. WERTHER by defendant HERBERT HUGHES, to a pharmacy in the 1700 block of Cottman Avenue to fill the pseudo-patients' prescriptions.

16.     Defendant CARLOS RICHARDS collected the prescribed narcotics from the four pseudo-patients.

17.     Defendant HERBERT HUGHES transported five pseudo-patients to a pharmacy in the 1700 block of Cottman Avenue to fill the pseudo-patients' prescriptions.

18.     Defendant HERBERT HUGHES collected the prescribed narcotics from the five pseudo-patients, including defendant ERIC TREADWELL.

19.     When driving back the pseudo-patients, defendant HERBERT HUGHES called defendant GERALD BRINKLEY to advise defendant BRINKLEY of the amount of oxycodone and Percocet pills that defendant HUGHES had obtained.  Defendant HUGHES also advised defendant BRINKLEY that he thought he was being followed, and defendant HUGHES took evasive driving measures to try to avoid surveillance.

20.     Defendant WILLIAM STUKES met defendant HERBERT HUGHES' vehicle in the area of 29th and York Streets and defendant W. STUKES paid the pseudo-patients a cash fee.

On or about December 20, 2010:

21.     Defendant WILLIAM STUKES authorized the addition of a psuedo-patient to defendant NORMAN M. WERTHER's patient schedule for this day.

22.     Defendant WARREN JOHNSON picked up and drove five pseudo-patients in a Chevy Tahoe to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

23.     Defendant WARREN JOHNSON transported the pseudo-patients to various pharmacies, including a Pathmark, a Target, and a pharmacy at Broad Street and Lehigh Avenue in Philadelphia, to fill the pseudo-patients' prescriptions.

24.     Defendant GERALD BRINKLEY was in the area of 25th Street and Lehigh Avenue in Philadelphia.

25.     Defendant GERALD BRINKLEY and defendant WARREN JOHNSON discussed money payments over the telephone.

26.     Minutes after defendant GERALD BRINKLEY was in the area of 25th Street and Lehigh Avenue, defendant HERBERT HUGHES stopped on the side of the road in the area of 25th Street and Lehigh Avenue in Philadelphia.  Defendant HUGHES met with defendant W. JOHNSON, and both defendants W. JOHNSON and HUGHES collected the prescribed narcotics from the pseudo-patients.  Defendant HUGHES then paid each of the pseudo-patients a cash fee.

19

On or about January 15, 2011:

27.     Defendant CLAUDE NOLAN picked up and drove two pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

28.     Defendant CLAUDE NOLAN transported the pseudo-patients to various pharmacies, including Northeast Pharmacy to fill the pseudo-patients' prescriptions.

29.     Defendant WILLIAM STUKES called Northeast Pharmacy to speak to defendant IHSANULLAH MAAF and, when he was not able to come to the phone, defendant W. STUKES told the person on the phone to tell defendant MAAF that defendant W. STUKES "got one coming in and I'll take care of him later," referring to defendant W. STUKES paying defendant MAAF for the prescription of one of defendant W. STUKES' pseudo-patients.

30.     Defendant WILLIAM STUKES spoke to defendant IHSANULLAH MAAF and instructed defendant MAAF to check his database regarding one of his pseudo-patients, defendant LAMONT BUTCHER, then asked defendant MAAF if defendant MAAF could prepare defendant BUTCHER's prescription because "we on our way."  Defendant MAAF responded, "OK, I will have it counted out."

On or January 17, 2011:

31.     Defendant RITA MYLES provided information to defendant WILLIAM STUKES about how many "oxys" (oxycodone) were prescribed to a pseudo-patient that defendant W. STUKES had sent to defendant NORMAN M. WERTHER's office that day.

32.     Defendant WILLIAM STUKES traveled to defendant ATO STRONG's block and delivered 510 pills containing oxycodone to defendant STRONG, although defendant W. STUKES represented to defendant STRONG that he was delivering 530 pills.

33.     After the transaction described above in Overt Act 32, defendant ATO STRONG called defendant WILLIAM STUKES to tell him that the pills were "twenty short." Defendant W. STUKES said he would check to "see if someone got a 100 instead of a 120." Defendant W. STUKES called defendant STRONG back to report that defendant STRONG "was right...one person got a hundred so I owe you twenty."

34.     On or about January 18, 2010, defendant WILLIAM STUKES called defendant STRONG to report that "I got 195 you pay for 175," referring to 195 pills containing oxycodone and referencing the fact that defendant W. STUKES owed defendant STRONG twenty as a result of being "short" the day before.   Defendant STRONG told defendant W. STUKES that he would take the 195 pills but that he "needed more."

On or January 17, 2011:

35.     Defendant WILLIAM STUKES called the office of defendant NORMAN M. WERTHER and spoke to defendant RITA MYLES about a patient "PM," known to the grand jury, who had been giving defendant MYLES trouble.  Defendant MYLES asked defendant W. STUKES, "So what are we doing with him?" and defendant W. STUKES replied, "He's done." Defendant MYLES then told defendant W. STUKES that she needed defendant W. STUKES "to do a little influence.  I need you to call and talk to the doctor."

36.     Defendant WILLIAM STUKES spoke to defendant NORMAN M. WERTHER on the phone.  Defendant W. STUKES told defendant WERTHER that patient

"PM" was a "bad seed."  When defendant WERTHER asked why, defendant W. STUKES told

him "because I got some bad info on that he you know doin' a little business."   Defendant

WERTHER replied "OK, well we'll stop that."  Defendant W. STUKES told defendant

WERTHER that "PM" was involving other people and "messin' with Rita you know what I

mean and I don't play that at all."  Defendant WERTHER said "OK, well he's gone" and that he

"appreciate[d] it."

On or about January 19, 2011:

37.     Defendant HERBERT HUGHES picked up and drove three pseudo-

patients in a Dodge Durango, registered in defendant HUGHES' name, to the office of defendant

NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to

facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing

oxycodone.

38.     Defendant WILLIAM STUKES called defendant RITA MYLES at the

doctor's office and told her that "he on his way.  He got money for everybody."  Defendant

MYLES assured defendant W. STUKES that everything would go okay, and defendant W.

STUKES told defendant MYLES that there would be an "extra bean," referring to $100, for her.

39.     Defendant HERBERT HUGHES transported the pseudo-patients to a

number of pharmacies, including ones at a Giant, a Pathmark, at Broad Street and Lehigh Avenue

in Philadelphia, and Northeast Pharmacy, to fill the pseudo-patients' prescriptions.

40.     Defendant HERBERT HUGHES collected the prescribed narcotics from

the pseudo-patients and paid them a cash fee.

22

41.     Defendant WILLIAM STUKES called defendant ATO STRONG to tell STRONG that he had "260," referring to 260 pills containing oxycodone, and that he would send one of his people to deliver them to defendant STRONG at 32nd and Huntington Streets.

On or about January 20, 2011:

42.     Defendant WILLIAM STUKES called the office of defendant NORMAN M. WERTHER and spoke to defendant RASHIDA LYLES about one of defendant W. STUKES' pseudo-patients, "R," known to the grand jury.  Defendant W. STUKES instructed defendant LYLES to get "R" to go "back and see" defendant WERTHER and "try to get that changed," referring to changing "R's" prescription.  Defendant LYLES responded that she would see if "R" was outside and would do that for defendant W. STUKES.

43.     Defendant WILLIAM STUKES called defendant IHSANULLAH MAAF to discuss how much money defendant defendant W. STUKES owed defendant MAAF. Defendant MAAF advised defendant W. STUKES that "Zack owes $210," (referring to defendant HERBERT HUGHES).  Defendant W. STUKES told defendant MAAF that he would send defendant MAAF the money today.

On or about January 22, 2011:

44.     Defendant WILLIAM STUKES called defendant NORMAN M. WERTHER's office and spoke to defendant TINA WEISZ, asked if pseudo-patient "Lenore," known to the grand jury, was on the list and then asked defendant WEISZ to check the patient chart for the pseudo-patient's address.

45.     Defendant CLAUDE NOLAN picked up and drove one pseudo-patient to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove,

Pennsylvania, in order to facilitate the pseudo-patient receiving a prescription for narcotics, specifically pills containing oxycodone.

46.     Defendant CLAUDE NOLAN transported the pseudo-patient to various pharmacies to fill the pseudo-patient's prescriptions for both 30 milligram oxycodone pills and 10 milligram oxycodone pills.

47.     Per instructions from defendant WILLIAM STUKES, defendant CLAUDE NOLAN paid the pseudo-patient $200 and then delivered the pills to defendant HERBERT HUGHES.

On or about January 24, 2011:

48.     Defendant WILLIAM STUKES called defendant RITA MYLES to discuss what pseudo-patients of defendant W. STUKES were on the schedule for that day and for the next day.  Defendant MYLES recommended that defendant W. STUKES bring "a new," referring to a new pseudo-patient, since he only had four on the schedule for that day.

49.     Defendant WILLIAM STUKES called a pseudo-patient, A.B., known to the grand jury, to advise her that he had "a spot for your mom" this morning and to "tell her it's very important to get them 30s," referring to pills containing 30 milligrams of oxycodone.

50.     Defendant WILLIAM STUKES called defendant RITA MYLES to advise her that "CARLOS (referring to defendant CARLOS RICHARDS) is gonna bring three early," one of which is "a new."

51.     Defendant RITA MYLES called defendant WILLIAM STUKES to advise that none of his people were at the doctor's office yet; defendant W. STUKES advised her that he had "two sets" on their way.

24

52.    Defendant CARLOS RICHARDS picked up and drove three pseudo-patients in a sport utility vehicle to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

53.    Defendant CARLOS RICHARDS called defendant WILLIAM STUKES to discuss what pharmacies to go to while he was driving pseudo-patients to fill their prescriptions.  Defendant W. STUKES spoke to a pseudo-patient, unknown to the grand jury, to tell her to go back into Northeast Pharmacy to get her prescription filled because "Sean is my people.  That pharmacy is my pharmacy."

54.    Defendant WILLIAM STUKES met defendant ATO STRONG in the area of 32nd Street and Huntingdon Avenue in Philadelphia and distributed approximately 234 pills containing oxycodone to defendant STRONG for resale to others.

55.    Defendant RITA MYLES called defendant WILLIAM STUKES to report that pseudo-patient H.D., known to the grand jury, had come into the office by himself and that defendant MYLES wanted to check with defendant W. STUKES to see if H.D. "was yours." Defendant W. STUKES replied that H.D. was not supposed to come by himself, "somebody tried to sneak by the bleachers" and "he's gone," meaning H.D. went to defendant WERTHER's on his own without defendant W. STUKES' permission and H.D. would no longer be able to see defendant WERTHER.

56.    Defendant WILLIAM STUKES called defendant DEREK STUKES to arrange defendant DEREK STUKES' visit to defendant WERTHER as a pseudo patient. Defendant W. STUKES told defendant DEREK STUKES he was supposed to "go on Saturday,"

25

to defendant WERTHER's office.  Defendant W. STUKES told defendant DEREK STUKES that "the schedule" had defendant DEREK STUKES going on Wednesday and that defendant W. STUKES will send "Zack" (defendant HERBERT HUGHES) to pick up defendant DEREK STUKES tomorrow at defendant DEREK STUKES' residence.

57.     On or about January 25, 2011, defendant DEREK STUKES called defendant WILLIAM STUKES and told defendant W. STUKES that "they" (defendant DEREK STUKES and other pseudo-patients) were at "Sean's" (defendant IHSANULLAH MAAF's Northeast Pharmacy).  Defendant W. STUKES told defendant DEREK STUKES that he was on his way "out" and that defendant W. STUKES would meet with defendant DEREK STUKES to collect their pills and pay defendant DEREK STUKES and the other pseudo-patients for their services.

On or about January 27, 2011:

58.     Defendant WILLIAM STUKES called defendant DARRELL HENDRICKS and gave defendant HENDRICKS instructions on which pseudo-patients defendant HENDRICKS was to drive to defendant NORMAN M. WERTHER's office that day.

59.     Defendant DARRELL HENDRICKS picked up and drove two pseudo-patients to the office of defendant  Defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

60.     Defendant DARRELL HENDRICKS transported the pseudo-patients to pharmacies at a Pathmark and then a Target store to fill the pseudo-patients' prescriptions.

61.     Defendant DARRELL HENDRICKS collected the prescribed narcotics from the pseudo-patients and paid the pseudo-patients a cash fee.

On or about February 1, 2011:

62.     Defendant WILLIAM STUKES called the office of defendant WERTHER and spoke to Ellen Werther, the wife of defendant WERTHER, who works at the doctor's office. Defendant W. STUKES told her that "I got two people coming" and that he would "send up their money orders tomorrow."   Defendant W. STUKES also asked her to give to pseudo-patient defendant MARK REID a letter that W. STUKES said he needed to get for his wife to give to her employer when she returned to work the next day.

63.     Defendant WILLIAM STUKES called defendant MAAF to instruct defendant MAAF that the money he had left there could be used to pay for the prescription of S.F., a pseudo-patient that defendant W. STUKES was sending to defendant MAAF later that day.

64.     On or about February 2, 2011, defendant WILLIAM STUKES called defendant DAWN LITTLE, and defendant LITTLE told defendant W. STUKES that someone called her about an appointment.  Defendant W. STUKES told defendant LITTLE, "you belong to me," and to "tell them you are unavailable."

65.     On or about February 3, 2011, defendant W. STUKES called defendant CARLOS RICHARDS.  Defendant RICHARDS told defendant W. STUKES that he was on his way to see "Sean" (defendant IHSANULLAH MAAF).  Defendant W. STUKES told defendant RICHARDS that he, might leave the "money" at the "barber shop," and asked defendant RICHARDS for a pseudo patient's name.  Defendant RICHARDS told defendant W. STUKES

that her name "is DAWN LITTLE."  In a subsequent call, defendant W. STUKES called and spoke with an employee at Northeast Pharmacy.  Defendant W. STUKES told the employee, "Um, a DAWN LITTLE is coming, tell him I'll take care of him later for that."

66.     On or about February 4, 2011, defendant WILLIAM STUKES called defendant IHSANULLAH MAAF to ask if defendant W. STUKES owed defendant MAAF any money.  Defendant MAAF replied that "Carlos brought that 120 in so we are clean, there's nothing owed here" (referring to defendant CARLOS RICHARDS).  When defendant W. STUKES told defendant MAAF that his nephew would be coming in, defendant MAAF responded that "your nephew is here" [referring to pseudo-patient KHALIEF HEADON]. Defendant W. STUKES asked how much it was, defendant MAAF responded "105," and defendant W. STUKES replied that "we will pick that up shortly."

On or about February 9, 2011:

67.     Defendant JASON ROMM possessed approximately 1268 pills containing 10 milligrams of oxycodone and 155 pills containing 30 milligrams of oxycodone, many still in prescription bottles with defendant NORMAN M. WERTHER as the prescribing doctor, that were obtained through the pseudo-patients brought to defendant WERTHER and whose pills were purchased from the pseudo-patients by defendants WILLIAM STUKES and GERALD BRINKLEY.

68.     Defendant RASHIDA LYLES called defendant WILLIAM STUKES to advise him that defendant ROMM had been arrested with pills from some of their pseudo-patients.  Defendant LYLES told defendant W. STUKES that they should stop using a certain pharmacist.

28

69.     On or about February 10, 2011, defendant RASHIDA LYLES put a "discharge letter" in defendant JASON ROMM's file at defendant NORMAN M. WERTHER's office, so that defendant ROMM could no longer be seen as a pseudo-patient and obtain narcotics from defendant WERTHER.

On or about February 11, 2011:

70.     Defendant DARRAH ROBINSON transported eight pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

71.     Defendant DARRAH ROBINSON drove the pseudo-patients to pharmacies to fill their prescriptions and then retrieved from the pseudo-patients their filled prescriptions for oxycodone.  Defendant ROBINSON called defendant WILLIAM STUKES to tell him that her "team" had finished and gotten approximately 630 pills containing oxycodone.

72.     Defendant WILLIAM STUKES called and spoke to defendant SYLVESTER ADAMS and discussed selling defendant ADAMS 630 pills, each containing 30 milligrams of oxycodone.

73.     Defendant WILLIAM STUKES directed defendant DARRAH ROBINSON to deliver 630 pills, each containing 30 milligrams of oxycodone to defendant SYLVESTER ADAMS.

74.     Defendant DARRAH ROBINSON drove to the area of 24th and Lehigh Streets to meet defendant SYLVESTER ADAMS, got into defendant ADAMS' vehicle, and delivered 630 pills, each containing 30 milligrams of oxycodone, to defendant ADAMS.

75.     Defendant SYLVESTER ADAMS took possession of the 630 pills, each containing 30 milligrams of oxycodone, and called defendant WILLIAM STUKES to advise him that everything went smoothly.  In that conversation, defendant ADAMS asked defendant W. STUKES if he would have more pills later that day.

76.     Defendant WILLIAM STUKES called and spoke to defendant SYLVESTER ADAMS and told him that he had another 360 pills to sell to defendant ADAMS.

77.     Defendant HERBERT HUGHES drove in a Chevrolet Suburban to the area of 24th and Lehigh Streets to meet defendant SYLVESTER ADAMS and delivered 360 pills, each containing 30 milligrams of oxycodone, to defendant ADAMS.

78.     Defendant ADAMS took possession of the 360 pills, each containing 30 milligrams of oxycodone and again called defendant WILLIAM STUKES to advise him that everything went smoothly and that defendant HERBERT HUGHES had told him that he may have more tomorrow.

On or about February 12, 2011:

79.     Defendant NOLAN picked up and drove two pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

80.     Defendant WILLIAM STUKES called the doctor's office and spoke to defendant NORMAN M. WERTHER.  Defendant WERTHER told defendant W. STUKES that the office was closed and everyone had left.  Defendant W. STUKES told defendant WERTHER

that "he two seconds away" and defendant WERTHER agreed to open the office back up:
"Alright I'll come down and open the door for him."

81.     Defendant CLAUDE NOLAN called defendant WILLIAM STUKES
while he was at the doctor's office to discuss the prescription that one of the pseudo-patients he
had brought to the doctor should receive.  Defendant NOLAN told defendant W. STUKES that
he will tell the pseudo-patient to "get the 30's," referring to 30 milligram oxycodone pills.

82.     Defendant CLAUDE NOLAN transported the pseudo-patients to various
pharmacies, including Northeast Pharmacy to fill the pseudo-patients' prescriptions.

On or about February 24, 2011:

83.     Defendant CARLOS RICHARDS picked up and drove two pseudo-
patients in a Chevrolet Suburban registered to defendant WILLIAM STUKES to the office of
defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in
order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills
containing oxycodone.

84.     Defendant CARLOS RICHARDS transported the pseudo-patients to a
pharmacy in the 4000 block of Ridge Avenue to fill the pseudo-patients' prescriptions.

85.     Defendant CARLOS RICHARDS collected the prescribed narcotics from
the pseudo-patients.  Defendant CARLOS RICHARDS gave the narcotics obtained from the
pseudo-patients to defendant WILLIAM STUKES.

86.     Defendant CARLOS RICHARDS paid the pseudo-patients a cash fee.

On or about March 2, 2011:

87.     Defendant TINA WEISZ provided information from a pseudo-patient's file to defendant WILLIAM STUKES about what was prescribed to a pseudo-patient that W. STUKES had sent to defendant NORMAN M. WERTHER's office that day.

88.     Defendant WILLIAM STUKES called defendant IHSANULLAH MAAF to advise defendant MAAF that defendant DARRAH ROBINSON was coming to Northeast Pharmacy to pay for a prescription of a pseudo-patient that defendant W. STUKES had sent to defendant MAAF earlier that day.  Defendant W. STUKES told defendant MAAF that he "owes" defendant MAAF and that defendant ROBINSON would also have pseudo patient B.R., known to the grand jury, and would pay for her.

89.     Defendant WILLIAM STUKES called Northeast Pharmacy to check "how many" D.F., a pseudo-patient known to the grand jury that defendant W. STUKES had sent to defendant MAAF, had received, "120 or 150?"  The clerk on the phone responded that she could not give defendant W. STUKES that information and he would have to speak to defendant MAAF.

On or about March 3, 2011:

90.     Defendant WILLIAM STUKES and defendant GERALD BRINKLEY discussed via phone what pseudo-patients were scheduled that day for their visit to defendant NORMAN M. WERTHER.  Defendant W. STUKES told defendant BRINKLEY that they needed to do at least five or six people every day.   The two discussed sending a "new" (referring to a new pseudo-patient) that defendant BRINKLEY had recruited.

91.     Defendant GERALD BRINKLEY provided defendant WARREN JOHNSON with information on what pseudo-patients W. JOHNSON was to transport to the doctor's office that morning.

92.     Defendant WILLIAM STUKES called defendant RITA MYLES and asked her if he could send one "new" (referring to a new pseudo-patient recruited by the group) to defendant NORMAN M. WERTHER's office.  Defendant MYLES told him he could.

93.      Defendant WARREN JOHNSON transported four pseudo-patients, including the "new" pseudo-patient, in a Chevrolet Tahoe to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

94.     After their visit to defendant NORMAN M. WERTHER, defendant WARREN JOHNSON drove the pseudo-patients to two pharmacies, Northeast Pharmacy and a pharmacy in the 6200 block of Bustleton Avenue, where he dropped off two pseudo-patients at each to get their prescriptions for oxycodone filled.

95.     Defendant IHSANULLAH MAAF filled the prescriptions of two of defendant WILLIAM STUKES' pseudo-patients for pills containing oxycodone.

96.     Defendant GERALD BRINKLEY called defendant CHRISTOPHER PIZZO to ask if defendant PIZZO wanted to "do something" that day, referring to purchasing pills containing oxycodone.  Defendants PIZZO and BRINKLEY agreed to meet at 11:30 a.m. regarding "600," referring to the sale of 600 pills containing oxycodone by defendant BRINKLEY to defendant PIZZO.

33

97.     Defendant GERALD BRINKLEY called defendant CHRISTOPHER PIZZO to move back the meeting time because he (BRINKLEY) had to first go to "Sean's," referring to defendant IHSANULLAH MAAF at Northeast Pharmacy.

98.     Defendant GERALD BRINKLEY drove to the area of  St. Vincent and Leonard Streets in Philadelphia to meet defendant CHRISTOPHER PIZZO.

99.     Defendant CHRISTOPHER PIZZO came to defendant GERALD BRINKLEY's vehicle, where defendant BRINKLEY delivered approximately 600 pills containing oxycodone to defendant PIZZO.

On or about March 4, 2011:

100.     Defendant CLAUDE NOLAN called and spoke to defendant GERALD BRINKLEY and discussed what pseudo-patients defendant NOLAN would be driving to defendant NORMAN M. WERTHER's the next day.

101.     Defendant WILLIAM STUKES directed defendant DARRAH ROBINSON to deliver approximately 494 pills containing oxycodone to defendant TROY FLETCHER.

102.     Defendant DARRAH ROBINSON drove to the area of 29th and Diamond Streets to meet defendant TROY FLETCHER.

103.     Defendant TROY FLETCHER got into defendant DARRAH ROBINSON'S vehicle, and defendant ROBINSON delivered approximately 494 pills containing oxycodone to defendant FLETCHER.

104.     Defendant TROY FLETCHER took possession of approximately 494 pills containing oxycodone.

34

On or about March 5, 2011:

105.     Defendant DARRELL HENDRICKS picked up and drove two pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

106.     Defendant CLAUDE NOLAN picked up and drove two pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

107.     Defendant WILLIAM STUKES called the doctor's office, spoke to defendant RITA MYLES and asked to speak to defendant CLAUDE NOLAN.  Defendants W. STUKES and NOLAN discussed what prescription the pseudo-patients got and defendant W. STUKES gave instructions to defendant NOLAN as to which pharmacies defendant NOLAN should go to in order to fill the prescriptions for the pseudo-patients he had brought to the doctor's office.  Defendant NOLAN told defendant W. STUKES that he will tell the pseudo-patient to "get the 30's" referring to 30 milligram oxycodone pills.

108.     Defendant CLAUDE NOLAN transported the pseudo-patients to various pharmacies to fill the pseudo-patients' prescriptions, then defendant NOLAN called defendant GERALD BRINKLEY and met him afterward.

109.     Defendant DARRELL HENDRICKS transported the pseudo-patients to various pharmacies to fill the pseudo-patients' prescriptions.

35

110.     Defendant WILLIAM STUKES called defendant ATO STRONG to report that defendant W. STUKES had "510," referring to 510 pills containing oxycodone, for defendant STRONG but that he (W. STUKES) needed to wait for defendant DARRELL HENDRICKS to pick up one more prescription, after which defendant HENDRICKS would deliver the pills to defendant STRONG in the area of 32nd and Huntington Streets.

111.     Defendant DARRELL HENDRICKS drove to the area of 32nd and Huntington Street to deliver 610 pills containing oxycodone to defendant ATO STRONG.

112.     Defendant WILLIAM STUKES called defendant ATO STRONG to advise defendant STRONG that there were more pills than they had agreed upon and that defendant STRONG owed $1100 more, (in addition to the $5610 defendant STRONG paid defendant DARRELL HENDRICKS).  Defendant W. STUKES told defendant STRONG that defendant HENDRICKS was on his way back to collect the money owed.

On or about March 8, 2011:

113.     Defendant GERALD BRINKLEY called defendant WILLIAM STUKES to discuss how many pseudo-patients they had going to defendant NORMAN M. WERTHER's office that day.  Defendant BRINKLEY advised that he would call defendant RITA MYLES to see if they could send one or two "new's."

114.     Defendant GERALD BRINKLEY called defendant RITA MYLES, advised her that "the schedule" got all messed up with their pseudo-patients and asked if he could send "one or two" for today.  Defendant MYLES responded that she would check.

115.     Defendant WILLIAM STUKES called defendant RASHIDA LYLES at defendant NORMAN M. WERTHER's office to discuss a pseudo-patient of defendant W.

36

STUKES.  Defendant W. STUKES told defendant LYLES that "he needs...an MRI and everything" and asked defendant LYLES "can you take care of it for Babe?" because he was sending the patient there that week.  Defendant W. STUKES told defendant LYLES that the patient "only get 90 and I'm trying to push it up, you know what I mean," referring to trying to get more pills containing oxycodone through this pseudo-patient.  Defendant W. STUKES advised defendant LYLES that "the doc said that in order for them to get that he gotta, you know, he gotta have that paperwork in there," referring to defendant LYLES putting an MRI report in the patient's file.  Defendant LYLES agreed, "alright, I'll put it in there."

116.    Defendant IHSANULLAH MAAF told defendant DARRAH ROBINSON that moving forward he wanted each pseudo-patient to come in and pay separately for their individual prescriptions rather than one of defendant WILLIAM STUKES' people paying for or picking up the pseudo-patients' prescriptions because of concerns that defendant MAAF had about the DEA.

117.    Defendant WILLIAM STUKES called defendant ATO STRONG to tell him that he (W. STUKES) had "630 for him," referring to 630 pills containing oxycodone. Defendant W. STUKES told defendant STRONG to meet defendant DARRAH ROBINSON at a nail salon on 22nd Street in Philadelphia where defendant ROBINSON would deliver the pills to defendant STRONG.

118.    On or about March 9, 2011, defendant WILLIAM STUKES called defendant DARRELL HENDRICKS and asked defendant HENDRICKS if he could "work" tomorrow driving pseudo-patients to defendant NORMAN M. WERTHER's office.

On or about March 10, 2011:

119.     Defendants WILLIAM STUKES and GERALD BRINKLEY coordinated with each other and defendants DARRELL HENDRICKS and WARREN JOHNSON about what patients would be driven to defendant NORMAN M. WERTHER's office that day.

120.     Defendant DARRELL HENDRICKS picked up and drove two pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

121.     Defendant DARRELL HENDRICKS transported the pseudo-patients to various pharmacies to fill the pseudo-patients' prescriptions.

122.     Defendant DARRELL HENDRICKS collected the prescribed narcotics from the pseudo-patients and paid the pseudo-patients a cash fee.

123.     Defendant WARREN JOHNSON picked up and drove six pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

124.     Defendant WARREN JOHNSON transported the pseudo-patients to various pharmacies to fill the pseudo-patients' prescriptions.

125.     Defendant LAMONT BUTCHER traveled with defendant WILLIAM STUKES to meet defendant TROY FLETCHER, so that defendant W. STUKES could distribute oxycodone to defendant FLETCHER.

126.    Defendant WILLIAM STUKES distributed approximately 611 pills containing oxycodone to defendant TROY FLETCHER.

127.    Defendant TROY FLETCHER paid defendant WILLIAM STUKES approximately $6320 and took possession of approximately 611 pills, each containing oxycodone.

128.    On or about March 11, 2011, defendant GERALD BRINKLEY called to advise defendant RITA MYLES that defendant WILLIAM STUKES had been arrested, and warned defendant MYLES that they all needed to "keep our eyes and ears open" and to "be careful."

129.    On or about March 13, 2011, defendant GERALD BRINKLEY called defendant CLAUDE NOLAN to discuss what pseudo-patients defendant NOLAN would be transporting to defendant NORMAN M. WERTHER's office the next day.

On or about March 14, 2011:

130.    Defendant CLAUDE NOLAN picked up and drove one pseudo-patient to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate the pseudo-patient receiving a prescription for narcotics, specifically pills containing oxycodone.

131.    Defendant CLAUDE NOLAN transported the pseudo-patient to Northeast Pharmacy to fill the pseudo-patient's prescription.  While there, defendant NOLAN called defendant GERALD BRINKLEY to discuss what type of pills they were to get.  Defendant BRINKLEY asked defendant NOLAN if "Sean," referring to defendant IHSANULLAH MAAF, knows that defendant NOLAN is "with them."  Defendant BRINKLEY told defendant NOLAN

39

to tell defendant MAAF that defendant NOLAN is "with WILLIAM," referring to defendant WILLIAM STUKES.

On or about March 16, 2011:

132.    Defendant GERALD BRINKLEY met defendant CHRISTOPHER PIZZO in the area of Claridge Street and Roosevelt Boulevard in Philadelphia and distributed approximately 810 pills containing oxycodone to defendant PIZZO.

133.    Defendant CHRISTOPHER PIZZO took possession of approximately 810 pills containing oxycodone, namely 510 Oxycodone 30 milligram pills and 300 Oxycodone 10 milligram pills.

On or about March 24, 2011:

134.    Defendant GERALD BRINKLEY distributed approximately 795 pills containing oxycodone, 225 "30's" and 570 "10's," to defendant CHRISTOPHER PIZZO.

135.    Defendant CHRISTOPHER PIZZO took possession of approximately 795 pills containing oxycodone, 225 "30's" and 570 "10's".

136.    On or about March 27, 2011, defendant GERALD BRINKLEY called defendant CLAUDE NOLAN to discuss what pseudo-patients defendant NOLAN would be transporting to defendant NORMAN M. WERTHER's office the next day.

On or about March 28, 2011:

137.    Defendant CLAUDE NOLAN picked up and drove two pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

40

138.    Defendant CLAUDE NOLAN transported the pseudo-patients to various pharmacies, including Northeast Pharmacy, to fill the pseudo-patients prescriptions.

139.    On or about May 13, 2011, defendant WILLIAM STUKES called defendant ATO STRONG to make arrangements to meet him for defendant W. STUKES to deliver 240 pills containing oxycodone to defendant STRONG.  Defendant W. STUKES said, "Yo bring me out money for 240."

140.    On or May 5, 2011, defendant TINA WEISZ provided information from a pseudo-patient's file to defendant WILLIAM STUKES about what was prescribed to pseudo-patient "R.N.," known to the grand jury, that defendant W. STUKES had sent to defendant NORMAN M. WERTHER's office that day.

On or about May 14, 2011:

141.    Defendant GERALD BRINKLEY called defendant DARRELL HENDRICKS and gave defendant HENDRICKS instructions on what pseudo-patients defendant defendant HENDRICKS was to drive to defendant NORMAN M. WERTHER's office that day.

142.    Defendant DARRELL HENDRICKS picked up and drove two pseudo-patients to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

143.    Defendant DARRELL HENDRICKS transported the pseudo-patients to pharmacies at a Pathmark and then a Target store to fill the pseudo-patients' prescriptions.

144.    Defendant DARRELL HENDRICKS collected the prescribed narcotics from the pseudo-patients and paid the pseudo-patients a cash fee.

41

On or about May 18, 2011:

145.    Defendant WILLIAM STUKES called defendant DARRELL HENDRICKS and gave defendant HENDRICKS instructions on what pseudo-patients defendant HENDRICKS was to drive to defendant NORMAN M. WERTHER's office that day.

146.    Defendant DARRELL HENDRICKS picked up and drove one pseudo-patient to the office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate the pseudo-patient receiving a prescription for narcotics, specifically pills containing oxycodone.

147.    Defendant DARRELL HENDRICKS transported the pseudo-patient to a pharmacy in East Falls in order to fill the pseudo-patient's prescription.  Defendant HENDRICKS dropped off the prescription with the intention to return in a few hours to pick it up.

148.    Defendant WILLIAM STUKES called defendant DARRELL HENDRICKS to tell him to go back to the pharmacy to pick up the filled prescription to prevent the pseudo-patient from going back and picking it up themselves, stating, "Don't let them back door you man.  Mothers like that will sneak down there and grab it."

149.    Defendant DARRELL HENDRICKS picked up the filled prescription for pills containing oxycodone.

150.    Defendant WILLIAM STUKES directed defendant DARRELL HENDRICKS to give the pills he had collected to defendant CARLOS RICHARDS.

151.    On or about May 19, 2011, defendant GERALD BRINKLEY called defendant TIMOTHY PEDEN while PEDEN was still at the office of defendant NORMAN M.

42

WERTHER.  Defendant BRINKLEY told defendant PEDEN to make sure PEDEN got the

"schedules," referring to the lists associated with defendant WILLIAM STUKES that the office

staff made up and gave to the drivers, from "the white girl Tina," referring to defendant TINA

WEISZ.

> 152.   On or about May 20, 2011, defendant GERALD BRINKLEY called

defendant TIMOTHY PEDEN to discuss with him the money that defendant BRINKLEY gave

defendant PEDEN to pay the pseudo-patients, for money orders and for medicine for the patients

defendant PEDEN was to take to defendant NORMAN M. WERTHER's office on May 21,

2011.

> On or May 21, 2011:

> 153.   Defendant TIMOTHY PEDEN picked up and drove pseudo-patients to the

office of defendant NORMAN M. WERTHER on Davisville Road in Willow Grove,

Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics,

specifically pills containing oxycodone.

> 154.   Defendant TIMOTHY PEDEN then transported four pseudo-patients to

various pharmacies to fill the pseudo-patients' prescriptions.

> 155.   Defendant TIMOTHY PEDEN collected the prescribed narcotics from the

pseudo-patients and paid the pseudo-patients a cash fee.

> 156.   Defendant GERALD BRINKLEY called defendant TIMOTHY PEDEN

and directed him to give "all the medicine you get" to "Kadeer" (referring to defendant

MICHAEL SANDERS).  Defendant PEDEN told defendant BRINKLEY that "Bones" (referring

to defendant WILLIAM STUKES), told him to give everything to "Anwar" (referring to

defendant WARREN JOHNSON).  Defendant BRINKLEY yelled at defendant PEDEN and reiterated that defendant PEDEN was to give what he had to "Kadeer."

157.    Defendant WEISZ provided information from a pseudo-patient's file to defendant DARRAH ROBINSON who called defendant WEISZ to see if an identification card was in the file for a pseudo-patient that WILLIAM STUKES had sent to  Defendant NORMAN M. WERTHER's office.

On or about May 26, 2011:

158.    Defendant WARREN JOHNSON picked up and drove five pseudo-patients to the office of  Defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

159.    Defendant RICHARDS picked up and drove four pseudo-patients to the office of  Defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

160.    Defendant RICHARDS transported four pseudo-patients to Northeast Pharmacy in the 6700 block of Bustleton Avenue to fill the pseudo-patients' prescriptions.

161.    Defendant MAAF filled the prescriptions of four of defendant WILLIAM STUKES' pseudo-patients for pills containing oxycodone.

162.    Defendant RICHARDS collected the prescribed narcotics from the four pseudo-patients.

44

163.    Defendant WARREN JOHNSON transported four pseudo-patients to a number of pharmacies to fill the pseudo-patients' prescriptions and collected the prescribed narcotics from the four pseudo-patients.

164.    Defendant WARREN JOHNSON met defendant JAMES LYLES outside one of the pharmacies and delivered three filled prescriptions to defendant LYLES.  After defendant JOHNSON filled the last prescription, he delivered it to LYLES at his residence located in the 1800 block of Ingersoll Street.  Defendant ERIC TREADWELL traveled in defendant JOHNSON's car to meet defendant LYLES at LYLES' residence.

On or about May 27, 2011:

165.    Defendant WARREN JOHNSON drove to the home of defendant JAMES LYLES to deliver to defendant LYLES approximately 511 30 milligram oxycodone pills.

166.    Defendant WARREN JOHNSON possessed approximately 511 30 milligram oxycodone pills and 150 10 milligram oxycodone pills.

167.    Defendant JAMES LYLES called defendant BRINKLEY to report to defendant BRINKLEY that defendant WARREN JOHNSON had just been arrested.

On or about May 31, 2011:

168.    Defendants BRINKLEY and GREGORY JOHNSON discussed via phone what pseudo-patients defendant GREGORY JOHNSON was driving that day to  Defendant NORMAN M. WERTHER

169.    Defendant GREGORY JOHNSON picked up and drove four pseudo-patients in a Ford Expedition registered to defendant WILLIAM STUKES to the office of Defendant NORMAN M. WERTHER on Davisville Road in Willow Grove, Pennsylvania, in

order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills containing oxycodone.

170.     Defendant GREGORY JOHNSON transported the pseudo-patients to a number of pharmacies to fill the pseudo-patients' prescriptions.

171.     Defendant GREGORY JOHNSON collected the prescribed narcotics from the pseudo-patients.

172.     Defendant GREGORY JOHNSON drove to the area of 22nd and Clearfield and gave the narcotics obtained from the pseudo-patients to defendant SANDERS.

173.      Defendant SANDERS possessed 357 30 milligram oxycodone pills and 152 10 milligram oxycodone pills.

174.     On or about June 1, 2011, defendant SANDERS called defendant BRINKLEY to tell him that he had been "knocked off" (arrested) the day before and that police had seized "the product," referring to the 357 30 milligram oxycodone pills and 152 10 milligram oxycodone pills delivered to him by defendant GREGORY JOHNSON.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 9, 2011, in the Eastern District of Pennsylvania, defendant

**JASON ROMM,**
**a/k/a "Jay,"**

knowingly and intentionally possessed with the intent to distribute the following controlled substances:

(a)     approximately 155 pills of 30 mg strength, each of which is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance; and

(b)     approximately 1,268 pills of 10 mg strength, each of which is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 11, 2011, in the Eastern District of Pennsylvania,

defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun," and**
**DARRAH ROBINSON**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately

630 pills of 30 mg strength, each of which is a mixture and substance containing a detectable

amount of oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C),  and

Title 18, United States Code, Section 2.

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 11, 2011, in the Eastern District of Pennsylvania, defendant

**SYLVESTER ADAMS,**
**a/k/a "Link,"**

knowingly and intentionally possessed with the intent to distribute approximately 630 pills of 30

mg strength, each of which is a mixture and substance containing a detectable amount of

oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 11, 2011, in the Eastern District of Pennsylvania,

defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun," and**
**HERBERT HUGHES,**
**a/k/a "Zack,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately

360 pills of 30 mg strength, each of which is a mixture and substance containing a detectable

amount of oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and

Title 18, United States Code, Section 2.

50

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 11, 2011, in the Eastern District of Pennsylvania,  defendant

**SYLVESTER ADAMS,**
**a/k/a "Link,"**

knowingly and intentionally possessed with the intent to distribute approximately 360 pills of 30

mg strength, each of which is a mixture and substance containing a detectable amount of

oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 3, 2011, in the Eastern District of Pennsylvania, defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun," and**
**GERALD BRINKLEY,**
**a/k/a "Muhammad,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately

600 pills of 10 mg strength, each of which is a mixture and substance containing a detectable

amount of oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and

Title 18, United States Code, Section 2.

## COUNT EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 3, 2011, in the Eastern District of Pennsylvania, defendant

**CHRISTOPHER PIZZO,**
**a/k/a "Jay,"**

knowingly and intentionally possessed with the intent to distribute approximately 600 pills of 10

mg strength, each of which is a mixture and substance containing a detectable amount of

oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 4, 2011, in the Eastern District of Pennsylvania, defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun," and**
**DARRAH ROBINSON**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately 494 pills of 30 mg strength, each of which is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 4, 2011, in the Eastern District of Pennsylvania, defendant

**TROY FLETCHER,**
**a/k/a "JAMES,"**

knowingly and intentionally possessed with the intent to distribute approximately 494 pills of 30

mg strength, each of which is a mixture and substance containing a detectable amount of

oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 10, 2011, in the Eastern District of Pennsylvania, defendant

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun," and**
**WARREN JOHNSON,**
**a/k/a "Anwar,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, approximately

611 pills of 30 mg strength, each of which is a mixture and substance containing a detectable

amount of oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and

Title 18, United States Code, Section 2.

## COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 10, 2011, in the Eastern District of Pennsylvania, defendant

**TROY FLETCHER,**
**a/k/a "JAMES,"**

knowingly and intentionally possessed with the intent to distribute approximately 611 pills of 30

mg strength, each of which is a mixture and substance containing a detectable amount of

oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

57

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 16, 2011, in the Eastern District of Pennsylvania, defendant

**GERALD BRINKLEY,**
**a/k/a "Muhammad,"**

knowingly and intentionally distributed the following controlled substances:

(a)     approximately 510 pills of 30 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance; and

(b)     approximately 300 pills of 10 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 16, 2011, in the Eastern District of Pennsylvania, defendant

**CHRISTOPHER PIZZO,**
**a/k/a "Jay,"**

knowingly and intentionally possessed with the intent to distribute the following controlled

substances:

(a)    approximately 510 pills of 30 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance; and

(b)    approximately 300 pills of 10 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## <u>COUNT FIFTEEN</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 24, 2011, in the Eastern District of Pennsylvania, defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun," and**
**GERALD BRINKLEY,**
**a/k/a "Muhammad,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, the following

controlled substances:

(a)     approximately 225 pills of 30 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance; and

(b)     approximately 570 pills of 10 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and

Title 18, United States Code, Section 2.

## COUNT SIXTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 24, 2011, in the Eastern District of Pennsylvania, defendant

**CHRISTOPHER PIZZO,**
**a/k/a "Jay,"**

knowingly and intentionally possessed with the intent to distribute the following controlled

substances:

(a)     approximately 225 pills of 30 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance; and

(b)     approximately 570 pills of 10 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT SEVENTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 27, 2011, in the Eastern District of Pennsylvania, defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun,"**
**GERALD BRINKLEY,**
**a/k/a "Muhammad," and**
**WARREN JOHNSON,**
**a/k/a "Anwar,"**

knowingly and intentionally possessed with the intent to distribute, and aided and abetted the

possession with the intent to distribute of, the following controlled substances:

(a)     approximately 511 pills of 30 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance; and

(b)     approximately 150 pills of 10 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and

Title 18, United States Code, Section 2.

## COUNT EIGHTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 31, 2011, in the Eastern District of Pennsylvania, defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun,"**
**GERALD BRINKLEY,**
**a/k/a "Muhammad," and**
**GREGORY JOHNSON,**
**a/k/a "Quadire,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, the following

controlled substances:

(a)     approximately 357 pills of 30 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance; and

(b)     approximately 152 pills of 10 mg strength, each of which is a mixture and

substance containing a detectable amount of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and

Title 18, United States Code, Section 2.

63

## COUNT NINETEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 31, 2011, in the Eastern District of Pennsylvania, defendant

**MICHAEL SANDERS**
**a/k/a "Kadeer,"**

knowingly and intentionally possessed with the intent to distribute the following controlled

substances:

      (a)    approximately 357 pills of 30 mg strength, each of which is a mixture and

           substance containing a detectable amount of oxycodone, a Schedule II

           controlled substance; and

      (b)    approximately 152 pills of 10 mg strength, each of which is a mixture and

           substance containing a detectable amount of oxycodone, a Schedule II

           controlled substance.

All in VIOLAtion of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNTS TWENTY THROUGH TWO HUNDRED AND FIFTY-NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     At all times material to this Indictment:

### Background

2.     The Medicaid program was created by the federal government in 1965 under Title XIX of the Social Security Act.  The program was jointly financed by the federal and state governments and administered at the state level.  Medicaid provided health insurance and prescription coverage for many low-income individuals; offered long-term care assistance to individuals over the age of 65 and individuals with disabilities; covered gaps in the Medicare program; and funded institutions that served a disproportionate number of low-income patients with special needs.  The federal government reimbursed states for a portion of the cost of their Medicaid programs depending on the state's per capita income.

3.     Medicare Part D is a federal program enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, effective 2006, to subsidize the costs of prescription drugs for Medicare beneficiaries.  Individuals are eligible for Medicare benefits if they are 65 or older, have certain disabilities, or have end-stage renal disease. Individuals are eligible for prescription drug coverage under a Part D plan if they are entitled to benefits under Medicare Part A and/or enrolled in Part B.  Beneficiaries can obtain the Part D drug benefit through two types of private plans: they can join a Prescription Drug Plan (PDP) for drug coverage only or they can join a Medicare Advantage plan that covers both medical services and prescription drugs.

4.     Independence Blue Cross ("IBC") was a health insurance company based in Philadelphia, Pennsylvania.  IBC was an independent corporation that is part of the Blue Cross and Blue Shield organization, which consists of a nationwide federation of independent corporations.  IBC provides a variety of managed health care service insurance plans.

5.     IBC and other private health insurance companies provide for insurance coverage for medically necessary prescriptions for their members.

**THE SCHEME TO DEFRAUD**

6.     From in or about September 2009 through the present, in the Eastern District of Pennsylvania, defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun,"**
**GERALD BRINKLEY,**
**a/k/a "Muhammad,"**
**ZANIAH BEARD,**
**DONALD BROWN,**
**KIM CARTER,**
**ANDRE DAWKINS,**
**EVETTE GRINGROW,**
**LEON HARRIS,**
**DENISE HAWKINS,**
**RONNIE JACKSON,**
**CARLA JENKINS,**
**BEATRICE LEWIS,**
**MICHAEL LITTLEJOHN,**
**VERNELL MCDANIELS,**
**ERIC PERRY,**
**MARK REID,**
**MICHAEL ROMINIECKI,**
**WAYNE RUCKER,**
**PATRICIA SIMMONS,**

66

**LAWRENCE STITH,**
**DEBRA STUKES,**
**VIOLA STUKES,**
**STEVEN THOMPSON,**
**ERIC TREADWELL,**
**JULIA TURNER,**
**GERALDINE WATKINS, and**
**YOLANDA WILLIAMS**

knowingly and willfully executed, and attempted to execute, and aided and abetted the attempt

and its execution, a scheme and artifice to defraud at least five health care benefit programs,

including those listed below, and to obtain, by means of false and fraudulent pretenses,

representations and promises, money and property owned by, or under the custody or control of

each of those health care benefit programs in connection with the delivery of and payment for

health care benefits, items and services, by submitting and causing to be submitted for

reimbursement false and fraudulent claims for prescriptions purportedly necessary for the

patients' medical needs to various pharmacists, which claims were false and fraudulent in that

the prescriptions represented that the patients needed the drugs prescribed when, in fact, the

defendants knew that the drugs prescribed were intended to be distributed to others and were not

for the patients' use, resulting in losses of thousands of dollars.

<u>**MANNER AND MEANS**</u>

It was part of the scheme that:

5.      Paragraphs One through Nineteen and Twenty-Two through Twenty-Four

and Overt Acts One through One Hundred Seventy One of Count One of this Indictment are

realleged here.

6.      Defendants WILLIAM STUKES, a/k/a "Derek Stukes," a/k/a "Bones," a/k/a "Twin," a/k/a "Shooter," a/k/a "Shotgun," GERALD BRINKLEY, a/k/a "Muhammad," ZANIAH BEARD, DONALD BROWN, KIM CARTER, ANDRE DAWKINS, EVETTE GRINGROW, LEON HARRIS, DENISE HAWKINS, RONNIE JACKSON, CARLA JENKINS, BEATRICE LEWIS, MICHAEL LITTLEJOHN, VERNELL MCDANIELS, ERIC PERRY, MARK REID, MICHAEL ROMINIECKI, WAYNE RUCKER, PATRICIA SIMMONS, LAWRENCE STITH, DEBRA STUKES,VIOLA STUKES, STEVEN THOMPSON, ERIC TREADWELL, JULIA TURNER, GERALDINE WATKINS, and YOLANDA WILLIAMS caused claims to be submitted for payment by Medicaid, Medicare, and private insurance companies and health care benefit plans and contracts for prescriptions for pills containing oxycodone.  The claims were for prescriptions provided to individuals who did not have a genuine medical need for the pills prescribed by defendant NORMAN M. WERTHER and who intended that the prescribed pills would be distributed to others.  The Medicaid Managed Care Organizations included Health Partners ("Health Partners"); the Medicare plans included Bravo Health Pennsylvania, Inc. ("Bravo Health"), United Healthcare Insurance Company ("United Healthcare"), Connecticut General life Insurance Company ("Connecticut General"); and the private health insurance companies, plans and contracts included Independence Blue Cross ("IBC").  The Medicaid, Medicare, and the private health insurance companies, plans and contracts are "health care benefit programs" as defined in 18 U.S.C. § 24(b).

7.      Pharmacists filled the fraudulent prescriptions written by defendant NORMAN M. WERTHER to individuals for pills containing oxycodone.  The pharmacists billed the individuals' insurance companies, including Medicaid, Medicare, and the private health

insurance companies for payment for the prescriptions.  Based on the fraudulent claims that

defendants WILLIAM STUKES, a/k/a "Derek Stukes," a/k/a "Bones," a/k/a "Twin," a/k/a

"Shooter," a/k/a "Shotgun," GERALD BRINKLEY, a/k/a "Muhammad," ZANIAH BEARD,

DONALD BROWN, KIM CARTER, ANDRE DAWKINS, EVETTE GRINGROW, LEON

HARRIS, DENISE HAWKINS, RONNIE JACKSON, CARLA JENKINS, BEATRICE LEWIS,

MICHAEL LITTLEJOHN, VERNELL MCDANIELS, ERIC PERRY, MARK REID, MICHAEL

ROMINIECKI, WAYNE RUCKER, PATRICIA SIMMONS, LAWRENCE STITH, DEBRA

STUKES,VIOLA STUKES, STEVEN THOMPSON, ERIC TREADWELL, JULIA TURNER,

GERALDINE WATKINS, and YOLANDA WILLIAMS caused to be submitted to health care

benefit programs, the health care benefit programs made payments to pharmacists in a total

amount that is in excess of $24,000.

       8.     On or about each of the dates listed below, in the Eastern District of

Pennsylvania, defendants

**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun,"**
**GERALD BRINKLEY,**
**a/k/a "Muhammad,"**
**ZANIAH BEARD,**
**DONALD BROWN,**
**KIM CARTER,**
**ANDRE DAWKINS,**
**EVETTE GRINGROW,**
**LEON HARRIS,**
**DENISE HAWKINS,**
**RONNIE JACKSON,**
**CARLA JENKINS,**

**BEATRICE LEWIS,**
**MICHAEL LITTLEJOHN,**
**VERNELL MCDANIELS,**
**ERIC PERRY,**
**MARK REID,**
**MICHAEL ROMINIECKI,**
**WAYNE RUCKER,**
**PATRICIA SIMMONS,**
**LAWRENCE STITH,**
**DEBRA STUKES,**
**VIOLA STUKES,**
**STEVEN THOMPSON,**
**ERIC TREADWELL,**
**JULIA TURNER,**
**GERALDINE WATKINS, and**
**YOLANDA WILLIAMS**

knowingly and willfully executed a scheme and artifice to defraud each of the health care benefit

programs listed below, and to obtain money and property owned by and under the custody and

control of that health care benefit program by means of false and fraudulent pretenses,

representations, and promises, in connection with the delivery of and payment for health care

benefits, items and services, by submitting and causing to be submitted fraudulent health care

insurance claims for services purportedly provided to each of the individuals listed below, in the

approximate amounts listed below (each claim constituting a separate count of this indictment):

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 20 | 9/25/2009 | ZANIAH BEARD | Health Partners | $76.25 |
| 21 | 10/22/2009 | ZANIAH BEARD | Health Partners | $76.25 |
| 22 | 11/20/2009 | ZANIAH BEARD | Health Partners | $76.25 |
| 23 | 12/18/2009 | ZANIAH BEARD | Health Partners | $76.25 |
| 24 | 1/18/2010 | ZANIAH BEARD | Health Partners | $76.25 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 25 | 4/16/2010 | ZANIAH BEARD | Health Partners | $76.25 |
| 26 | 5/14/2010 | ZANIAH BEARD | Health Partners | $76.25 |
| 27 | 7/14/2010 | ZANIAH BEARD | Health Partners | $76.25 |
| 28 | 9/16/2010 | ZANIAH BEARD | Health Partners | $76.25 |
| 29 | 2/20/2009 | DONALD BROWN | Health Partners | $71.15 |
| 30 | 3/10/2009 | DONALD BROWN | Health Partners | $71.15 |
| 31 | 10/14/2009 | DONALD BROWN | Health Partners | $76.25 |
| 32 | 11/13/2009 | DONALD BROWN | Health Partners | $76.25 |
| 33 | 12/11/2009 | DONALD BROWN | Health Partners | $76.25 |
| 34 | 1/9/2010 | DONALD BROWN | Health Partners | $76.25 |
| 35 | 2/5/2010 | DONALD BROWN | Health Partners | $76.25 |
| 36 | 3/5/2010 | DONALD BROWN | Health Partners | $76.25 |
| 37 | 4/5/2010 | DONALD BROWN | Health Partners | $76.25 |
| 38 | 5/1/2010 | DONALD BROWN | Health Partners | $76.25 |
| 39 | 5/28/2010 | DONALD BROWN | Health Partners | $76.25 |
| 40 | 6/28/2010 | DONALD BROWN | Health Partners | $76.25 |
| 41 | 7/30/2010 | DONALD BROWN | Health Partners | $76.25 |
| 42 | 9/2/2010 | DONALD BROWN | Health Partners | $76.25 |
| 43 | 8/10/2009 | KIM CARTER | Health Partners | $76.25 |
| 44 | 10/7/2009 | KIM CARTER | Health Partners | $76.25 |
| 45 | 12/7/2009 | KIM CARTER | Health Partners | $76.25 |
| 46 | 4/29/2010 | KIM CARTER | Health Partners | $76.25 |
| 47 | 5/28/2010 | KIM CARTER | Health Partners | $76.25 |
| 48 | 9/28/2010 | KIM CARTER | Health Partners | $76.25 |
| 49 | 5/15/2009 | ANDRE DAWKINS | United Healthcare | $89.57 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 50 | 6/12/2009 | ANDRE DAWKINS | United Healthcare | $133.35 |
| 51 | 7/15/2009 | ANDRE DAWKINS | United Healthcare | $133.35 |
| 52 | 8/10/2009 | ANDRE DAWKINS | United Healthcare | $111.46 |
| 53 | 9/2/2009 | ANDRE DAWKINS | United Healthcare | $111.46 |
| 54 | 9/30/2009 | ANDRE DAWKINS | United Healthcare | $111.46 |
| 55 | 12/14/2009 | ANDRE DAWKINS | United Healthcare | $48.38 |
| 56 | 12/14/2009 | ANDRE DAWKINS | United Healthcare | $603.00 |
| 57 | 1/12/2010 | ANDRE DAWKINS | United Healthcare | $40.52 |
| 58 | 1/12/2010 | ANDRE DAWKINS | United Healthcare | $675.97 |
| 59 | 6/14/2010 | ANDRE DAWKINS | United Healthcare | $897.07 |
| 60 | 1/26/2011 | ANDRE DAWKINS | United Healthcare | $46.40 |
| 61 | 1/26/2011 | ANDRE DAWKINS | United Healthcare | $20.36 |
| 62 | 2/25/2011 | ANDRE DAWKINS | United Healthcare | $46.40 |
| 63 | 2/25/2011 | ANDRE DAWKINS | United Healthcare | $20.26 |
| 64 | 3/19/2011 | ANDRE DAWKINS | United Healthcare | $46.50 |
| 65 | 3/19/2011 | ANDRE DAWKINS | United Healthcare | $20.36 |
| 66 | 8/21/2009 | EVETTE GRINGO | Health Partners | $66.25 |
| 67 | 9/21/2009 | EVETTE GRINGO | Health Partners | $22.25 |
| 68 | 11/13/2009 | EVETTE GRINGO | Health Partners | $76.25 |
| 69 | 12/10/2009 | EVETTE GRINGO | Health Partners | $76.25 |
| 70 | 6/8/2010 | EVETTE GRINGO | Health Partners | $76.25 |
| 71 | 7/8/2010 | EVETTE GRINGO | Health Partners | $76.25 |
| 72 | 2/10/2009 | LEON HARRIS | Health Partners | $71.15 |
| 73 | 8/5/2009 | LEON HARRIS | Health Partners | $81.13 |
| 74 | 9/4/2009 | LEON HARRIS | Health Partners | $76.25 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 75 | 10/2/2009 | LEON HARRIS | Health Partners | $31.25 |
| 76 | 10/30/2009 | LEON HARRIS | Health Partners | $31.25 |
| 77 | 11/30/2009 | LEON HARRIS | Health Partners | $31.25 |
| 78 | 12/31/2009 | LEON HARRIS | Health Partners | $76.25 |
| 79 | 1/26/2010 | LEON HARRIS | Health Partners | $76.25 |
| 80 | 2/23/2010 | LEON HARRIS | Health Partners | $76.25 |
| 81 | 3/23/2010 | LEON HARRIS | Health Partners | $76.25 |
| 82 | 4/20/2010 | LEON HARRIS | Health Partners | $76.25 |
| 83 | 5/17/2010 | LEON HARRIS | Health Partners | $76.25 |
| 84 | 6/19/2010 | LEON HARRIS | Health Partners | $76.25 |
| 85 | 7/16/2010 | LEON HARRIS | Health Partners | $76.25 |
| 86 | 8/14/2010 | LEON HARRIS | Health Partners | $76.25 |
| 87 | 1/26/2010 | DENISE HAWKINS | Bravo Health | $96.05 |
| 88 | 10/18/2010 | DENISE HAWKINS | Bravo Health | $96.05 |
| 89 | 11/19/2010 | DENISE HAWKINS | Bravo Health | $96.05 |
| 90 | 2/23/2010 | DENISE HAWKINS | Bravo Health | $96.05 |
| 91 | 3/23/2010 | DENISE HAWKINS | Bravo Health | $96.05 |
| 92 | 4/22/2010 | DENISE HAWKINS | Bravo Health | $96.55 |
| 93 | 7/22/2010 | DENISE HAWKINS | Bravo Health | $96.05 |
| 94 | 8/17/2010 | DENISE HAWKINS | Bravo Health | $96.05 |
| 95 | 1/19/2011 | DENISE HAWKINS | Bravo Health | $56.50 |
| 96 | 2/21/2010 | DENISE HAWKINS | Bravo Health | $80.47 |
| 97 | 4/28/2010 | SOPHIA HOLDER | IBC | $695.21 |
| 98 | 5/27/2010 | SOPHIA HOLDER | IBC | $41.30 |
| 99 | 6/25/2010 | SOPHIA HOLDER | IBC | $695.21 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 100 | 6/25/2010 | SOPHIA HOLDER | IBC | $41.30 |
| 101 | 11/13/2009 | RONNIE JACKSON | Health Partners | $76.25 |
| 102 | 12/7/2009 | RONNIE JACKSON | Health Partners | $76.25 |
| 103 | 2/22/2010 | RONNIE JACKSON | Health Partners | $76.25 |
| 104 | 5/5/2010 | RONNIE JACKSON | Health Partners | $76.25 |
| 105 | 6/5/2010 | RONNIE JACKSON | Health Partners | $76.25 |
| 106 | 7/5/2010 | RONNIE JACKSON | Health Partners | $76.25 |
| 107 | 7/29/2010 | RONNIE JACKSON | Health Partners | $76.25 |
| 108 | 9/3/2010 | RONNIE JACKSON | Health Partners | $76.25 |
| 109 | 4/7/2010 | CARLA JENKINS | Health Partners | $76.25 |
| 110 | 6/7/2010 | CARLA JENKINS | Health Partners | $76.25 |
| 111 | 7/6/2010 | CARLA JENKINS | Health Partners | $76.25 |
| 112 | 2/17/2009 | BEATRICE LEWIS | IBC | $42.50 |
| 113 | 3/17/2009 | BEATRICE LEWIS | IBC | $64.49 |
| 114 | 4/14/2009 | BEATRICE LEWIS | IBC | $57.5 |
| 115 | 5/12/2009 | BEATRICE LEWIS | IBC | $85.24 |
| 116 | 6/10/2009 | BEATRICE LEWIS | IBC | $57.50 |
| 117 | 7/10/2009 | BEATRICE LEWIS | IBC | $105.99 |
| 118 | 8/7/2009 | BEATRICE LEWIS | IBC | $57.50 |
| 119 | 9/8/2009 | BEATRICE LEWIS | IBC | $105.99 |
| 120 | 10/1/2009 | BEATRICE LEWIS | IBC | $57.50 |
| 121 | 2/12/2009 | MICHAEL LITTLEJOHN | Health Partners | $71.15 |
| 122 | 4/10/2009 | MICHAEL LITTLEJOHN | Health Partners | $71.15 |
| 123 | 8/5/2009 | MICHAEL LITTLEJOHN | Health Partners | $81.13 |
| 124 | 9/5/2009 | MICHAEL LITTLEJOHN | Health Partners | $76.25 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 125 | 10/13/2009 | MICHAEL LITTLEJOHN | Health Partners | $76.25 |
| 126 | 12/10/2009 | MICHAEL LITTLEJOHN | Health Partners | $76.25 |
| 127 | 1/9/2010 | MICHAEL LITTLEJOHN | Health Partners | $76.25 |
| 128 | 6/8/2009 | MICHAEL LITTLEJOHN | Health Partners | $76.25 |
| 129 | 5/11/2009 | VERNELL MCDANIELS | Health Partners | $76.14 |
| 130 | 10/2/2009 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 131 | 10/31/2009 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 132 | 12/2/2009 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 133 | 3/3/2010 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 134 | 3/31/2010 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 135 | 5/1/2010 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 136 | 6/3/2010 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 137 | 7/9/2010 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 138 | 9/10/2010 | VERNELL MCDANIELS | Health Partners | $76.25 |
| 139 | 7/23/2009 | ERIC PERRY | IBC | $83.50 |
| 140 | 8/21/2009 | ERIC PERRY | IBC | $92.09 |
| 141 | 9/21/2009 | ERIC PERRY | IBC | $92.09 |
| 142 | 10/15/2009 | ERIC PERRY | IBC | $68.50 |
| 143 | 11/13/2009 | ERIC PERRY | IBC | $68.50 |
| 144 | 12/11/2009 | ERIC PERRY | IBC | $68.50 |
| 145 | 1/11/2010 | ERIC PERRY | IBC | $68.50 |
| 146 | 2/11/2010 | ERIC PERRY | IBC | $116.99 |
| 147 | 3/10/2010 | ERIC PERRY | IBC | $116.99 |
| 148 | 4/9/2010 | ERIC PERRY | IBC | $116.99 |
| 149 | 5/6/2010 | ERIC PERRY | IBC | $116.99 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 150 | 7/7/2010 | ERIC PERRY | IBC | $116.99 |
| 151 | 8/5/2010 | ERIC PERRY | IBC | $116.99 |
| 152 | 9/8/2010 | ERIC PERRY | IBC | $116.99 |
| 153 | 10/8/2010 | ERIC PERRY | IBC | $116.99 |
| 154 | 11/5/2010 | ERIC PERRY | IBC | $56.50 |
| 155 | 12/6/2010 | ERIC PERRY | IBC | $116.99 |
| 156 | 1/4/2011 | ERIC PERRY | IBC | $116.99 |
| 157 | 3/1/2010 | ERIC PERRY | IBC | $120.44 |
| 158 | 4/1/2010 | ERIC PERRY | IBC | $120.44 |
| 159 | 5/2/2010 | ERIC PERRY | IBC | $120.44 |
| 160 | 1/30/2010 | MARK REID | IBC | $67.50 |
| 161 | 2/25/2010 | MARK REID | IBC | $115.99 |
| 162 | 3/23/2010 | MARK REID | IBC | $115.99 |
| 163 | 4/22/2010 | MARK REID | IBC | $115.99 |
| 164 | 5/21/2010 | MARK REID | IBC | $41.30 |
| 165 | 6/21/2010 | MARK REID | IBC | $695.21 |
| 166 | 6/21/2010 | MARK REID | IBC | $41.30 |
| 167 | 7/19/2010 | MARK REID | IBC | $695.21 |
| 168 | 7/19/2010 | MARK REID | IBC | $41.30 |
| 169 | 8/18/2010 | MARK REID | IBC | $695.21 |
| 170 | 8/18/2010 | MARK REID | IBC | $41.30 |
| 171 | 9/17/2010 | MARK REID | IBC | $115.99 |
| 172 | 10/14/2010 | MARK REID | IBC | $34.50 |
| 173 | 11/12/2010 | MARK REID | IBC | $119.44 |
| 174 | 12/8/2010 | MARK REID | IBC | $119.44 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 175 | 1/4/2011 | MARK REID | IBC | $119.44 |
| 176 | 2/1/2011 | MARK REID | IBC | $119.44 |
| 177 | 3/1/2011 | MARK REID | IBC | $119.44 |
| 178 | 3/31/2011 | MARK REID | IBC | $119.44 |
| 179 | 4/27/2011 | MARK REID | IBC | $119.44 |
| 180 | 9/13/2010 | MICHAEL ROMINIECKI | Connecticut General | $14.10 |
| 181 | 10/13/2010 | MICHAEL ROMINIECKI | Connecticut General | $14.10 |
| 182 | 12/8/2010 | MICHAEL ROMINIECKI | Connecticut General | $65.70 |
| 183 | 1/10/2011 | MICHAEL ROMINIECKI | Connecticut General | $65.70 |
| 184 | 3/10/2011 | MICHAEL ROMINIECKI | Connecticut General | $65.70 |
| 185 | 4/8/2011 | MICHAEL ROMINIECKI | Connecticut General | $65.70 |
| 186 | 6/19/2009 | WAYNE RUCKER | Bravo Health | $114.95 |
| 187 | 9/15/2009 | WAYNE RUCKER | Bravo Health | $96.05 |
| 188 | 10/13/2009 | WAYNE RUCKER | Bravo Health | $96.05 |
| 189 | 11/11/2009 | WAYNE RUCKER | Bravo Health | $96.05 |
| 190 | 12/10/2009 | WAYNE RUCKER | Bravo Health | $96.05 |
| 191 | 1/11/2010 | WAYNE RUCKER | Bravo Health | $96.05 |
| 192 | 2/10/2010 | WAYNE RUCKER | Bravo Health | $96.05 |
| 193 | 3/11/2010 | WAYNE RUCKER | Bravo Health | $96.05 |
| 194 | 4/12/2010 | WAYNE RUCKER | Bravo Health | $96.50 |
| 195 | 5/11/2010 | WAYNE RUCKER | Bravo Health | $96.05 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 196 | 6/9/2010 | WAYNE RUCKER | Bravo Health | $96.05 |
| 197 | 8/6/2010 | WAYNE RUCKER | Bravo Health | $96.05 |
| 198 | 10/8/2010 | WAYNE RUCKER | Bravo Health | $96.05 |
| 199 | 11/5/2010 | WAYNE RUCKER | Bravo Health | $96.05 |
| 200 | 12/7/2010 | WAYNE RUCKER | Bravo Health | $96.05 |
| 201 | 1/7/2011 | WAYNE RUCKER | Bravo Health | $98.04 |
| 202 | 2/7/2011 | WAYNE RUCKER | Bravo Health | $98.04 |
| 203 | 3/9/2011 | WAYNE RUCKER | Bravo Health | $98.04 |
| 204 | 4/11/2011 | WAYNE RUCKER | Bravo Health | $98.04 |
| 205 | 2/12/2009 | PATRICIA SIMMONS | Health Partners | $71.15 |
| 206 | 4/10/2009 | PATRICIA SIMMONS | Health Partners | $71.15 |
| 207 | 8/5/2009 | PATRICIA SIMMONS | Health Partners | $81.13 |
| 208 | 9/8/2009 | PATRICIA SIMMONS | Health Partners | $76.25 |
| 209 | 10/8/2009 | PATRICIA SIMMONS | Health Partners | $76.25 |
| 210 | 7/6/2010 | PATRICIA SIMMONS | Health Partners | $76.25 |
| 211 | 12/2/2009 | LAWRENCE STITH | Health Partners | $76.25 |
| 212 | 3/2/2010 | LAWRENCE STITH | Health Partners | $76.25 |
| 213 | 4/29/2010 | LAWRENCE STITH | Health Partners | $76.25 |
| 214 | 9/20/2010 | LAWRENCE STITH | Health Partners | $76.25 |
| 215 | 5/19/2010 | DEBRA STUKES | Health Partners | $76.25 |
| 216 | 9/17/2010 | DEBRA STUKES | Health Partners | $76.25 |
| 217 | 6/17/2009 | VIOLA STUKES | Bravo Health | $114.95 |
| 218 | 7/15/2009 | VIOLA STUKES | Bravo Health | $114.95 |
| 219 | 9/15/2009 | VIOLA STUKES | Bravo Health | $96.05 |
| 220 | 10/15/2009 | VIOLA STUKES | Bravo Health | $96.05 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 221 | 11/16/2009 | VIOLA STUKES | Bravo Health | $96.05 |
| 222 | 12/16/2009 | VIOLA STUKES | Bravo Health | $96.05 |
| 223 | 1/12/2010 | VIOLA STUKES | Bravo Health | $96.05 |
| 224 | 2/9/2010 | VIOLA STUKES | Bravo Health | $96.05 |
| 225 | 3/8 /2010 | VIOLA STUKES | Bravo Health | $96.05 |
| 226 | 4/5/2010 | VIOLA STUKES | Bravo Health | $96.55 |
| 227 | 5/3 /2010 | VIOLA STUKES | Bravo Health | $96.55 |
| 228 | 6/1/2010 | VIOLA STUKES | Bravo Health | $96.05 |
| 229 | 9/13/2010 | VIOLA STUKES | Bravo Health | $96.05 |
| 230 | 10/11/2010 | VIOLA STUKES | Bravo Health | $96.05 |
| 231 | 11/8/2010 | VIOLA STUKES | Bravo Health | $96.05 |
| 232 | 12/6/2010 | VIOLA STUKES | Bravo Health | $96.05 |
| 233 | 4/4/2011 | VIOLA STUKES | Bravo Health | $98.04 |
| 234 | 8/19/2009 | STEVEN THOMPSON | Health Partners | $81.13 |
| 235 | 9/18/2009 | STEVEN THOMPSON | Health Partners | $76.25 |
| 236 | 10/20/2009 | STEVEN THOMPSON | Health Partners | $76.25 |
| 237 | 11/20/2009 | STEVEN THOMPSON | Health Partners | $76.25 |
| 238 | 7/12/2010 | STEVEN THOMPSON | Health Partners | $76.25 |
| 239 | 3/7/2011 | STEVEN THOMPSON | United Healthcare | $46.40 |
| 240 | 5/25/2010 | ERIC TREADWELL | Health Partners | $76.25 |
| 241 | 6/24/2010 | ERIC TREADWELL | Health Partners | $31.25 |
| 242 | 2/10/2009 | JULIA TURNER | Health Partners | $71.15 |
| 243 | 10/5/2009 | JULIA TURNER | Health Partners | $76.25 |
| 244 | 12/4/2009 | JULIA TURNER | Health Partners | $76.25 |
| 245 | 3/2/2010 | JULIA TURNER | Health Partners | $76.25 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 246 | 4/30/2010 | JULIA TURNER | Health Partners | $76.25 |
| 247 | 5/28/2010 | JULIA TURNER | Health Partners | $76.25 |
| 248 | 6/28/2010 | JULIA TURNER | Health Partners | $76.25 |
| 249 | 1/29/2010 | GERALDINE WATKINS | Health Partners | $31.25 |
| 250 | 3/30/2010 | GERALDINE WATKINS | Health Partners | $31.25 |
| 251 | 5/25/2010 | GERALDINE WATKINS | Health Partners | $31.25 |
| 252 | 6/23/2010 | GERALDINE WATKINS | Health Partners | $31.25 |
| 253 | 2/12/2009 | YOLANDA WILLIAMS | Health Partners | $74.06 |
| 254 | 4/10/2009 | YOLANDA WILLIAMS | Health Partners | $71.15 |
| 255 | 5/8/2009 | YOLANDA WILLIAMS | Health Partners | $88.63 |
| 256 | 8/5/2009 | YOLANDA WILLIAMS | Health Partners | $81.13 |
| 257 | 9/9/2009 | YOLANDA WILLIAMS | Health Partners | $76.25 |
| 258 | 10/6/2009 | YOLANDA WILLIAMS | Health Partners | $76.25 |
| 259 | 12/3/2009 | YOLANDA WILLIAMS | Health Partners | $76.25 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS TWO HUNDRED AND SIXTY THROUGH THREE HUNDRED AND SEVENTY-EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

   1. On or about the dates set forth below, in the Eastern District of

Pennsylvania, defendant

**IHSANULLAH MAAF,**
**a/k/a "Sean,"**

knowingly conducted, and attempted to conduct, and aided, abetted and wilfully caused, the

following financial transactions affecting interstate commerce:

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 260 | 8/19/2010 | $8,725.00 | xxxxxx611-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 261 | 8/19/2010 | $9,571.00 | xxxxxx612-4 | Citizens Bank, Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 262 | 8/19/2010 | $8,474.00 | xxxxxx613-2 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 263 | 8/19/2010 | $8,743.00 | xxxxxx608-6 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 264 | 8/19/2010 | $8,749.00 | xxxxxx614-0 | Citizens Bank, Cottman Traditional, 2014 Cottman Avenue |
| 265 | 8/19/2010 | $9,550.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 266 | 8/19/2010 | $5,999.00 | xxxxxx607-8 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 267 | 8/19/2010 | $3,289.00 | xxxxxx610-8 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 268 | 8/19/2010 | $3,850.00 | xxxxxx421-8 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 269 | 8/21/2010 | $2,910.00 | xxxxxx609-4 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 270 | 8/21/2010 | $4,075.00 | xxxxxx610-8 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 271 | 8/21/2010 | $2,960.00 | xxxxxx610-8 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 272 | 8/21/2010 | $9,570.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 273 | 8/21/2010 | $6,325.00 | xxxxxx612-4 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 274 | 8/21/2010 | $3,970.00 | xxxxxx613-2 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 275 | 8/21/2010 | $4,290.00 | xxxxxx608-6 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 276 | 8/21/2010 | $5,755.00 | xxxxxx614-0 | Citizens Bank, Cottman Traditional, 2014 Cottman Avenue |
| 277 | 8/21/2010 | $9,570.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 278 | 8/22/2010 | $9,800.00 | xxxxxx607-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 279 | 8/24/2010 | $9,600.00 | xxxxxx421-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 280 | 8/24/2010 | $8,340.00 | xxxxxx611-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 281 | 8/24/2010 | $7,240.00 | xxxxxx613-2 | Citizens Bank, Cottman Traditional, 2014 Cottman Avenue |
| 282 | 8/24/2010 | $5,670.00 | xxxxxx614-0 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 283 | 8/24/2010 | $6,240.00 | xxxxxx612-4 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 284 | 9/3/2010 | $9,700.00 | xxxxxx607-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 285 | 9/3/2010 | $8,845.00 | xxxxxx610-8 | Citizens Bank, Bustleton Branch, Bustleton Ave & Parlin Street |
| 286 | 9/3/2010 | $4,300.00 | xxxxxx608-6 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 287 | 9/3/2010 | $4,300.00 | xxxxxx609-4 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 288 | 9/3/2010 | $7,315.00 | xxxxxx613-2 | Citizens Bank, Cottman Ave PathMARK, 2101-41 Cottman Avenue |
| 289 | 9/3/2010 | $9,285.00 | xxxxxx421-8 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 290 | 9/3/2010 | $5,345.00 | xxxxxx614-0 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 291 | 9/3/2010 | $8,945.00 | xxxxxx612-4 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 292 | 9/4/2010 | $9,000.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 293 | 9/5/2010 | $9,600.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 294 | 9/7/2010 | $5,420.00 | xxxxxx610-8 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 295 | 9/7/2010 | $5,880.00 | xxxxxx608-6 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 296 | 9/7/2010 | $4,420.00 | xxxxxx607-8 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 297 | 9/7/2010 | $6,620.00 | xxxxxx609-4 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 298 | 9/7/2010 | $9,750.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 299 | 9/7/2010 | $2,800.00 | xxxxxx613-2 | Citizens Bank, Red Lion Acme; 1970 |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| | | | | Red Lion Road |
| 300 | 9/7/2010 | $7,820.00 | xxxxxx614-0 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 301 | 9/7/2010 | $3,720.00 | xxxxxx612-4 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 302 | 9/11/2010 | $9,715.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 303 | 9/18/2010 | $8,300.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 304 | 9/19/2010 | $9250.00 | xxxxxx421-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 305 | 9/21/2010 | $4,000.00 | xxxxxx612-4 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 306 | 9/21/2010 | $4,000.00 | xxxxxx613-2 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 307 | 9/21/2010 | $4,000.00 | xxxxxx614-0 | Citizens Bank, Brous Branch, 290 Cottman Avenue |
| 308 | 9/21/2010 | $4,000.00 | xxxxxx607-8 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 309 | 9/21/2010 | $4,000.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 310 | 9/21/2010 | $4,000.00 | xxxxxx608-6 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 311 | 9/21/2010 | $4,000.00 | xxxxxx421-8 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 312 | 9/21/2010 | $4,000.00 | xxxxxx610-8 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 313 | 9/21/2010 | $4,000.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 314 | 10/2/2011 | $9,500.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| | | | | PathMARK, 2101-41 Cottman Avenue |
| 315 | 10/3/2010 | $9800.00 | xxxxxx612-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 316 | 10/4/2010 | $5,500.00 | xxxxxx614-0 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 317 | 10/4/2010 | $9,600.00 | xxxxxx613-2 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 318 | 10/4/2010 | $9,600.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 319 | 10/4/2010 | $5,500.00 | xxxxxx608-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 320 | 10/4/2010 | $7,300.00 | xxxxxx610-8 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 321 | 10/4/2010 | $5,500.00 | xxxxxx609-4 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 322 | 10/16/2010 | $9,960.00 | xxxxxx421-8 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 323 | 10/23/2010 | $9,885.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 324 | 10/24/2010 | $9,000.00 | xxxxxx607-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 325 | 10/28/2010 | $8,990.00 | xxxxxx610-8 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 326 | 10/30/2010 | $9,655.00 | xxxxxx614-0 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 327 | 10/30/2010 | $9,660.00 | xxxxxx608-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 328 | 11/6/2010 | $9,000.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| | | | | PathMARK, 2101-41 Cottman Avenue |
| 329 | 11/7/2010 | $9,000.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 330 | 11/7/2010 | $5,000.00 | xxxxxx612-4 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 331 | 11/7/2010 | $5,000.00 | xxxxxx613-2 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 332 | 11/7/2010 | $5,000.00 | xxxxxx614-0 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 333 | 11/7/2010 | $6,000.00 | xxxxxx608-6 | Citizens Bank, Krewstown Branch, 9353 Krewstown Road |
| 334 | 11/13/2010 | $9,550.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 335 | 11/13/2010 | $9,290.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 336 | 11/28/2010 | $9,700.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 337 | 12/11/2010 | $9,000.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 338 | 12/18/2010 | $9,800.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 339 | 12/29/2010 | $9,000.00 | xxxxxx614-0 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 340 | 12/29/2010 | $9,000.00 | xxxxxx608-6 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 341 | 12/30/2010 | $9,000.00 | xxxxxx610-8 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 342 | 12/30/2010 | $9,000.00 | xxxxxx609-4 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 343 | 1/8/2011 | $9,050.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 344 | 1/9/2011 | $9,000.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 345 | 1/14/2011 | $9,000.00 | xxxxxx631-2 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 346 | 1/15/2011 | $9,420.00 | xxxxxx614-0 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 347 | 1/15/2011 | $9,000.00 | xxxxxx608-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 348 | 1/22/2011 | $8,940.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 349 | 2/5/2011 | $9,470.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 350 | 2/12/2011 | $9,800.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 351 | 2/19/2011 | $9,565.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 352 | 2/26/2011 | $9,400.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 353 | 3/3/2011 | $9,000.00 | xxxxxx607-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 354 | 3/4/2011 | $9,000.00 | xxxxxx610-8 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 355 | 3/5/2011 | $9,250.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 356 | 3/5/2011 | $9,000.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
|  |  |  |  | Avenue |
| 357 | 3/6/2011 | $9,000.00 | xxxxxx608-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 358 | 3/12/2011 | $9,900.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 359 | 3/19/2011 | $9,300.00 | xxxxxx614-0 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 360 | 3/26/2011 | $9,570.00 | xxxxxx614-0 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 361 | 4/2/2011 | $9,900.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 362 | 4/9/2011 | $9,000.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 363 | 4/16/2011 | $9,710.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 364 | 4/23/2011 | $9,720.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 365 | 4/30/2011 | $9,353.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 366 | 5/7/2011 | $9,570.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 367 | 5/14/2011 | $9,000.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 368 | 5/20/2011 | $8,000.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 369 | 5/21/2011 | $9,700.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 370 | 5/28/2011 | $9,510.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 371 | 6/1/2011 | $8,550.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| | | | | Avenues |
| 372 | 6/4/2011 | $9,500.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 373 | 6/13/2011 | $9,985.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 374 | 6/20/2011 | $9,850.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 375 | 6/27/2011 | $9,500.00 | xxxxxx5326 | TD Bank, Red Lion Road |
| 376 | 7/5/2011 | $9,800.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 377 | 7/11/2011 | $9,946.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 378 | 7/18/2011 | $9,600.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |

2.     When conducting, aiding, abetting, and willfully causing, the financial transactions described in paragraph 1 above, defendant IHSANULLAH MAAF knew that the property involved in those financial transactions represented the proceeds of some form of unlawful activity; that is, the conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846.

3.     When conducting, aiding, abetting, and willfully causing, the financial transactions described in paragraph 1 above, defendant IHSANULLAH MAAF did so knowing that the transaction was designed in whole or in part to avoid a transaction reporting requirement under State or Federal law.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(ii) and 2.

## COUNTS THREE HUNDRED AND SEVENTY-NINE THROUGH FOUR HUNDRED AND NINETY-SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Citizens Bank and TD Bank are each a domestic financial institution governed by the reporting requirements of Title 31, United States Code, Sections 5313(a), 5325 and 5326 and all regulations and record-keeping and reporting requirements prescribed under such sections, and under Section 21 of the Federal Deposit Insurance Act and Public Law 91-508, Section 123.

2.     The government requires banks to give notice to the government by filing a currency transaction report ("CTR") for, among other things, each and every single transaction, including deposits, that includes more than $10,000 in cash.

3.     To avoid CTR reporting requirements and thus to conceal from the government the true nature and extent of his business, defendant IHSANULLAH MAAF, a/k/a "Sean," made, and aided and abetted the causing of, deposits of his cash receipts from sales of drugs at his store, Northeast Pharmacy into his business bank account.   When defendant IHSANULLAH MAAF deposited, aided and abetted the deposits, and caused to be deposited cash, defendant IHSANULLAH MAAF split, structured, aided and abetted, and caused to be structured the amount of cash in the transaction to be less than $10,000.

4.     On or about the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendant

**IHSANULLAH MAAF,**
**a/k/a "Sean,"**

knowingly and willfully, for the purpose of evading currency transaction reporting requirements imposed on financial institutions, caused and attempted to cause each of the domestic financial institutions set forth below, to fail to file a Currency Transaction Report (I.R.S. form 4789) required under Title 31, United States Code, Section 5313(a), regarding the receipt, deposit, exchange and transfer of United States currency in excess of $10,000, and structured and assisted in structuring and attempted to structure and assist in structuring, transactions with one or more domestic financial institutions, that is, defendant IHSANULLAH MAAF, a/k/a "Sean," split the cash receipts from his sales of prescriptions and deposited and caused to be deposited to his account at the financial institutions set forth below United States currency on the dates and in the amounts under $10,000 set forth below:

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|-------|------|-----------------------------------|-----------------------------------------------|----------------------------------------------------------|
| 379 | 8/19/2010 | $8,725.00 | xxxxxx611-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 380 | 8/19/2010 | $9,571.00 | xxxxxx612-4 | Citizens Bank, Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 381 | 8/19/2010 | $8,474.00 | xxxxxx613-2 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 382 | 8/19/2010 | $8,743.00 | xxxxxx608-6 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 383 | 8/19/2010 | $8,749.00 | xxxxxx614-0 | Citizens Bank, Cottman Traditional, 2014 Cottman Avenue |
| 384 | 8/19/2010 | $9,550.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 385 | 8/19/2010 | $5,999.00 | xxxxxx607-8 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 386 | 8/19/2010 | $3,289.00 | xxxxxx610-8 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 387 | 8/19/2010 | $3,850.00 | xxxxxx421-8 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 388 | 8/21/2010 | $2,910.00 | xxxxxx609-4 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 389 | 8/21/2010 | $4,075.00 | xxxxxx610-8 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 390 | 8/21/2010 | $2,960.00 | xxxxxx610-8 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 391 | 8/21/2010 | $9,570.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 392 | 8/21/2010 | $6,325.00 | xxxxxx612-4 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 393 | 8/21/2010 | $3,970.00 | xxxxxx613-2 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 394 | 8/21/2010 | $4,290.00 | xxxxxx608-6 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 395 | 8/21/2010 | $5,755.00 | xxxxxx614-0 | Citizens Bank, Cottman Traditional, 2014 Cottman Avenue |
| 396 | 8/21/2010 | $9,570.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 397 | 8/22/2010 | $9,800.00 | xxxxxx607-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 398 | 8/24/2010 | $9,600.00 | xxxxxx421-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 399 | 8/24/2010 | $8,340.00 | xxxxxx611-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 400 | 8/24/2010 | $7,240.00 | xxxxxx613-2 | Citizens Bank, Cottman Traditional, 2014 Cottman Avenue |
| 401 | 8/24/2010 | $5,670.00 | xxxxxx614-0 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 402 | 8/24/2010 | $6,240.00 | xxxxxx612-4 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 403 | 9/3/2010 | $9,700.00 | xxxxxx607-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 404 | 9/3/2010 | $8,845.00 | xxxxxx610-8 | Citizens Bank, Bustleton Branch, Bustleton Ave & Parlin Street |
| 405 | 9/3/2010 | $4,300.00 | xxxxxx608-6 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 406 | 9/3/2010 | $4,300.00 | xxxxxx609-4 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 407 | 9/3/2010 | $7,315.00 | xxxxxx613-2 | Citizens Bank, Cottman Ave PathMARK, 2101-41 Cottman Avenue |
| 408 | 9/3/2010 | $9,285.00 | xxxxxx421-8 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 409 | 9/3/2010 | $5,345.00 | xxxxxx614-0 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 410 | 9/3/2010 | $8,945.00 | xxxxxx612-4 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 411 | 9/4/2010 | $9,000.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 412 | 9/5/2010 | $9,600.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 413 | 9/7/2010 | $5,420.00 | xxxxxx610-8 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 414 | 9/7/2010 | $5,880.00 | xxxxxx608-6 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 415 | 9/7/2010 | $4,420.00 | xxxxxx607-8 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 416 | 9/7/2010 | $6,620.00 | xxxxxx609-4 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 417 | 9/7/2010 | $9,750.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| | | | | 2516 Welsh Road |
| 418 | 9/7/2010 | $2,800.00 | xxxxxx613-2 | Citizens Bank, Red Lion Acme; 1970 Red Lion Road |
| 419 | 9/7/2010 | $7,820.00 | xxxxxx614-0 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 420 | 9/7/2010 | $3,720.00 | xxxxxx612-4 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 421 | 9/11/2010 | $9,715.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 422 | 9/18/2010 | $8,300.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 423 | 9/19/2010 | $9250.00 | xxxxxx421-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 424 | 9/21/2010 | $4,000.00 | xxxxxx612-4 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 425 | 9/21/2010 | $4,000.00 | xxxxxx613-2 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 426 | 9/21/2010 | $4,000.00 | xxxxxx614-0 | Citizens Bank, Brous Branch, 290 Cottman Avenue |
| 427 | 9/21/2010 | $4,000.00 | xxxxxx607-8 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 428 | 9/21/2010 | $4,000.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 429 | 9/21/2010 | $4,000.00 | xxxxxx608-6 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 430 | 9/21/2010 | $4,000.00 | xxxxxx421-8 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 431 | 9/21/2010 | $4,000.00 | xxxxxx610-8 | Citizens Bank, Castor Avenue Branch, 6537 Castor Avenue |
| 432 | 9/21/2010 | $4,000.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 433 | 10/2/2011 | $9,500.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 434 | 10/3/2010 | $9800.00 | xxxxxx612-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 435 | 10/4/2010 | $5,500.00 | xxxxxx614-0 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 436 | 10/4/2010 | $9,600.00 | xxxxxx613-2 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 437 | 10/4/2010 | $9,600.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 438 | 10/4/2010 | $5,500.00 | xxxxxx608-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 439 | 10/4/2010 | $7,300.00 | xxxxxx610-8 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 440 | 10/4/2010 | $5,500.00 | xxxxxx609-4 | Citizens Bank, Roosevelt & McGee Acme, 6601 Roosevelt Blvd |
| 441 | 10/16/2010 | $9,960.00 | xxxxxx421-8 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 442 | 10/23/2010 | $9,885.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 443 | 10/24/2010 | $9,000.00 | xxxxxx607-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 444 | 10/28/2010 | $8,990.00 | xxxxxx610-8 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 445 | 10/30/2010 | $9,655.00 | xxxxxx614-0 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 446 | 10/30/2010 | $9,660.00 | xxxxxx608-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 447 | 11/6/2010 | $9,000.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 448 | 11/7/2010 | $9,000.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 449 | 11/7/2010 | $5,000.00 | xxxxxx612-4 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |
| 450 | 11/7/2010 | $5,000.00 | xxxxxx613-2 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 451 | 11/7/2010 | $5,000.00 | xxxxxx614-0 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 452 | 11/7/2010 | $6,000.00 | xxxxxx608-6 | Citizens Bank, Krewstown Branch, 9353 Krewstown Road |
| 453 | 11/13/2010 | $9,550.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 454 | 11/13/2010 | $9,290.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 455 | 11/28/2010 | $9,700.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 456 | 12/11/2010 | $9,000.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 457 | 12/18/2010 | $9,800.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 458 | 12/29/2010 | $9,000.00 | xxxxxx614-0 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 459 | 12/29/2010 | $9,000.00 | xxxxxx608-6 | Citizens Bank, Red Lion Acme, 1970 Red Lion Road |
| 460 | 12/30/2010 | $9,000.00 | xxxxxx610-8 | Citizens Bank, Bustleton Branch, Bustleton Avenue & Parlin Street |
| 461 | 12/30/2010 | $9,000.00 | xxxxxx609-4 | Citizens Bank, Northeast ShopRite, 11000 Roosevelt Blvd |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 462 | 1/8/2011 | $9,050.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 463 | 1/9/2011 | $9,000.00 | xxxxxx611-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 464 | 1/14/2011 | $9,000.00 | xxxxxx631-2 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 465 | 1/15/2011 | $9,420.00 | xxxxxx614-0 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 466 | 1/15/2011 | $9,000.00 | xxxxxx608-6 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 467 | 1/22/2011 | $8,940.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 468 | 2/5/2011 | $9,470.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 469 | 2/12/2011 | $9,800.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 470 | 2/19/2011 | $9,565.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 471 | 2/26/2011 | $9,400.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 472 | 3/3/2011 | $9,000.00 | xxxxxx607-8 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 473 | 3/4/2011 | $9,000.00 | xxxxxx610-8 | Citizens Bank, Brous Branch, 2910 Cottman Avenue |
| 474 | 3/5/2011 | $9,250.00 | xxxxxx609-4 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 475 | 3/5/2011 | $9,000.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| | | | | Avenue |
| 476 | 3/6/2011 | $9,000.00 | xxxxxx608-6 | Citizens Bank, Boulevard Branch, 2516 Welsh Road |
| 477 | 3/12/2011 | $9,900.00 | xxxxxx022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 478 | 3/19/2011 | $9,300.00 | xxxxxx614-0 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 479 | 3/26/2011 | $9,570.00 | xxxxxx614-0 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 480 | 4/2/2011 | $9,900.00 | 621959022-1 | Citizens Bank, Cottman Avenue PathMARK, 2101-41 Cottman Avenue |
| 481 | 4/9/2011 | $9,000.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 482 | 4/16/2011 | $9,710.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 483 | 4/23/2011 | $9,720.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 484 | 4/30/2011 | $9,353.00 | 4259165326 | TD Bank, Cottman and Bustleton Avenues |
| 485 | 5/7/2011 | $9,570.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 486 | 5/14/2011 | $9,000.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 487 | 5/20/2011 | $8,000.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 488 | 5/21/2011 | $9,700.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 489 | 5/28/2011 | $9,510.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |

| Count | Date | Approximate Amount of Cash Deposit | Transaction - Cash Deposit into Account Number | Bank and Branch location of Cash Deposit in Philadelphia |
|---|---|---|---|---|
| 490 | 6/1/2011 | $8,550.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 491 | 6/4/2011 | $9,500.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 492 | 6/13/2011 | $9,985.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 493 | 6/20/2011 | $9,850.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 494 | 6/27/2011 | $9,500.00 | xxxxxx5326 | TD Bank, Red Lion Road |
| 495 | 7/5/2011 | $9,800.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton |
| 496 | 7/11/2011 | $9,946.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |
| 497 | 7/18/2011 | $9,600.00 | xxxxxx5326 | TD Bank, Cottman and Bustleton Avenues |

All in violation of Title 31, United States Code, Section 5324(a) and Title 18, United States Code, Section 2.

## COUNT FOUR HUNDRED AND NINETY-EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs One through Three of Counts Three Hundred Seventy-Nine through Four Hundred Ninety-Seven of this Indictment are realleged here.

2.      From in or about August 2010 through in or about July 2011, in the Eastern District of Pennsylvania and elsewhere, defendant

**IHSANULLAH MAAF,**

**a/k/a "Sean,"**

for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations promulgated thereunder, knowingly caused and attempted to cause, and aided and abetted the causing of a domestic financial institution to fail to file Currency Transaction Reports ("CTR") for currency transactions in excess of $10,000, by depositing sums totaling in excess of $10,000 at one time without a CTR being filed, as part of a pattern of illegal activity involving transactions of more than $100,000 in a twelve month period.

In violation of Title 31, United States Code, Sections 5324(a)(1), (d)(2), and Title 18, United States Code, Section 2.

<u>**NOTICE OF FORFEITURE NO. 1**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.     As a result of the violations of Title 21, United States Code, Sections 846

and 841(a)(1) set forth in this indictment, defendants

**NORMAN M. WERTHER,**
**WILLIAM STUKES,**
**a/k/a "DEREK Stukes,"**
**a/k/a "Bones,"**
**a/k/a "Twin,"**
**a/k/a "Shooter,"**
**a/k/a "Shotgun,"**
**GERALD BRINKLEY,**
**a/k/a "Muhammad,"**
**IHSANULLAH MAAF,**
**a/k/a "Sean,"**
**RITA MYLES,**
**RASHIDA LYLES,**
**TINA WEISZ,**
**DARRAH ROBINSON,**
**HERBERT HUGHES,**
**a/k/a "Zack,"**
**CARLOS RICHARDS,**
**WARREN JOHNSON,**
**a/k/a "Anwar,"**
**GREGORY JOHNSON,**
**a/k/a "Quadire,"**
**CLAUDE NOLAN,**
**a/k/a "Habeeb,"**
**TIMOTHY PEDEN,**
**a/k/a "Lou,"**
**DARREL HENDRICKS,**
**TROY FLETCHER,**
**a/k/a "JAMES,"**
**CHRISTOPHER PIZZO,**
**a/k/a "Jay,"**
**ATO STRONG,**
**a/k/a "Toomey,"**
**SYLVESTER ADAMS,**
**a/k/a "Link,"**
**JASON ROMM,**

**a/k/a "Jay,"**
**JAMES LYLES,**
**a/k/a "Little,"**
**MICHAEL SANDERS,**
**a/k/A "Kadeer,"**
**ZANIAH BEARoad,**
**DONALD BROWN,**
**KIM CARTER,**
**ANDRE DAWKINS,**
**EVETTE GRINGROW,**
**LEON HARRIS,**
**DENISE HAWKINS,**
**RONNIE JACKSON,**
**CARLA JENKINS,**
**BEATRICE LEWIS,**
**MICHAEL LITTLEJOHN,**
**VERNELL MCDANIEL,**
**ERIC PERRY,**
**MARK REID,**
**MICHAEL ROMINIECKI,**
**WAYNE RUCKER,**
**PATRICIA SIMMONS,**
**LAWRENCE STITH,**
**DEBRA STUKES,**
**VIOLA STUKES,**
**STEVEN THOMPSON,**
**ERIC TREADWELL,**
**JULIA TURNER**
**GERALDINE WATKINS,**
**YOLANDA WILLIAMS,**
**LAMONT BUTCHER,**
**KHALIFF HEADEN,**
**SOPHIA HOLDER,**
**LATOISHA JONES,**
**DAWN LITTLE, and**
**DEREK STUKES**

shall forfeit to the United States of America:

(a)     any property used or intended to be used, in any manner or part, to

commit, or to facilitate the commission of, such offenses;

(b)      any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offenses, including, but not limited to:

i.      A sum of money equal to at least $5,000,000 in United States currency, representing the amount of proceeds obtained as a result of the conspiracy to violate the Controlled Substances Act, for which the defendants are jointly and severally liable;

ii.      $1728 cash seized from defendant JASON ROMM on or about February 9, 2011;

iii.      $64 cash seized from defendant TROY FLETCHER on or about March 4, 2011;

iv.      $8082 cash seized from defendant WILLIAM STUKES on or about March 10, 2011;

v.      $240 cash seized from defendant TROY FLETHCER on or about March 10, 2011;

vi.      $1630 cash seized from defendant WARREN JOHNSON on or about May 27,2011;

vii.      $4020 cash seized from defendant MICHAEL SANDERS on or about May 31, 2011;

viii.      All funds in TD Bank Account Number 4259165326 (approximately $605,000) titled to defendant MAAF in the name of MAAF CORPORTAION DBA NORTHEAST PHARMACY;

ix.     All funds in TD Bank Account Number 365133842 (approximately $32,000) titled to defendant IHSANULLAH MAAF in the name of IHSANULLAH MAAF.

x.      All funds in Citizens Bank Account Number 6232306043 (approximately $36,108.38) titled to PHL Compcare, LLC and defendant NORMAN M. WERTHER, MD, LLC;

xi.     All funds in Wells Fargo Bank Account Number 2000059363631 (approximately $25,958.00) titled to PHL Compcare, LLC;

xii.    All funds in TD Bank Account Number 425-9732753 (approximately $33,203.38) titled to defendant NORMAN M. WERTHER, MD, LLC;

xiii.   The real property known as 740 Welsh Road, Horsham, Pennsylvania 19044, but also known as 888 Welsh Road, Horsham, Pennsylvania 19044 and recorded on the same book and page in the Recorder of Deeds Office;

xiv.    The real property known as 9869 Cowden Street, Philadelphia, Pennsylvania 19115;

xv.     The real property known as 6721 Lynford Street, Philadelphia, Pennsylvania 19149; and

xvi.    The real property known as 2412 N. 29th Street, Philadelphia, Pennsylvania 19132.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant(s):

(a)     cannot be located upon the exercise of due diligence;

104

       (b)      has been transferred or sold to, or deposited with, a thiRoad party;

       (c)      has been placed beyond the jurisdiction of the Court;

       (d)      has been substantially diminished in value; or

       (e)      has been commingled with other property which cannot be divided

without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of the defendant(s) up to the value of the

property subject to forfeiture.

      All pursuant to Title 21, United States Code, Section 853.

## NOTICE OF FORFEITURE NO. 2

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    As a result of the violations of Title 18, United States Code, Section 1956 set forth in this indictment, defendant

**IHSANULLAH MAAF,**
**a/k/a "Sean,"**

shall forfeit to the United States of America any and all property involved in such offenses, and any property traceable to such property.

      2.    Such property shall include, but not be limited to, the following:

      a.    Money Judgment:  A sum of money equal to at least $920,574 in United States currency, representing the amount of property involved in the conspiracy to violate the Money Laundering Control Act, for which the defendants are jointly and severally liable, and:

      b.    All funds in TD Bank Account Number 4259165326 (approximately $605,000) titled to defendant IHSANULLAH MAAF in the name of MAAF CORPORTAION DBA NORTHEAST PHARMACY; and

      c.    All funds in TD Bank Account Number  365133842 (approximately $32,000) titled to defendant IHSANULLAH MAAF in the name of IHSANULLAH MAAF.

      3.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982.

## NOTICE OF FORFEITURE NO. 3

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 31, United States Code, Section 5324(a)(1) and (d)(2), set forth in this indictment, defendant

**IHSANULLAH MAAF,**
**a/k/a "Sean,"**

shall forfeit to the United States of America any and all property involved in such offense(s), and any property traceable to such property, including, but not be limited to, the following:

     a.     Money Judgment: A sum of money equal to at least $920,574 in United States currency, representing the amount of property involved in the conspiracy to violate the Money Laundering Control Act, for which the defendants are jointly and severally liable, and

     b.     All funds in TD Bank Account Number 4259165326 (approximately $605,000) titled to defendant IHSANULLAH MAAF in the name of MAAF CORPORTAION DBA NORTHEAST PHARMACY; and

     c.     All funds in TD Bank Account Number 365133842 (approximately $32,000) titled to defendant IHSANULLAH MAAF in the name of IHSANULLAH MAAF.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant(s):

     (a)     cannot be located upon the exercise of due diligence;

     (b)     has been transferred or sold to, or deposited with, a third party;

     (c)     has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 31 United States Code, Section 5317(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 31, United States Code, Section 5317(c) and Title 28, United States Code, Section 2461.

**A TRUE BILL:**

_____
**GRAND JURY FOREPERSON**

_____
**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**

First Assistant U.S. Attorney

109

No.

# UNITED STATES DISTRICT COURT

## Eastern District of Pennsylvania

### Criminal Division

THE UNITED STATES OF AMERICA

vs.

NORMAN M. WERTHER, WILLIAM STUKES, a/k/a "Derek Stukes,"a/k/a "Bones,"a/k/a "Twin,"a/k/a "Shooter,"a/k/a "Shotgun,"
GERALD BRINKLEY,a/k/a "Muhammad," IHSANULLAH MAAF, a/k/a "Sean," RITA MYLES, RASHIDA LYLES,
TINA WEISZ, DARRAH ROBINSON, HERBERT HUGHES, a/k/a "Zack," CARLOS RICHARDS,
WARREN JOHNSON, a/k/a "Anwar," GREGORY JOHNSON, a/k/a "Quadir," CLAUDE NOLAN, a/k/a "Habeeb,"
TIMOTHY PEDEN, a/k/a "Lou,"DARRELL HENDRICKS, TROY FLETCHER, a/k/a "James,"
CHRISTOPHER PIZZO, a/k/a "Jay," ATO STRONG, a/k/a "Toomey," SYLVESTER ADAMS,a/k/a "Link,"
JASON ROMM, a/k/a "Jay," JAMES LYLES, a/k/a "Little," a/k/a "Kader,"MICHAEL SANDERS,
ZANIAH BEARD,DONALD BROWN, KIM CARTER, ANDRE DAWKINS, EVETTE GRINGROW, LEON HARRIS,
DENISE HAWKINS, RONNIE JACKSON, CARLA JENKINS, BEATRICE LEWIS, MICHAEL LITTLEJOHN,
VERNELL MCDANIELS, ERIC PERRY, MARK REID, MICHAEL ROMINIECKI, WAYNE RUCKER,
PATRICIA SIMMONS, LAWRENCE SITH, DEBRA STUKES, VIOLA STUKES, STEVEN THOMPSON,
ERIC TREADWELL, JULIA TURNER, GERALDINE WATKINS, YOLANDA WILLIAMS, LAMONT BUTCHER,
KHALIFF HEADEN, SOPHIA HOLDER, LATOISHA JONES, DAWN LITTLE, and DEREK STUKES

# INDICTMENT

## Counts

21 U.S.C. § 846 (conspiracy to distribute controlled substances – 1 count)
21 U.S.C. § 841 (distribution of controlled substances – 8 counts)
21 U.S.C. § 841 (possession with the intent to distribute controlled substances – 10 counts)
18 U.S.C. § 1347 (health care fraud - 240 counts)
18 U.S.C. § 1956(a)(1) (money laundering - 119 counts)
31 U.S.C. § 5324(a)(1) (structuring of financial transactions - 119 counts)
31 U.S.C. § 5324(a)(1), (d)(2) (aggravated structuring of financial transactions - 1 count)
18 U.S.C. § 2 (aiding and abetting)
Notices of forfeiture

A true bill.

_____
Foreman

Filed in open court this_____day,

of_____A.D. 20____

_____
Clerk

Bail, $_____