## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 11-434** |
| **v.** | : | **DATE FILED**: _____ |
| **NORMAN WERTHER** | : | **VIOLATIONS:** |
| **KIM CARTER** | | **21 U.S.C. § 846 (conspiracy to distribute** |
| **ANGEL DUPREY** | : | **controlled substances - 6 counts)** |
| **FERDINAND NIEVES,** | | **21 U.S.C. § 856 (maintaining a drug-** |
| **a/k/a "Fernando,"** | : | **involved premises - 1 count)** |
| **ANTHONY DIPASQUALE** | | **21 U.S.C. § 841(a)(1), (b)(1)(C)** |
| **TROY BRINKLEY,** | : | **(distribution of controlled substance** |
| **a/k/a "Shyheed,"** | | **resulting in death - 1 count)** |
| **EDWARD JACKSON,** | : | **21 U.S.C. § 841(a)(1), (b)(1)(C)** |
| **a/k/a "Quill,"** | | **(distribution of controlled substances -** |
| **EDWARD DOMINICK, SR.,** | : | **196 counts)** |
| **a/k/a "Kev,"** | | **21 U.S.C. § 841(a)(1), (b)(1)(C)** |
| **a/k/a "Uncle Eddie,"** | : | **(possession with the intent to distribute** |
| **FREDERICK KELSEY,** | | **controlled substances - 3 counts)** |
| **a/k/a "Charles Johnson,"** | : | **18 U.S.C. § 1956(a)(1) (money** |
| **a/k/a "Omar,"** | | **laundering - 117 counts)** |
| **KYLE JONES** | : | **18 U.S.C. § 1347 (health care fraud - 44** |
| **ALI ARMSTEAD** | | **counts)** |
| **TERRELL JACKSON** | : | **18 U.S.C. § 2 (aiding and abetting)** |
| **BERNARD JACKSON** | | **Notice of forfeiture** |
| **RONALD CAMPBELL** | | |

## T H I R D   S U P E R S E D I N G   I N D I C T M E N T

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

### BACKGROUND

1.      Defendant NORMAN WERTHER was a physician licensed by the

Commonwealth of Pennsylvania and held a Pennsylvania medical license as well as a Drug

Enforcement Administration ("DEA") registration number, and conducted a practice, PHL Compcare, located at 301 Davisville Road, Willow Grove, Pennsylvania.

2.      Ihsanullah Maaf, a/k/a "Sean," charged elsewhere, was a pharmacist licensed by the Commonwealth of Pennsylvania who held DEA registration number FN0841418, and who owned and ran Northeast Pharmacy, located at 6730 Bustleton Avenue, in Philadelphia, Pennsylvania.

3.      The Controlled Substances Act governs the manufacture, distribution, and dispensing of controlled substances in the United States.  Under the Controlled Substances Act, there are five schedules of controlled substances – Schedules I, II, III, IV, and V.  Controlled substances are scheduled into these levels based upon their potential for abuse, among other things.  Abuse of Schedule II controlled substances may lead to severe psychological or physical dependence.

4.      Oxycodone is a narcotic analgesic that is similar to morphine and is classified as a Schedule II controlled substance, sometimes prescribed under the brand name Oxycontin.  Oxycodone is used to treat severe pain, and, even if taken only in prescribed amounts, can cause physical and psychological dependence when taken for a long time. Oxycodone is used in pain relief drugs in varying strengths, including 5, 10, 30, 40, 60, and 80 milligram amounts.  For example, Percocet is manufactured by numerous pharmaceutical companies under the following brand names:  Endocet, Roxicet, Roxilox and Tylox.  Percocet, which contains 10 milligrams of oxycodone, is used to treat moderate to moderately severe pain, and contains two drugs, oxycodone and acetaminophen.  Even if taken only in prescribed amounts, pills containing amounts as low as 10 milligrams of oxycodone can cause physical and

psychological dependence when taken for a long time.  Users who abuse pills containing

oxycodone frequently do so by smoking, chewing, dissolving, injecting, and crushing the pills

and snorting the substance.  In August 2010, based on the potential for abuse of the pills

containing larger proportions of oxycodone, Perdue Pharma, a large pharmaceutical

manufacturer, changed the formulation of their "Oxycontin" ® pills containing 40 milligram and

larger concentrations of oxycodone in order that the pills not be able to be abused as easily.  To

reduce the ability of users to abuse these pills, Perdu Pharma changed the formulation to prevent

the medication from being cut, broken, chewed, dissolved, or crushed, methods that are typically

used to circumvent the time-release action of the medication.

   5. Title 21, United States Code, Section 841(a) (1), provides that "[e]xcept as

authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally

… manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or

dispense, a controlled substance."

   6. Title 21, United States Code, Section 802(10), provides that the term

 "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or

pursuant to the lawful order of, a practitioner, including the prescribing and administering of a

controlled substance and the packaging, labeling or compounding necessary to prepare the

substance for delivery.

   7. Title 21, United States Code, Section 821, provides that "[t]he Attorney

General [of the United States] is authorized to promulgate rules and regulations relating to the

registration and control of the manufacture, distribution and dispensing of controlled

substances."

8.      The Attorney General of the United States has exercised his rulemaking authority regarding the dispensing of controlled substances through the promulgation of 21 Code of Federal Regulations § 1306.04, governing the issuance of prescriptions, which provides, among other things, that a prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.  Moreover, an order purporting to be a prescription issued not in the usual course of professional treatment is not a prescription within the meaning and intent of section 309 of the Act [21 U.S.C. § 829] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances.

9.      The Pennsylvania Code of Professional and Vocational Standards, Title 49, Chapter 16.92, defines the authority of physicians licensed by the Commonwealth of Pennsylvania to prescribe or dispense controlled substances.  Chapter 16.92 provides in pertinent part:

(a)   A person licensed to practice medicine and surgery in this Commonwealth or otherwise licensed or regulated by the Board, when prescribing, administering or dispensing controlled substances, shall carry out, or cause to be carried out, the following minimum standards:

(1)      Initial medical history and physical examination....  [B]efore commencing treatment that involves prescribing, administering or dispensing a controlled substance, an initial medical history shall be taken and an initial examination shall be conducted unless emergency circumstances justify otherwise.  Alternatively, medical history and physical examination information recorded by another health care provider may be considered if the medical history was taken and the physical examination was conducted within the immediately preceding thirty days.  The

4

physical examination shall include an evaluation of the heart, lungs, blood pressure and body functions that relate to the patient's specific complaint.

(2)     Reevaluations.  Among the factors to be considered in determining the number and the frequency of follow-up evaluations that should be recommended to the patient are the condition diagnosed, the controlled substance involved, expected results and possible side effects.  For chronic conditions, periodic follow-up evaluations shall be recommended to monitor the effectiveness of the controlled substance in achieving the intended results.

(3)     Patient counseling.  Appropriate counseling shall be given to the patient regarding the condition diagnosed and the controlled substance prescribed, administered or dispensed.  Unless the patient is in an inpatient care setting, the patient shall be specifically counseled about dosage levels, instructions for use, frequency and duration of use and possible side effects.

(4)     Medical Records.  [C]ertain information shall be recorded in the patient's medical record on each occasion when a controlled substance is prescribed, administered or dispensed.  This information shall include the name of the controlled substance, its strength, the quantity and the date it was prescribed, administered or dispensed to a patient.  The medical record shall also include a specification of the symptoms observed and reported, the diagnosis of the condition for which the controlled substance is being given and the directions given to the patient for the use of the controlled substance.  If the same controlled substance continues to be prescribed, administered or dispensed, the medical record shall reflect changes in the symptoms observed and reported, in the diagnosis of the condition for which the controlled substance is being given and in the directions given to the patient.

10.     Accordingly, as a medical doctor, defendant NORMAN WERTHER was authorized to dispense to patients Schedules II controlled substances and to prescribe medicine to patients, including controlled substances, for legitimate medical purposes and in the usual course of professional practice.

11.     DEA regulations provide that pharmacists have a "corresponding responsibility" to ensure that a prescription that they fill was "issued for a legitimate medical

purpose by an individual practitioner acting in the usual course of his professional practice"
pursuant to 21 C.F.R. § 1306.04(a).

12.     With the assistance of defendant NORMAN WERTHER's medical staff
and others who procured and transported the so-called patients (hereinafter referred to as
"pseudo-patients") to defendant WERTHER's office, the pseudo-patients paid an "office visit"
fee to obtain prescriptions for controlled substances from defendant WERTHER, who prescribed
narcotics without there being a legitimate medical purpose for these controlled substances.  After
obtaining the prescription, these pseudo-patients had the prescriptions filled at a pharmacy and
then turned the pills over to another person for a fee; thereafter, the narcotics were sold to a
street-level drug dealer who trafficked in the pills.

## THE CONSPIRACY

13.     From in or about February 2009 through in or about August 2011, in the
Eastern District of Pennsylvania, defendants

**NORMAN WERTHER and
KIM CARTER**

conspired and agreed, together and with William Stukes, Gerald Brinkley, Ihsanullah Maaf, Rita
Myles, Rashida Lyles, Tina Weisz, Darrah Robinson, Herbert Hughes, Carlos Richards, Warren
Johnson, Gregory Johnson, Claude Nolan, Timothy Peden, Darrell Hendricks, Troy Fletcher,
Christopher Pizzo, Ato Strong, Sylvester Adams, Jason Romm, James Lyles, Michael Sanders,
Zaniah Beard, Donald Brown, Andre Dawkins, Evette Gringrow, Leon Harris, Denise Hawkins,
Ronnie Jackson, Carla Jenkins, Beatrice Lewis, Michael Littlejohn, Vernell McDaniels, Eric
Perry, Mark Reid, Michael Rominiecki, Wayne Rucker, Patricia Simmons, Lawrence Stith,

6

Debra Stukes, Viola Stukes, Steven Thompson, Eric Treadwell, Julia Turner, Geraldine Watkins,

Yolanda Williams, Lamont Butcher, Khaliff Headen, Sophia Holder, Latoisha Jones, Dawn

Little, and Derek Stukes (all charged elsewhere), and others known and unknown to the grand

jury, to knowingly and intentionally distribute and dispense, outside the usual course of

professional practice and not for a legitimate medical purpose, a mixture and substance

containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of

Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## MANNER AND MEANS

It was part of the conspiracy that:

14.     Defendant NORMAN WERTHER issued prescriptions for Schedule II

controlled substances containing oxycodone to pseudo-patients outside the usual course of

professional practice and not for a legitimate medical purpose, and in return received payments

for the office visits of these pseudo-patients.  Defendant WERTHER's prescribing habits

mirrored the need of the drug traffickers:  early in the conspiracy, he prescribed pills each

containing 10 milligrams of oxycodone as well as Oxycontin®, 40, 60, and 80 milligrams of

oxycodone, to the pseudo patients; when the street demand for 30 milligram oxycodone pills

increased, defendant WERTHER stopped prescribing Oxycontin® 40, 60, and 80 milligram pills

and switched his patients receiving that concentration to 30 milligram pills.  In response to

pseudo-patients requesting pills with different concentrations of oxycodone, and in response to

statements from patients that they were buying or receiving particular concentrations of

oxycodone illegally, defendant WERTHER prescribed those patients pills with the requested

concentration of oxycodone.  Defendant WERTHER arranged his schedule so that different

group leaders bringing their group of pseudo-patients to him to obtain prescriptions for

oxycodone were scheduled during different blocks of time in his schedule.   Although many of

the pseudo-patients had medical insurance, defendant WERTHER did not accept medical

insurance for pseudo-patients' office visits when the pseudo-patients came to obtain prescriptions

for Schedule II narcotics for pain relief, requiring instead that payment for visits by the pseudo-

patients to this portion of his practice be paid with cash, check, credit card, or money orders only.

For the much smaller portion of his practice run as a physical therapy and rehabilitation practice,

defendant WERTHER did accept insurance.  Defendant WERTHER deposited some of the

proceeds from the pseudo-patients' office visit fees into various business accounts, listed under

PHL Compcare, LLC and Norman Werther.  To attempt to hide his increased proceeds from the

illegal dispensing of these controlled substances to pseudo-patients, defendant WERTHER

opened multiple bank accounts into which he funneled proceeds from his prescribing of

narcotics.  Defendant WERTHER directed, and his wife made, multiple deposits on the same day

at multiple banks, rather than in one bank account, to avoid the notice of the individual banks.

Defendant WERTHER directed his staff to instruct the group leaders and/or drivers who were

paying the fees of the pseudo-patients to break up the sequential nature of the money orders

defendant WERTHER required as payment for the pseudo-patients brought by the drivers so as

not to have the sequentially numbered money orders attract attention to any of his new bank

accounts.

          15.     Defendant NORMAN WERTHER set aside a block of time at

approximately 10:00 a.m. each business day for appointments for pseudo-patients of William

Stukes and Gerald Brinkley.

8

16.     William Stukes arranged for pseudo-patients to go to defendant NORMAN WERTHER's office to claim pain to obtain a prescription for controlled substances, specifically, pills containing oxycodone, a Schedule II controlled substance.  William Stukes arranged the transportation of the pseudo-patients to defendant WERTHER's office and then to a pharmacy to fill the prescriptions obtained from defendant WERTHER, whereupon the pseudo-patients turned over the controlled substances to Williams Stukes or one of his workers.  William Stukes paid the pseudo-patients a fee for participating in this criminal enterprise, paid the office visit charge at the doctor's office, and also paid for the prescription to be filled if the pseudo-patient did not use his/her own medical insurance to pay for the prescription.  William Stukes gave directions to defendant WERTHER and his staff - Rita Myles, Rashida Lyles, and Tina Weisz - about the handling of pseudo-patients he sent to the office; paid the physician's staff a fee; and gave directions to Ihsanullah Maaf, a/k/a "Sean," a pharmacist, about the pseudo-patients that William Stukes directed to Maaf's pharmacy.  William Stukes then redistributed the controlled substances he obtained from the pseudo-patients to drug dealers for a significant profit.

17.     Gerald Brinkley, a/k/a "Muhammad," and Darrah Robinson worked with William Stukes to coordinate the transportation of pseudo-patients to defendant NORMAN WERTHER's office to obtain prescriptions for Schedule II narcotics, the payment of the pseudo-patients, the payment for and filling of the pseudo-patients' prescriptions, and the redistribution of the narcotics obtained, and were paid for their participation.

18.     Ihsanullah Maaf, a/k/a "Sean," was a licensed pharmacist who owned and operated Northeast Pharmacy, located at 6730 Bustleton Avenue, Philadelphia, PA.  Maaf

9

purchased significant quantities of oxycodone products directly from a pharmaceutical supply company and filled prescriptions of William Stukes' pseudo-patients, well knowing that, once filled, the prescriptions were to be immediately turned over to another person.  To attempt to hide his increased cash proceeds from the illegal dispensing of these controlled substances to William Stukes' pseudo-patients, Maaf opened an array of bank accounts, and together with his father, structured the deposits so as to avoid the reporting requirements, and purchased property in the names of others.

          19.    Rita Myles, Rashida Lyles, and Tina Weisz worked at the practice of defendant NORMAN WERTHER.  They assisted in the scheduling and rapid movement of pseudo-patients through defendant WERTHER's office and in accordance with the schedule dictated by defendant WERTHER and his wife for the groups bringing pseudo-patients to defendant WERTHER (which was written by defendant WERTHER'S wife and posted on a bulletin board), and provided what should have been private medical information about the scheduling and prescribing of narcotics to the group leaders and drivers of the various groups. Myles, Lyles, and Weisz coordinated with the group leaders and drivers to prepare a daily list of which pseudo-patients would be seen on each day.  Myles, Lyles, and Weisz would confirm to pharmacies that the prescriptions for oxycodone pills for the group members' pseudo-patients were "valid," well knowing they were not, when pharmacies would call to verify the prescriptions issued by defendant WERTHER.  Rita Myles, Rashida Lyles, and Tina Weisz sometimes received a fee in cash from the group leaders, knowing that the pseudo-patients sent to defendant WERTHER's office by the group leaders were turning over their prescribed narcotics to that group leader or his designee.

20.     The pseudo-patients provided little to no medical records on their first visit to verify their claim of pain; nonetheless, defendant NORMAN WERTHER gave them a prescription for a large number of pills each containing a Schedule II narcotic.

21.     The pseudo-patients of defendant NORMAN WERTHER normally received only a cursory physical examination but little other medical care or treatment from defendant WERTHER before receiving a prescription for controlled substances from defendant WERTHER.

22.     Herbert Hughes, Carlos Richards, Warren Johnson, Gregory Johnson, Claude Nolan, Timothy Peden, Darrell Hendricks were drivers who were directed, and paid, by William Stukes and Gerald Brinkley to transport pseudo-patients from their homes in the Philadelphia area to the office of defendant NORMAN WERTHER.  Herbert Hughes, Carlos Richards, Warren Johnson, Gregory Johnson, Claude Nolan, Timothy Peden, Darrell Hendricks drove the pseudo-patients to the doctor's office, frequently in vehicles provided by William Stukes.  The drivers also paid the "office visit" fees of each pseudo-patient, usually $150 per pseudo-patient, to a member of the office staff, frequently with money orders that were purchased in advance with funds provided by William Stukes.  After the prescriptions were obtained by pseudo-patients from defendant WERTHER, the drivers then transported the pseudo-patients to various pharmacies to have the prescriptions filled, and once filled, collected all of the controlled substances, paid each pseudo-patient with funds provided in advance by defendant William Stukes, and transported the pseudo-patients back to the Philadelphia area.   Herbert Hughes, Carlos Richards, Warren Johnson, Gregory Johnson, Claude Nolan, Timothy Peden,

11

Darrell Hendricks then turned over the controlled substances to William Stukes or Gerald Brinkley, or a person they designated, depending upon the type of narcotics.

      23.    Troy Fletcher, Christopher Pizzo, Ato Strong, Sylvester Adams, Jason Romm, James Lyles, and Michael Sanders were drug dealers who purchased large amounts of the prescribed controlled substances from William Stukes and Gerald Brinkley for illegal resale.

      24.    The defendants referred to pills containing eighty milligrams of oxycodone as "80's" and "big boys," referred to pills containing thirty milligrams of oxycodone as "30's," and "O's," and "the big ones," and referred to pills containing ten milligrams of oxycodone as "10's," "percs" "bananas," "yellows," and "buses."   The pills containing higher concentrations of oxycodone were more highly valued by these defendants and in greater demand by drug dealers and illegal users.

      25.    Defendant KIM CARTER and Zaniah Beard, Donald Brown, Andre Dawkins, Evette Gringrow, Leon Harris, Denise Hawkins, Ronnie Jackson, Carla Jenkins, Beatrice Lewis, Michael Littlejohn, Vernell McDaniels, Eric Perry, Mark Reid, Michael Rominiecki, Wayne Rucker, Patricia Simmons, Lawrence Stith, Debra Stukes, Viola Stukes, Steven Thompson, Eric Treadwell, Julia Turner, Geraldine Watkins, Yolanda Williams, Lamont Butcher, Khaliff Headen, Sophia Holder, Latoisha Jones, Dawn Little, and Derek Stukes were pseudo-patients of defendant NORMAN WERTHER, who, without adequate medical reason or necessity and for the sole purpose of aiding the objectives of this drug trafficking conspiracy, obtained prescriptions for controlled substances.  They then filled those prescriptions issued without adequate medical necessity by defendant NORMAN WERTHER, (using their health care

benefit plans to do so if they were covered by insurance), and turned over the controlled
substances to William Stukes and Gerald Brinkley or their representative, all in return for a fee.

26.     Some of the defendants procuring drugs for resale from the pseudo-
patients were themselves pseudo-patients at defendant NORMAN WERTHER's office, including
William Stukes, Rashida Lyles, Darrah Robinson, Herbert Hughes, Carlos Richards, Gregory
Johnson, Claude Nolan, and Darrell Hendricks.

27.     Defendant NORMAN WERTHER unlawfully prescribed, that is, outside
the usual course of professional practice and not for a legitimate medical purpose, in excess of
500,000 pills each containing oxycodone, to psuedo-patients of the Williams Stukes group.
William Stukes, Gerald Brinkley, and, at their direction, other members of their group, then sold
the controlled substances distributed to them by the pseudo-patients to drug dealers for a
significant profit.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object defendants
NORMAN WERTHER, and KIM CARTER, and William Stukes, Gerald Brinkley, a/k/a
"Muhammad," Ihsanullah Maaf, a/k/a "Sean," Rita Myles, Rashida Lyles, Tina Weisz, Darrah
Robinson , Herbert Hughes, Carlos Richards, Warren Johnson, Gregory Johnson, Claude Nolan,
Timothy Peden, Darrell Hendricks, Troy Fletcher, Christopher Pizzo, Ato Strong, Sylvester
Adams, Jason Romm, James Lyles, Michael Sanders, Zaniah Beard, Donald Brown, Andre
Dawkins, Evette Gringrow, Leon Harris, Denise Hawkins, Ronnie Jackson, Carla Jenkins,
Beatrice Lewis, Michael Littlejohn, Vernell McDaniels, Eric Perry, Mark Reid, Michael

Rominiecki, Wayne Rucker, Patricia Simmons, Lawrence Stith, Debra Stukes, Viola Stukes,

Steven Thompson, Eric Treadwell, Julia Turner, Geraldine Watkins, Yolanda Williams, Lamont

Butcher, Khaliff Headen, Sophia Holder, Latoisha Jones, Dawn Little, and Derek Stukes

committed the following overt acts, among others, in the Eastern District of Pennsylvania:

On or about February 12, 2009:

1.      Defendant NORMAN WERTHER prescribed 120 pills each containing 10

milligrams of oxycodone, a Schedule II narcotic, to Michael Littlejohn, a pseudo-patient, outside

the usual course of professional practice and not for a legitimate medical purpose.

2.      Defendant NORMAN WERTHER prescribed 120 pills each containing 10

milligrams of oxycodone, a Schedule II narcotic, to Patricia Simmons, a pseudo-patient, outside

the usual course of professional practice and not for a legitimate medical purpose.

3.      Defendant NORMAN WERTHER prescribed 125 pills each containing 10

milligrams of oxycodone, a Schedule II narcotic, to Yolanda Williams, a pseudo-patient, outside

the usual course of professional practice and not for a legitimate medical purpose.

On or about February 17, 2009:

4.      Defendant NORMAN WERTHER prescribed 120 pills each containing 10

milligrams of oxycodone, a Schedule II narcotic, to Beatrice Lewis, a pseudo-patient, outside the

usual course of professional practice and not for a legitimate medical purpose.

5.      Defendant NORMAN WERTHER prescribed 120 pills each containing 10

milligrams of oxycodone, a Schedule II narcotic, to Vernell McDaniels, a pseudo-patient, outside

the usual course of professional practice and not for a legitimate medical purpose.

6.      On or about February 20, 2009, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Donald Brown, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

7.      On or about March 6, 2009, Defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Derek Stukes, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

8.      On or about March 10, 2009, Defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Leon Harris, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

9.      On or about March 26, 2009, Defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Debra Stukes, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

10.     In or about the spring of 2009, pharmacist Ihsanullah Maaf contacted the medical office of defendant NORMAN WERTHER to speak with him about the large number of patients presenting prescriptions for oxycodone pills, all written by defendant WERTHER, who were all brought to Maaf's Northeast Pharmacy by William Stukes.  In response to Maaf's question to defendant WERTHER as to Stukes' role and relation to the patients, defendant

WERTHER falsely advised Maaf that William Stukes was employed by him (defendant WERTHER) as a driver for various patients.

On or about June 9, 2009:

11.     Defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant KIM CARTER, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

12.     Defendant KIM CARTER, in return for a fee, turned over her pills containing 10 milligrams of oxycodone, a Schedule II narcotic, obtained from defendant NORMAN WERTHER, to William Stukes or another in the Stukes drug trafficking organization.

13.     On or about June 17, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Viola Stukes, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

14.     On or about June 19, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Wayne Rucker, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

15.     On or about June 23, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to L.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

16.     On or about June 26, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Zaniah Beard, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

17.     On or about July 16, 2009, defendant NORMAN WERTHER prescribed 100 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Khaliff Headen, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

18.     On or about August 18, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Steven Thompson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

19.     In or about September 2009, because of the increased cash proceeds now being paid at his office, defendant NORMAN WERTHER, through his staff, instructed those paying for pseudo-patients to pay using money orders.

20.     On or about September 29, 2009, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Michael Rominiecki, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

21.     On or about November 12, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to

Ronnie Jackson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

22.     On or about January 27, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Eric Treadwell, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

On or about January 29, 2010:

23.     Defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Geraldine Watkins, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

24.     Defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Mark Reid, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

25.     Defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to W.B. outside the usual course of professional practice and not for a legitimate medical purpose.

26.     On or about April 26, 2010, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic to Latoisha Jones, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

27.     On or about April 28, 2010, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Sophia Holder, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

28.     On or about June 24, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, as well as 30 pills each containing 15 milligrams of oxycodone, a Schedule II narcotic, to Dawn Little, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

29.     On or about July 31, 2010, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to E. D. B., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

30.     On or about August 11, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to R.C, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

31.     On or about August 20, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II

19

narcotic, to Latoisha Jones, a pseudo-patient, switched her prescription to 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

   32. On or about September 7, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 30 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Derek Stukes, a pseudo-patient, switched his prescriptions to 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, as well as 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

   33. On or about September 9, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 30 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Andre Dawkins, a pseudo-patient, switched his prescriptions to 30 pills each containing 15 milligrams of oxycodone, a Schedule II narcotic, as well 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

   34. On or about September 15, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Sophia Holder, a pseudo-patient, switched her prescriptions to 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, as well as 150 pills each

containing 10 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

35.    On or about September 17, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Mark Reid, a pseudo-patient, switched his prescriptions to 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, as well as 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

On or about September 20, 2010:

36.    Herbert Hughes transported six pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate the pseudo-patients receiving a prescription for controlled substances, specifically pills containing oxycodone.  One of the pseudo-patients was Eric Treadwell.

37.    Defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Eric Treadwell, a pseudo-patient, switched his prescriptions to 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, as well as 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

38.     On or about September 21, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 90 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to William Stukes, a pseudo-patient, switched his prescription to 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

39.     On or about September 22, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Geraldine Watkins, a pseudo-patient, switched her prescriptions to 30 pills each containing 15 milligrams of oxycodone, a Schedule II narcotic, as well as 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

40.     On or about October 13, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 30 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Michael Rominiecki, a pseudo-patient, switched his prescriptions to 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, as well as 30 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

22

41.     On or about October 19, 2010, William Stukes instructed a person cooperating with law enforcement, (hereinafter "CW"), to make sure that CW got only 30 milligram oxycodone pills from defendant NORMAN WERTHER.

42.     On or about October 20, 2010, Herbert Hughes picked up and drove six pseudo-patients in a Chevrolet Suburban registered to William Stukes to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

43.     On or about November 15, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to K.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

44.     On or about November 22, 2010, Carlos Richards picked up and drove three pseudo-patients in a Nissan Maxima to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

On or about December 20, 2010:

45.     William Stukes authorized the addition of a pseudo-patient to defendant NORMAN WERTHER's patient schedule for this day.

46.     Warren Johnson picked up and drove five pseudo-patients in a Chevy Tahoe to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove,

Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

47.     On or about December 30, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to N.R., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

On or about January 15, 2011:

48.     Claude Nolan picked up and drove three pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

49.     William Stukes spoke to Ihsanullah Maaf and instructed Maaf to check his database regarding one of his pseudo-patients, Lamont Butcher, then asked Maaf if Maaf could prepare Butcher's prescription because "we on our way."  Maaf responded, "OK, I will have it counted out."

On or January 17, 2011:

50.     William Stukes called the office of defendant NORMAN WERTHER and spoke to Rita Myles about a patient "PM," known to the grand jury, who had been giving  Myles trouble.  Myles asked William Stukes, "So what are we doing with him?" and Stukes replied, "He's done."  Myles then told William Stukes that she needed Stukes "to do a little influence.  I need you to call and talk to the doctor."

24

51.     William Stukes spoke to defendant NORMAN WERTHER on the phone. William Stukes told defendant WERTHER that patient "PM" was a "bad seed." When defendant WERTHER asked why, defendant William Stukes told him "because I got some bad info on that he you know doin' a little business." Defendant WERTHER replied "OK, well we'll stop that." Stukes told defendant WERTHER that "PM" was involving other people and "messin' with Rita you know what I mean and I don't play that at all." Defendant WERTHER said "OK, well he's gone" and that he "appreciate[d] it."

On or about January 19, 2011:

52.     Herbert Hughes picked up and drove three pseudo-patients in a Dodge Durango, registered in HUGHES' name, to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

53.     William Stukes called Rita Myles at the doctor's office and told her that "he on his way. He got money for everybody." Myles assured Stukes that everything would go okay, and Stukes told Myles that there would be an "extra bean," referring to $100, for her.

On or about January 20, 2011:

54.     William Stukes called the office of defendant NORMAN WERTHER and spoke to Rashida Lyles about one of Stukes' pseudo-patients, "R," known to the grand jury. Stukes instructed Lyles to get "R" to go "back and see" defendant WERTHER and "try to get that changed," referring to changing "R's" prescription. Lyles responded that she would see if "R" was outside and would do that for Stukes.

55.     William Stukes called Ihsanullah Maaf to discuss how much money Stukes owed defendant MAAF.  Maaf advised Stukes that "Zack owes $210," (referring to Herbert Hughes).  Stukes told Maaf that he would send Maaf the money today.

56.     On or about January 22, 2011, William Stukes called defendant NORMAN WERTHER's office and spoke to Tina Weisz, asked if pseudo-patient "Lenore," known to the grand jury, was on the list and then asked Weisz to check the patient chart for the pseudo-patient's address.

On or about January 24, 2011:

57.     William Stukes called Rita Myles to discuss what pseudo-patients of Stukes were on the schedule for that day and for the next day.   Myles recommended that Stukes bring "a new," referring to a new pseudo-patient, since he only had four on the schedule for that day.

58.     Carlos Richards picked up and drove three pseudo-patients in a sport utility vehicle to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

59.      Rita Myles called William Stukes to report that pseudo-patient H.D., known to the grand jury, had come into the office by himself and that Myles wanted to check with Stukes to see if H.D. "was yours."  Stukes replied that H.D. was not supposed to come by himself, "somebody tried to sneak by the bleachers" and "he's gone," meaning H.D. went to

26

defendant WERTHER's on his own without Stukes' permission and H.D. would no longer be able to see defendant WERTHER.

60.    On or about January 27, 2011, Darrell Hendricks picked up and drove two pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

On or about February 1, 2011:

61.    William Stukes called the office of defendant NORMAN WERTHER and spoke to the wife of defendant WERTHER, who works at the doctor's office.  William Stukes told her that "I got two people coming" and that he would "send up their money orders tomorrow."   William Stukes also asked her to give to pseudo-patient Mark Reid a letter that William Stukes said he needed to get for his wife to give to her employer when she returned to work the next day.

62.    William Stukes called Ihsanullah Maaf to instruct Maaf that the money he (Stukes) had left there could be used to pay for the prescription of S.F., a pseudo-patient that William Stukes was sending to Maaf later that day.

63.    On or about February 4, 2011, William Stukes called Ihsanullah Maaf to ask if William Stukes owed Maaf any money.  Maaf replied that "Carlos brought that 120 in so we are clean, there's nothing owed here" (referring to Carlos Richards).  When William Stukes told Maaf that his nephew would be coming in, Maaf responded that "your nephew is here" [referring to pseudo-patient Khaliff Headon].  William Stukes asked how much it was, Maaf responded "105," and William Stukes replied that "we will pick that up shortly."

27

On or about February 9, 2011:

64.     Jason Romm possessed approximately 1268 pills each containing 10 milligrams of oxycodone and 155 pills each containing 30 milligrams of oxycodone, many still in prescription bottles with the pseudo-patient's name and with defendant NORMAN WERTHER as the prescribing doctor, that were obtained through the pseudo-patients brought to defendant WERTHER and whose pills were sold purchased from the pseudo-patients by William Stukes and Gerald Brinkley.

65.     Rashida Lyles called William Stukes to advise him that Romm had been arrested with pills from some of their pseudo-patients.  Lyles told Stukes that they should stop using a certain pharmacist.

66.     On or about February 10, 2011, Rashida Lyles put a "discharge letter" in Jason Romm's file at defendant NORMAN WERTHER's office, so that Romm could no longer be seen as a pseudo-patient and obtain narcotics from defendant WERTHER.

67.     On or about February 11, 2011, Darrah Robinson transported eight pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

On or about February 12, 2011:

68.     Claude Nolan picked up and drove two pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

28

69.     William Stukes called the doctor's office and spoke to defendant NORMAN WERTHER.   Defendant WERTHER told William Stukes that the office was closed and everyone had left.  William Stukes told defendant WERTHER that "he two seconds away" (referring to a Stukes' driver who was bringing pseudo-patients) and defendant WERTHER agreed to open the office back up: "Alright I'll come down and open the door for him (referring to Stukes' driver)."

70.     On or about February 14, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to Warren Johnson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

71.     On or about February 24, 2011, Carlos Richards picked up and drove two pseudo-patients in a Chevrolet Suburban registered to William Stukes to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

On or about March 2, 2011:

72.     William Stukes called Ihsanullah Maaf to advise Maaf that Darrah Robinson was coming to Northeast Pharmacy to pay for a prescription of a pseudo-patient that William Stukes had sent to Maaf earlier that day.  Stukes told Maaf that he  "owes" Maaf and that Robinson would also have pseudo patient B.R., known to the grand jury, and would pay for her.

29

73.     Despite placing a discharge letter in pseudo-patient's Jason Romm's file on or about February 10, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, as well as 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to Jason Romm, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

On or about March 3, 2011:

74.     William Stukes and Gerald Brinkley discussed via phone what pseudo-patients were scheduled that day for their visit to defendant NORMAN WERTHER.  William Stukes told Gerald Brinkley that they needed to do at least five or six people every day.   The two discussed sending a "new" (referring to a new pseudo-patient) that Gerald Brinkley had recruited.

75.     Gerald Brinkley provided Warren Johnson with information on what pseudo-patients Johnson was to transport to the doctor's office that morning.

76.     Warren Johnson transported four pseudo-patients, including a "new" pseudo-patient, in a Chevrolet Tahoe to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

77.     Gerald Brinkley called Christopher Pizzo to ask if Pizzo wanted to "do something" that day, referring to purchasing pills containing oxycodone.  Brinkley and Pizzo agreed to meet at 11:30 a.m. regarding "600," referring to the sale of 600 pills each containing oxycodone by Brinkley to Pizzo.

78.     Gerald Brinkley drove to the area of St. Vincent and Leonard Streets in Philadelphia to meet Pizzo.  Pizzo came to Gerald Brinkley's vehicle, where Brinkley delivered approximately 600 pills each containing oxycodone to Pizzo.

On or about March 5, 2011:

79.     Darrell Hendricks picked up and drove two pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

80.     Claude Nolan picked up and drove two pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

On or about March 8, 2011:

81.     Gerald Brinkley called Rita Myles, advised her that "the schedule" got all messed up with their pseudo-patients and asked if he could send "one or two" for today.  Myles responded that she would check.

82.     William Stukes called Rashida Lyles at defendant NORMAN WERTHER's office to discuss a pseudo-patient of Stukes.  Stukes told defendant Lyles that "he needs...an MRI and everything" and asked Lyles "can you take care of it for Babe?" because he was sending the patient there that week.  Stukes told Lyles that the patient "only get 90 and I'm trying to push it up, you know what I mean," referring to trying to get more pills containing oxycodone through this pseudo-patient.  Stukes advised defendant Lyles that "the doc said that in

31

order for them to get that he gotta, you know, he gotta have that paperwork in there," referring to the defendant NORMAN WERTHER wanting MRI reports in files in order to justify his continued prescriptions of narcotics to pseudo-patients brought by Stukes, and to Rashida Lyles putting a fraudulent MRI report in the patient's file.   Lyles agreed, "alright, I'll put it in there."

83.    Ihsanullah Maaf told Darrah Robinson that moving forward he wanted each pseudo-patient to come in and pay separately for their individual prescriptions rather than one of William Stukes' people paying for or picking up the pseudo-patients' prescriptions because of concerns that Maaf had about the DEA.

84.    On or about March 11, 2011, Gerald Brinkley called to advise Rita Myles that William Stukes had been arrested, and warned Myles that they all needed to "keep our eyes and ears open" and to "be careful."

85.    On or about March 14, 2011, Claude Nolan picked up and drove one pseudo-patient to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate the pseudo-patient receiving a prescription for narcotics, specifically pills each containing oxycodone.

86.    On or about March 16, 2011, Gerald Brinkley met Christopher Pizzo in the area of Claridge Street and Roosevelt Boulevard in Philadelphia and distributed approximately 810 pills each containing oxycodone to Pizzo.

87.    On or about March 24, 2011, Gerald Brinkley distributed approximately 795 pills each containing oxycodone, 225 "30's" and 570 "10's," to Christopher Pizzo.

88.    On or about March 28, 2011, Claude Nolan picked up and drove two pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow

32

Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

In or about April of 2011:

89.     Defendant NORMAN WERTHER, in response to Sovereign Bank officials advising him that his Sovereign bank account for his business, PHL Compcare, LLC, would be closed, opened three bank accounts, one at Citizens Bank, one at Wells Fargo, and one at TD Bank in order to spread out his deposits of the proceeds from his prescribing of controlled substances.

90.     Defendant NORMAN WERTHER told his staff that because of his history of suspicious deposits of numerous sequential money orders, his bank had closed his account. Defendant WERTHER instructed his staff to tell the drivers who were bringing groups of patients to his office to go to different locations to obtain their money orders and to make sure that not more than four money orders were obtained from the same store.

91.     On or about April 5, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Wachovia (later Wells Fargo Bank "Wells Fargo") in the name of PHL Compcare, LLC, E____ K. W_____, which had both defendant WERTHER and his wife as signatories to the account.

92.     On or about April 7, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at TD Bank ("TD") in the name of NORMAN WERTHER, MD, LLC, which had both defendant WERTHER and his wife as signatories to the account.

33

93.     On or about April 13, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Citizens Bank ("Citizens") in the name of PHL Compcare, LLC, and Norman M. Werther MD, which had both defendant WERTHER and his wife as signatories to the account.

On or about May 19, 2011:

94.     Defendant NORMAN WERTHER called and spoke to an accountant known to the grand jury about the legality of structuring deposits and advised him that he (WERTHER) was concerned about sequentially numbered money orders aggregating to three thousands dollars and that he (WERTHER) had "three banks now so I don't put sequential in. ...I break it up."

95.     Gerald Brinkley called Timothy Peden while Peden was still at the office of defendant NORMAN WERTHER.  Brinkley told Peden to make sure Peden got the "schedules," referring to the lists associated with  William Stukes that the office staff made up and gave to the drivers, from "the white girl Tina," referring to Tina Weisz.

On or about May 21, 2011:

96.     Timothy Peden picked up and drove pseudo-patients to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

97.      Weisz provided information from a pseudo-patient's file to  Darrah Robinson who called Weisz to see if an identification card was in the file for a pseudo-patient that William Stukes had sent to defendant NORMAN WERTHER's office.

34

<u>On or about May 26, 2011</u>:

98.     Warren Johnson picked up and drove five pseudo-patients to the office of Defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

99.     Richards picked up and drove four pseudo-patients to the office of Defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

100.    On or about May 31, 2011, Gregory Johnson picked up and drove four pseudo-patients in a Ford Expedition registered to William Stukes to the office of defendant NORMAN WERTHER on Davisville Road in Willow Grove, Pennsylvania, in order to facilitate pseudo-patients receiving a prescription for narcotics, specifically pills each containing oxycodone.

101.    On or about June 15, 2011, per the directions of defendant NORMAN WERTHER, defendant WERTHER's wife made deposits of the proceeds of defendant WERTHER's fees paid by pseudo-patients at three banks into three accounts, Citizens Bank Account Number xxxxxx6043, titled to PHL Compcare, LLC and defendant NORMAN WERTHER, MD, Wells Fargo Bank Account Number xxxxxxxxx3631 titled to PHL Compcare, LLC, E____ K. W_____, and TD Bank Account Number xxxxxx2753 titled to defendant NORMAN WERTHER, MD, LLC, all within forty-five minutes.

All in violation of Title 21, United States Code, Section 846.

## COUNTS TWO THROUGH THIRTY-SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates listed below, in the Eastern District of Pennsylvania,

defendant

## NORMAN WERTHER

knowingly and intentionally distributed, and dispensed, and aided and abetted the distribution

and dispensing of, outside the usual course of professional practice and not for a legitimate

medical purpose, the below-noted number of pills, each pill of which is a mixture and substance

containing a detectable amount of oxycodone, a Schedule II controlled substance, each

distribution constituting a separate count of this Indictment:

| COUNT | DATE | APPROXIMATE NUMBER OF PILLS, EACH CONTAINING OXYCODONE | TO WHOM DISTRIBUTED |
|---|---|---|---|
| 2 | 2/12/2009 | 120 pills each containing 10 milligrams of oxycodone | Michael Littlejohn |
| 3 | 2/12/2009 | 120 pills each containing 10 milligrams of oxycodone | Patricia Simmons |
| 4 | 2/12/2009 | 125 pills each containing 10 milligrams of oxycodone | Yolanda Williams |
| 5 | 2/17/2009 | 120 pills each containing 10 milligrams of oxycodone | Beatrice Lewis |
| 6 | 2/17/2009 | 120 pills each containing 10 milligrams of oxycodone | Vernell McDaniels |
| 7 | 2/20/2009 | 120 pills each containing 10 milligrams of oxycodone | Donald Brown |
| 8 | 3/6/2009 | 120 pills each containing 10 milligrams of oxycodone | Derek Stukes |
| 9 | 3/10/2009 | 120 pills each containing 10 milligrams of oxycodone | Leon Harris |
| 10 | 3/26/2009 | 120 pills each containing 10 milligrams of oxycodone | Debra Stukes |
| 11 | 6/9/2009 | 180 pills each containing 10 milligrams of oxycodone | Defendant KIM CARTER |
| 12 | 7/16/2009 | 100 pills each containing 10 milligrams of oxycodone | Khaliff Headen |
| 13 | 8/18/2009 | 150 pills each containing 10 milligrams of oxycodone | Steven Thompson |
| 14 | 9/29/2009 | 60 pills each containing 80 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | Michael Rominiecki |

| 15 | 11/12/2009 | 150 pills each containing 10 milligrams of oxycodone | Ronnie Jackson |
| 16 | 1/27/2010 | 150 pills each containing 10 milligrams of oxycodone | Eric Treadwell |
| 17 | 1/29/2010 | 60 pills each containing 80 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | Geraldine Watkins |
| 18 | 1/29/2010 | 150 pills each containing 10 milligrams of oxycodone | Mark Reid |
| 19 | 1/29/2010 | 150 pills each containing 10 milligrams of oxycodone | W.B. |
| 20 | 4/26/2010 | 60 pills each containing 80 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | Latoisha Jones |
| 21 | 4/28/2010 | 60 pills each containing 80 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | Sophia Holder |
| 22 | 6/24/2010 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 15 milligrams of oxycodone | Dawn Little |
| 23 | 7/31/2010 | 60 pills each containing 80 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | E.D.B. |
| 24 | 8/20/2010 | 150 pills each containing 30 milligrams of oxycodone | Latoisha Jones |
| 25 | 9/7/2010 | 30 pills each containing 30 milligrams of oxycodone and 150 pills each containing 10 milligrams of oxycodone | Derek Stukes |
| 26 | 9/9/2010 | 30 pills each containing 30 milligrams of oxycodone and 150 pills each containing 15 milligrams of oxycodone | Andre Dawkins |
| 27 | 9/15/2010 | 30 pills each containing 30 milligrams of oxycodone and 150 pills each containing 10 milligrams of oxycodone | Sophia Holder |
| 28 | 9/17/2010 | 30 pills each containing 30 milligrams of oxycodone and 150 pills each containing 10 milligrams of oxycodone | Mark Reid |
| 29 | 9/20/2010 | 30 pills each containing 30 milligrams of oxycodone and 150 pills each containing 10 milligrams of oxycodone | Eric Treadwell |
| 30 | 9/21/2010 | 120 pills each containing 30 milligrams of oxycodone | Williams Stukes |
| 31 | 9/22/2010 | 30 pills each containing 15 milligrams of oxycodone and 150 pills each containing 10 milligrams of oxycodone | Geraldine Watkins |
| 32 | 10/13/2010 | 120 pills each containing 30 milligrams of oxycodone and 30 pills each containing 10 milligrams of oxycodone | Michael Rominiecki |
| 33 | 11/15/2010 | 150 pills each containing 10 milligrams of oxycodone | K.C. |
| 34 | 12/30/2010 | 120 pills each containing 30 milligrams of oxycodone | N.R. |

| 35 | 2/14/2011 | 120 pills each containing 30 milligrams of oxycodone | Warren Johnson |
| 36 | 3/2/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | Jason Romm |

All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT THIRTY-SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 3-10, and 12 of the Background and Paragraph 14 of the Manner and Mean of Counts One of this Indictment are incorporated here.

2.      From in or about February 2009 through in or about August 2011, in Willow Grove, in the Eastern District of Pennsylvania, defendant

### NORMAN WERTHER

knowingly rented, used, and maintained a place commonly known as PHL Compcare, located at 301 Davisville Road, Willow Grove, and knowingly and intentionally used and made available for use these premises for the purpose of unlawfully distributing controlled substances, including oxycodone, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 856(a)(1).

## COUNT THIRTY-EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1, 3-10, and 12 of the Background and Paragraph 14 of the Manner and Means of Counts One of this Indictment are incorporated here.

2.     On or about September 1, 2010, at Willow Grove, in the Eastern District of Pennsylvania, defendant

### NORMAN WERTHER

knowingly and intentionally distributed and dispensed, and aided and abetted the distribution and dispensing of, outside the usual course of professional practice and not for a legitimate medical purpose, approximately 150 pills each containing 30 milligrams of oxycodone and 30 pills each containing 15 milligrams of oxycodone, each pill of which is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, to N. B., a person known to the grand jury, and the death of N. B. resulted from the use of that substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNTS THIRTY-NINE THROUGH FORTY-ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1, 3-10, and 12 of the Background and Paragraph 14 of the Manner and Means of Counts One of this Indictment are incorporated here.

2.     On or about the dates noted below, at Willow Grove, in the Eastern District of Pennsylvania, defendant

### NORMAN WERTHER

knowingly and intentionally distributed and dispensed, and aided and abetted the distribution and dispensing of, outside the usual course of professional practice and not for a legitimate medical purpose, the below-noted number of pills, each pill of which is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, each distribution constituting a separate count of this Indictment:

| COUNT | DATE | APPROXIMATE NUMBER OF PILLS, EACH CONTAINING OXYCODONE | TO WHOM DISTRIBUTED |
|---|---|---|---|
| 39 | 6/07/2010 | 150 pills each containing 30 milligrams of oxycodone and 30 pills each containing 15 milligrams of oxycodone | Nathaniel Backes |
| 40 | 7/8/2010 to 7/12/2010 | 150 pills each containing 30 milligrams of oxycodone and 30 pills Each containing 15 milligrams of oxycodone | Nathaniel Backes |
| 41 | 8/4/2010 | 150 pills each containing 30 milligrams of oxycodone and 30 pills each containing 15 milligrams of oxycodone | Nathaniel Backes |

All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT FORTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 3-10, and 12 of the Background of Count One of this Indictment are incorporated here.

### THE CONSPIRACY

2.      From in or about February 2009 through in or about August 2011, in the Eastern District of Pennsylvania, defendants

**NORMAN WERTHER**
**ANGEL DUPREY and**
**FERDINAND NIEVES,**
**a/k/a "Fernando"**

conspired and agreed, together and with Efrain Rivera, charged elsewhere, and others known and unknown to the grand jury, to knowingly and intentionally distribute and dispense, outside the usual course of professional practice and not for a legitimate medical purpose, a mixture and substance each containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

### MANNER AND MEANS

It was part of the conspiracy that:

3.       Paragraphs 14 and 19 through 21 of the Manner and Means of Count One of this Indictment are incorporated here.

4.      Defendant NORMAN WERTHER set aside a block of time at approximately 2:00 pm each business day for appointments for the pseudo-patients controlled by defendant ANGEL DUPREY.

42

5.      Defendant ANGEL DUPREY arranged for pseudo-patients to go to defendant NORMAN WERTHER's office and directed them to claim pain so that they could obtain a prescription for controlled substances, specifically, pills containing oxycodone, a Schedule II controlled substance.   Defendant DUPREY typically sought prescriptions for pills with 10 milligram concentrations of oxycodone but also obtained prescriptions for stronger concentrations of oxycodone.  Defendant DUPREY arranged the transportation of the pseudo-patients to defendant WERTHER's office, and then to a pharmacy to fill the prescriptions obtained from defendant WERTHER, whereupon the pseudo-patients turned over the controlled substances to one of defendant DUPREY's workers and were paid a fee for their services. Defendant DUPREY paid the office visit charge at the defendant WERTHER's medical office, and/or also paid for the prescription to be filled if the pseudo-patient did not use his/her own medical insurance to pay for the prescription.  Defendant DUPREY would contact defendant WERTHER and his staff about the handling of pseudo-patients he sent to the office, and at times also paid the physician's staff a separate fee.  Defendant DUPREY then redistributed the controlled substances he obtained from the pseudo-patients to drug dealers for a significant profit.

6.      Defendant FERDINAND NIEVES and Efrain Rivera coordinated with defendant ANGEL DUPREY the transportation of pseudo-patients to defendant NORMAN WERTHER's medical office to obtain prescriptions for Schedule II narcotics, the payment of fees for the pseudo-patients, the payment for and filling of the pseudo-patients' prescriptions, and the sale of the narcotics obtained.  Rivera and defendant NIEVES were paid for their participation.

43

7.      Some of the defendants procuring drugs for resale from the pseudo-patients were themselves pseudo-patients at defendant NORMAN WERTHER's office, including Efrain Rivera and defendants ANGEL DUPREY and FERDINAND NIEVES.

8.      Defendant NORMAN WERTHER unlawfully prescribed, that is, prescribed outside the usual course of professional practice and not for a legitimate medical purpose, in excess of 120,000 pills each containing oxycodone, to psuedo-patients of defendant ANGEL DUPREY'S group.  Defendant ANGEL DUPREY and, at his direction, other members of his group, then sold the controlled substances distributed to him by the pseudo-patients to drug dealers for a significant profit.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, defendants NORMAN WERTHER, ANGEL DUPREY, and FERDINAND NIEVES, a/k/a "Fernando," and Efrain Rivera committed the following overt acts, among others, in the Eastern District of Pennsylvania:

### Pseudo-Patient and Defendant ANGEL DUPREY

1.      On or about February 7, 2009, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

2.      On or about February 18, 2009, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 5 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-

44

patient, outside the usual course of professional practice and not for a legitimate medical purpose.

3.      On or about March 4, 2009, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

4.      On or about March 13, 2009, defendant NORMAN WERTHER prescribed 30 pills each containing 5 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

5.      On or about March 25, 2009, defendant NORMAN WERTHER prescribed 160 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

6.      On or about April 20, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

7.      On or about May 15, 2009, defendant NORMAN WERTHER prescribed 160 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

8.      On or about June 19, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

9.      In or about September 2009, because of the increased cash proceeds then being paid at his office, defendant NORMAN WERTHER, through his staff, instructed those paying for pseudo-patients to pay using money orders.

10.      On or about March 29, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

11.      On or about April 19, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

12.      On or about June 2, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

13.      On or about June 30, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant

ANGEL DUPREY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

14.     In or about July 2010, defendant NORMAN WERTHER told defendant ANGEL DUPREY and his staff that he [WERTHER] he would not see defendant DUPREY as a patient any more would but that he would continue to see defendant DUPREY's "people."

15.     In or about October 2010, an "IOU" noting that a member (pseudo-patient O.R.) of "Angel's group" owed $125 for the "Oct 7" visit by O.R. was recorded by a staff member.

16.     In or about December 2010, defendant NORMAN WERTHER directed that Rita Myles prepare a spread sheet to keep track of the office fees owed by the leaders of groups who brought patients to defendant WERTHER, including "Angel" (defendant ANGEL DUPREY), "William" (Williams Stukes), and "Mohammad" (Gerald Brinkley).

On or about December 27, 2010:

17.     Defendant ANGEL DUPREY's had three of his pseudo-patients, R.C., J.E., and I.V-D., transported to defendant NORMAN WERTHER's office to obtain pills each containing oxycodone, each of whose patient fee to defendant WERTHER was not paid in full.

18.      Defendant ANGEL DUPREY promised to pay the remainder due for each of R.C., J.E., and I.V-D.'s patient fees the next day, (referring to December 28, 2010).

19.     On or about January 24, 2011, defendant ANGEL DUPREY paid the balance of the overdue patient fees for R.C., J.E., and I.V-D. that he had earlier promised to pay on December 28, 2010.

47

20.     In or about February 2011, a hand-written note that said "Angel owes 125 for 2/3/11" was written over "PAID" by Tina Weisz.

In or about April of 2011:

21.     Defendant NORMAN WERTHER, in response to Sovereign Bank officials advising him that his Sovereign bank account for his business, PHL Compcare, LLC, would be closed, opened three bank accounts, one at Citizens Bank, one at Wells Fargo, and one at TD Bank, in order to spread out his deposits of the proceeds from his illegal prescribing of controlled substances.

22.     Defendant NORMAN WERTHER told his staff that because of his history of suspicious deposits of numerous sequentially numbered money orders, his bank had closed his account.  Defendant WERTHER instructed his staff to tell the drivers who were bringing groups of pseudo-patients to his office to go to different locations to obtain their money orders and to make sure that not more than four money orders were obtained from the same store.

23.     On or about April 5, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Wachovia (later Wells Fargo Bank "Wells Fargo") in the name of PHL Compcare, LLC, E____ K. W_____, which had both defendant WERTHER and his wife as signatories to the account.

24.     On or about April 7, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at TD Bank ("TD") in the name of NORMAN WERTHER, MD, LLC, which had both defendant WERTHER and his wife as signatories to the account.

48

25.     On or about April 13, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Citizens Bank ("Citizens") in the name of PHL Compcare, LLC, and Norman M. Werther MD, which had both defendant WERTHER and his wife as signatories to the account.

On or about May 4, 2011:

26.     Defendant FERDINAND NIEVES, working on behalf of defendant ANGEL DUPREY, called the office of defendant NORMAN WERTHER, spoke to Tina Weisz, and told her to "ask the doctor" if he could bring "two news," referring to new pseudo patients.

27.     Defendant NORMAN WERTHER instructed Rashida Lyles to tell Nieves that he could not bring "two news."

28.     Defendant ANGEL DUPREY called the office of defendant NORMAN WERTHER, spoke to Tina Weisz and asked her "did Ferdinand get up there yet?," referring to defendant FERDINAND NIEVES bringing pseudo-patients working for DUPREY to the office. Tina Weisz replied that he had not yet arrived.

29.     On or about May 12, 2011, defendant FERDINAND NIEVES, working on behalf of defendant ANGEL DUPREY, called defendant NORMAN WERTHER's office to tell the staff that he had two or three people (referring to pseudo-patients) to bring, and Rita Myles replied that he should come no later than 3:00 o'clock.

30.     On or about May 19, 2011, defendant NORMAN WERTHER called and spoke to an accountant known to the grand jury about the legality of structuring deposits and advised the accountant that he (WERTHER) was concerned about sequentially numbered money

orders aggregating to three thousands dollars and that he (WERTHER) had "three banks now so I don't put sequential in. ...I break it up."

31.     On or about May 25, 2011, defendant FERDINAND NIEVES and Efrain Rivera, acting on behalf of defendant ANGEL DUPREY, drove pseudo-patient G.C. to the office of defendant NORMAN WERTHER to obtain prescriptions for pills each containing oxycodone.

32.     On or about May 25, 2011 defendant FERDINAND NIEVES and Efrain Rivera drove G.C. from Werther's office to a pharmacy in the 1700 block of Cottman Avenue in Philadelphia to get the prescriptions obtained by G.C. filled.

33.     On or about May 25, 2011, defendant FERDINAND NIEVES and Efrain Rivera drove pseudo-patient G.C. to the pharmacy in the 1700 block of Cottman Avenue where G.C.'s prescriptions were filled, after which G.C. turned over approximately 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to a member of defendant ANGEL DUPREY's group in exchange for a fee.

34.     On or about May 31, 2011, defendant FERDINAND NIEVES, acting on behalf of defendant ANGEL DUPREY, called defendant NORMAN WERTHER's office to advise the staff that he had four pseudo-patients to see defendant WERTHER, but only enough money to pay for two patient fees.  Rashida Lyles responded that she would have to "ask the doctor."

35.     Defendant NORMAN WERTHER instructed Rashida Lyles to tell defendant NIEVES that "he's only going to take the two with the money, bring the other two tomorrow."

36.     In or about July 2011, as directed by the following memo written by defendant NORMAN WERTHER's wife instructing the staff as follows:  "When Angel (referring to defendant ANGEL DUPREY) calls.....Dr. has told us to tell him that a Consultant was in and reviewed our charts.  He and Fernando (referring to defendant FERDINAND NIEVES) were arrested..this created a big problem for us.  It is a big "red flag" ..we don't want the government reviewing us.  The DEA checks on physicians dispensing narcotics.  Dr. could lose his license.  He has sent away more than 100 people in the last few weeks.  He cannot see their people under any circumstances.  Be firm..no arguing," Tina Weisz told defendant DUPREY that the doctor would not see defendant DUPREY's "people" anymore when defendant DUPREY called the office.

Pseudo-Patient and Defendant FERDINAND NIEVES

37.     On or about April 23, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant FERDINAND NIEVES, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

38.     On or about August 19, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 60 pills each containing 5 milligrams of oxycodone, a Schedule II narcotic, to defendant FERDINAND NIEVES, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

39.     On or about December 9, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 60 pills each containing 5

milligrams of oxycodone, a Schedule II narcotic, to defendant FERDINAND NIEVES, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

40.     On or about March 10, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant FERDINAND NIEVES, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

41.     On or about July 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant FERDINAND NIEVES, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Efrain Rivera

42.     On or about January 12, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Efrain Rivera, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

43.     On or about February 9, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Efrain Rivera, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

44.    On or about March 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to Efrain Rivera, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient A.C.

45.    On or about November 6, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to A.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

46.    On or about February 12, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to A.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

47.    On or about July 5, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to A.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient G.C.

48.     On or about March 18, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to G.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

49.     On or about April 25, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to G.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient J.C.

50.     On or about January 6, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

51.     On or about July 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient M.C.

52.     On or about November 11, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to M.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

53.     On or about April 14, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to M.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

54.     On or about July 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to M.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

### Pseudo-Patient J.M.C.

55.     On or about September 8, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.M.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

56.     On or about June 20, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.M.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

### Pseudo-Patient R.C.

57.     On or about July 10, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to R.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

58.     On or about August 8, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 60 pills each containing 5 milligrams of oxycodone, a Schedule II narcotic, to R.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

59.     On or about July 5, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 15 milligrams of oxycodone, a Schedule II narcotic, to R.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient J.E.-G.

60.     On or about July 7, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.E.-G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

61.     On or about August 5, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.E.-G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

62.     On or about April 14, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to J.E.-G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

63.     On or about August 6, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.E.-G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient I.G.

64.     On or about February 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to I.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

65.     On or about June 22, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to I.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

66.     On or about July 19, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to I.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient M.G.

67.     On or about February 16, 2009, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to M.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

68.     On or about March 10, 2009, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to M.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

57

69.     On or about April 3, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to M.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

70.     On or about May 1, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to M.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

71.     On or about June 4, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to M.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

72.     On or about February 4, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to M.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient A.H.

73.     On or about November 23, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to A.H., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

74.     On or about June 27, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.H., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

75.     On or about July 22, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to A.H., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient J.M.

76.     On or about June 19, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

77.     On or about September 5, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to J.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

78.     On or about May 18, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to J.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

79.     On or about July 18, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to J.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient W.N.

80.     On or about May 23, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to W.N., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

81.     On or about May 16, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to W.N., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient C.R.

82.     On or about May 29, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to C.R., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

83.     On or about September 10, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to C.R., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

60

84.     On or about July 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to C.R., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient I.V.-D.

85.     On or about December 2, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to I.V.-D., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

86.     On or about March 21, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to I.V.-D., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

All in violation of Title 21, United States Code, Section 846.

## <u>COUNTS FORTY-THREE THROUGH SEVENTY-NINE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates listed below, at Willow Grove, in the Eastern District of Pennsylvania, defendant

## **NORMAN WERTHER**

knowingly and intentionally distributed and dispensed, and aided and abetted the distribution and dispensing of, outside the usual course of professional practice and not for a legitimate medical purpose, the below-noted number of pills, each pill of which is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, each distribution constituting a separate count of this Indictment:

| COUNT | DATE | APPROXIMATE NUMBER OF PILLS, EACH CONTAINING OXYCODONE | PERSON TO WHOM DISTRIBUTED |
|---|---|---|---|
| 43 | 6/2/2010 | 150 pills each containing 10 milligrams of oxycodone | Defendant ANGEL DUPREY |
| 44 | 6/30/2010 | 150 pills each containing 10 milligrams of oxycodone | Defendant ANGEL DUPREY |
| 45 | 12/9/2009 | 150 pills each containing 10 milligrams of oxycodone and 60 pills each containing 5 milligrams of oxycodone | Defendant FERDINAND NIEVES |
| 46 | 8/19/2009 | 150 pills each containing 10 milligrams of oxycodone and 60 pills each containing 5 milligrams of oxycodone | Defendant FERDINAND NIEVES |
| 47 | 3/10/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | Defendant FERDINAND NIEVES |
| 48 | 1/12/2011 | 150 pills each containing 10 milligrams of oxycodone | Efrain Rivera |
| 49 | 2/9/2011 | 150 pills each containing 10 milligrams of oxycodone | Efrain Rivera |
| 50 | 3/8/2011 | 150 pills each containing 10 milligrams of oxycodone | Efrain Rivera |
| 51 | 11/6/2009 | 150 pills each containing 10 milligrams of oxycodone | A.C. |

| 52 | 2/12/2010 | 150 pills each containing 10 milligrams of oxycodone | A.C. |
| 53 | 7/5/2011 | 150 pills each containing 10 milligrams of oxycodone | A.C. |
| 54 | 3/18/2011 | 150 pills each containing 10 milligrams of oxycodone | G.C. |
| 55 | 4/25/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | G.C. |
| 56 | 1/6/2011 | 150 pills each containing 10 milligrams of oxycodone | J.C. |
| 57 | 7/8/2011 | 150 pills each containing 10 milligrams of oxycodone | J.C. |
| 58 | 11/11/2009 | 150 pills each containing 10 milligrams of oxycodone | M.C. |
| 59 | 4/14/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | M.C. |
| 60 | 7/8/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | M.C. |
| 61 | 9/8/2009 | 180 pills each containing 10 milligrams of oxycodone | J.M.C. |
| 62 | 6/20/2011 | 150 pills each containing 10 milligrams of oxycodone | J.M.C. |
| 63 | 8/8/2009 | 150 pills each containing 10 milligrams of oxycodone and 60 pills each containing 5 milligrams of oxycodone | R.C. |
| 64 | 7/5/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 15 milligrams of oxycodone | R.C. |
| 65 | 8/5/2009 | 150 pills each containing 10 milligrams of oxycodone | J.E.-G. |
| 66 | 4/14/2011 | 30 pills each containing 30 milligrams of oxycodone | J.E.-G. |
| 67 | 2/8/2011 | 150 pills each containing 10 milligrams of oxycodone | I.G. |
| 68 | 7/19/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | I.G. |
| 69 | 4/3/2009 | 180 pills each containing 10 milligrams of oxycodone | M.G. |
| 70 | 11/23/2010 | 150 pills each containing 10 milligrams of oxycodone | A.H. |
| 71 | 6/27/2011 | 120 pills each containing 30 milligrams of oxycodone | A.H. |
| 72 | 7/22/2011 | 150 pills each containing 10 milligrams of oxycodone | A.H. |
| 73 | 9/5/2009 | 150 pills each containing 10 milligrams of oxycodone | J.M. |
| 74 | 5/3/2010 | 150 pills each containing 10 milligrams of oxycodone | W.N. |
| 75 | 5/16/2011 | 150 pills each containing 10 milligrams of oxycodone | W.N. |
| 76 | 9/10/2009 | 150 pills each containing 10 milligrams of oxycodone | C.R. |

| 77 | 7/8/2011 | 150 pills each containing 10 milligrams of oxycodone | C.R. |
| 78 | 12/2/2010 | 150 pills each containing 10 milligrams of oxycodone | I.V.-D. |
| 79 | 3/21/2011 | 150 pills each containing 10 milligrams of oxycodone | I.V.-D. |

All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT EIGHTY

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 3-10, and 12 of the Background of Count One of this

Indictment are incorporated here.

## THE CONSPIRACY

2.      From in or about February 2009 through in or about August 2011, in the

Eastern District of Pennsylvania, defendant

**NORMAN WERTHER and
ANTHONY DISPASQUALE**

conspired and agreed, together and with Orlando Santiago, charged elsewhere, and others known

and unknown to the grand jury, to knowingly and intentionally distribute and dispense, outside

the usual course of professional practice and not for a legitimate medical purpose, a mixture and

substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in

violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## MANNER AND MEANS

It was part of the conspiracy that:

3.       Paragraphs 14 and 19 through 21 of the Manner and Means of Count One

of this Indictment are incorporated here.

4.      Defendant NORMAN WERTHER set aside the early morning hours for

appointments for pseudo-patients of defendant ANTHONY DIPASQUALE.

5.       Defendant ANTHONY DIPASQUALE arranged for pseudo-patients to go

to defendant NORMAN WERTHER's office and directed them to claim a level of pain so that

they could obtain a prescription for controlled substances, specifically, pills each containing oxycodone, a Schedule II controlled substance.  Defendant DIPASQUALE arranged the transportation of the pseudo-patients to defendant WERTHER's office, and then to a pharmacy to fill the prescriptions obtained from defendant WERTHER, whereupon the pseudo-patients turned over the controlled substances to defendant DIPASQUALE or one of his workers, and were paid a fee for their services.  Defendant DIPASQUALE at times had one of his pseudo-patients fill or attempt to fill multiple prescriptions of his pseudo-patients at various pharmacies. Defendant DIPASQUALE paid the office visit charge at defendant WERTHER's medical office, and/or also paid for the prescription to be filled if the pseudo-patient did not use his/her own medical insurance to pay for the prescription.  Defendant DISPAQUALE would contact defendant WERTHER and his staff about the handling of pseudo-patients he sent to the office, and at times also paid the physician's staff a separate fee.  Defendant DIPASQUALE then sold the controlled substances he obtained from the pseudo-patients to drug dealers for a significant profit.

    6. Orlando Santiago was a pseudo-patient of defendant ANTHONY DIPASQUALE and also coordinated with defendant DIPASQUALE for the transport of other pseudo-patients to defendant NORMAN WERTHER's office to obtain prescriptions for Schedule II narcotics, the payment of the pseudo-patients, the payment for and filling of the pseudo-patients' prescriptions, and the sale of the narcotics obtained.  Santiago also paid the pseudo-patients a fee for their services.

7.      Some of the defendants procuring drugs for resale from the pseudo-patients were themselves pseudo-patients at defendant NORMAN WERTHER's office, including defendant ANTHONY DIPASQUALE and Orlando Santiago.

8.      Defendant NORMAN WERTHER unlawfully prescribed, that is, outside the usual course of professional practice and not for a legitimate medical purpose, in excess of 60,000 pills each containing oxycodone, to psuedo-patients of the defendant ANTHONY DIPASQUALE group.  Defendant DIPASQUALE and, at his direction, other members of his group, then sold the controlled substances distributed to him by the pseudo-patients to drug dealers for a significant profit.

**OVERT ACTS**

In furtherance of the conspiracy and to accomplish its object, defendant NORMAN WERTHER, defendant ANTHONY DIPASQUALE, and Orlando Santiago committed the following overt acts, among others, in the Eastern District of Pennsylvania:

Pseudo-Patient Defendant ANTHONY DIPASQUALE

1.      On or  about February 25, 2009, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

2.      On or about May 23, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

3.      On or about June 20, 2009, defendant NORMAN WERTHER prescribed 30 pills each containing 40 milligrams of oxycodone, and 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

4.      On or about July 18, 2009, defendant NORMAN WERTHER prescribed 30 pills each containing 80 milligrams of oxycodone, and 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

5.      On or about August 15, 2009, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, and 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

6.      In or about September 2009, because of the increased cash proceeds now being paid at his office, Defendant NORMAN WERTHER, through his staff, instructed those paying for pseudo-patients to pay using money orders.

7.      On or about September 12, 2009, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, and 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a

68

pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

8.   On or about June 19 2010, defendant NORMAN WERTHER prescribed 90 pills each containing 80 milligrams of oxycodone, and 30 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

9.   On or about November 13, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

10.   On or about December 7, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

11.   On or about January 3, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

12.   On or about January 27, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to

defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

13.     On or about April 19, 2011, defendant ANTHONY DIPASQUALE drove five pseudo-patients to the office of defendant NORMAN WERTHER, and then drove them from defendant WERTHER's office to Northeast Pharmacy to get their prescriptions filled. Once the prescriptions were obtained, defendant DIPASQUALE dropped off the five pseudo-patients at various locations and entered a residence on the 2500 block of Somerset Street carrying a bag containing the filled prescriptions of the pseudo-patients.

In or about April of 2011:

14.     Defendant NORMAN WERTHER, in response to Sovereign Bank officials advising him that his Sovereign bank account for his business, PHL Compcare, LLC, would be closed, opened three bank accounts, one at Citizens Bank, one at Wells Fargo, and one at TD Bank in order to spread out his deposits of the proceeds from his prescribing of controlled substances.

15.     Defendant NORMAN WERTHER told his staff that because of his history of suspicious deposits of numerous sequentially numbered money orders, his bank had closed his account.  Defendant WERTHER instructed his staff to tell the drivers who were bringing groups of patients to his office to go to different locations to obtain their money orders and to make sure that not more than four money orders were obtained from the same store.

16.     On or about April 5, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Wachovia (later Wells Fargo Bank "Wells

Fargo") in the name of PHL Compcare, LLC, E____ K. W_____, which had both defendant WERTHER and his wife as signatories to the account.

17.     On or about April 7, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at TD Bank ("TD") in the name of NORMAN WERTHER, MD, LLC, which had both defendant WERTHER and his wife as signatories to the account.

18.     On or about April 13, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Citizens Bank ("Citizens") in the name of PHL Compcare, LLC, and Norman M. Werther MD, which had both defendant WERTHER and his wife as signatories to the account.

19.     On or about May 6, 2011, defendant ANTHONY DIPASQUALE drove three pseudo-patients to the office of defendant NORMAN WERTHER to obtain prescriptions for pills each containing oxycodone.  Once the prescriptions were filled, defendant DIPASQUALE took the bag containing the filled prescriptions into a residence on the 2500 block of Somerset Street.

20.     On or about May 12, 2011, defendant ANTHONY DIPASQUALE drove four pseudo-patients to the office of defendant NORMAN WERTHER to obtain prescriptions for pills each containing oxycodone, and then drove all four patients from defendant WERTHER's office to Northeast Pharmacy to get the prescriptions filled.  Once their prescriptions were filled, defendant ANTHONY DIPASQUALE drove the four pseudo-patients back to the Port Richmond area of Philadelphia and dropped them off in various locations.

21.     On or about May 19, 2011, defendant NORMAN WERTHER called and spoke to an accountant known to the grand jury about the legality of structuring deposits and advised him that he (WERTHER) was concerned about sequentially numbered money orders aggregating to three thousands dollars and that he (WERTHER) had "three banks now so I don't put sequential in. ...I break it up."

22.     On or about July 7, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant ANTHONY DIPASQUALE, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient and Orlando Santiago

23.     On or about October 29, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to Orlando Santiago, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

24.     On or about July 20, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to Orlando Santiago, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient N.C.

25.     On or about March 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to N.C., a pseudo-

patient, outside the usual course of professional practice and not for a legitimate medical purpose.

   26. On or about April 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to N.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

   27. On or about June 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to N.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient K.D.

   28. On or about March 14, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to K.D., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

   29. On or about July 7, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to K.D., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient A.E.

30.    On or about January 17, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.E., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

31.    On or about March 14, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.E., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

32.    On or about June 13, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.E., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient V.G.

33.    On or about November 1, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to V.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

34.    On or about March 17, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to V.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical

purpose,  noting in her chart, "Discussed addiction/death/overuse - discharge will give meds this month but has to go."

<u>Pseudo-Patient C.H.</u>

35.     On or about April 7, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to C.H., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

36.     On or about June 7, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to C.H., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

<u>Pseudo-Patient A.K.</u>

37.     On or about January 31, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.K., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose, after A.K. reported to defendant WERTHER that he had been "buying" oxycodone 30 milligram pills for $15 per pill.

38.     On or about April 29, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.K., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient R.K.

39.     On or about January 31, 2011, defendant NORMAN WERTHER
prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to R.K.,
a pseudo-patient, outside the usual course of professional practice and not for a legitimate
medical purpose. after R.K. reported to defendant WERTHER that he had been "buying"
oxycodone 30 milligram pills for $15 to $20 per pill.

40.     On or about April 29, 2011, defendant NORMAN WERTHER prescribed
150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to R.K., a pseudo-
patient, outside the usual course of professional practice and not for a legitimate medical
purpose.

Pseudo-Patient K.L.

41.     On or about November 19, 2010, defendant NORMAN WERTHER
prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to K.L.,
a pseudo-patient, outside the usual course of professional practice and not for a legitimate
medical purpose.

42.     On or about March 15, 2011, defendant NORMAN WERTHER prescribed
120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to K.L., a pseudo-
patient, outside the usual course of professional practice and not for a legitimate medical
purpose.

43.     On or about June 12, 2011, defendant NORMAN WERTHER prescribed
120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to K.L., a pseudo-

patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient T.L.

44.     On or about December 10, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to T.L., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

45.     On or about February 5, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to T.L., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

46.     On or about July 30, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to T.L., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient G.M.

47.     On or about January 26, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to G.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

48.     On or about June 1, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to G.M., a pseudo-

patient, outside the usual course of professional practice and not for a legitimate medical purpose.

<u>Pseudo-Patient P.J.-M.</u>

49.    On or about March 8, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to P.J.-M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

50.    On or about June 7, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to P.J.-M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

<u>Pseudo-Patient A.M.</u>

51.    On or about March 25, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose. '

52.    On or about May 31, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

53.    On or about July 27, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.M., a pseudo-

patient, outside the usual course of professional practice and not for a legitimate medical purpose.

<u>Pseudo-Patient E.M.</u>

54.     On or about January 29, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to E.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

55.     On or about February 26, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to E.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

<u>Pseudo-Patient J.S.</u>

56.     On or about January 12, 2011, defendant NORMAN WERTHER prescribed 60 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to J.S., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

57.     On or about February 11, 2011, defendant NORMAN WERTHER prescribed 100 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to J.S., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

58.     On or about March 15, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to J.S., a pseudo-

patient, outside the usual course of professional practice and not for a legitimate medical purpose.

59.     On or about August 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to J.S., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient E.W.

60.     On or about January 21, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to E.W., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

61.     On or about July 23, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to E.W., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient M.W.

62.     On or about January 7, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to M.W., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

63.     On or about February 8, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to

M.W., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

64.     On or about June 15, 2011, per the directions of defendant NORMAN WERTHER, defendant WERTHER's wife made deposits of the proceeds of defendant WERTHER's fees paid by pseudo-patients at three banks into three accounts, Citizens Bank Account Number xxxxxx6043, titled to PHL Compcare, LLC and defendant NORMAN WERTHER, MD, Wells Fargo Bank Account Number xxxxxxxxx3631 titled to PHL Compcare, LLC, E____ K. W_____, and TD Bank Account Number xxxxxx2753 titled to defendant NORMAN WERTHER, MD, LLC, all within forty-five minutes.

65.     On or about June 29, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to M.W., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

All in violation of Title 21, United States Code, Section 846.

## <u>COUNTS EIGHTY-ONE THROUGH ONE HUNDRED AND TWELVE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates listed below, in the Eastern District of Pennsylvania,

defendant

### NORMAN WERTHER

knowingly and intentionally distributed and dispensed, and aided and abetted the distribution and

dispensing of, outside the usual course of professional practice and not for a legitimate medical

purpose, the below-noted number of pills, each pill of which is a mixture and substance

containing a detectable amount of oxycodone, a Schedule II controlled substance, each

distribution constituting a separate count of this Indictment:

| COUNT | DATE | APPROXIMATE NUMBER OF PILLS, EACH CONTAINING OXYCODONE | TO WHOM DISTRIBUTED |
|---|---|---|---|
| 81 | 7/7/2011 | 150 pills each containing 30 milligrams of oxycodone | Defendant ANTHONY DIPASQUALE |
| 82 | 7/20/2011 | 150 pills each containing 30 milligrams of oxycodone | Orlando Santiago |
| 83 | 3/8/2011 | 150 pills each containing 30 milligrams of oxycodone | N.C. |
| 84 | 6/8/2011 | 150 pills each containing 30 milligrams of oxycodone | N.C. |
| 85 | 3/14/2011 | 150 pills each containing 30 milligrams of oxycodone | K.D. |
| 86 | 7/7/2011 | 150 pills each containing 30 milligrams of oxycodone | K.D. |
| 87 | 1/17/2011 | 120 pills each containing 30 milligrams of oxycodone | A.E. |
| 88 | 3/14/2011 | 150 pills each containing 30 milligrams of oxycodone | A.E. |
| 89 | 3/17/2011 | 120 pills each containing 30 milligrams of oxycodone | V.G. |
| 90 | 6/7/2011 | 150 pills each containing 30 milligrams of oxycodone | C.H. |
| 91 | 1/31/2011 | 150 pills each containing 30 milligrams of oxycodone | A.K. |
| 92 | 4/29/2011 | 150 pills each containing 30 milligrams of oxycodone | A.K. |
| 93 | 1/31/2011 | 150 pills each containing 30 milligrams of oxycodone | R.K. |
| 94 | 4/29/2011 | 150 pills each containing 30 milligrams of oxycodone | R.K. |

| 95 | 3/15/2011 | 120 pills each containing 30 milligrams of oxycodone | K.L. |
|---|---|---|---|
| 96 | 12/10/2010 | 120 pills each containing 30 milligrams of oxycodone | T.L. |
| 97 | 1/26/2011 | 150 pills each containing 30 milligrams of oxycodone | G.M. |
| 98 | 6/1/2011 | 150 pills each containing 30 milligrams of oxycodone | G.M. |
| 99 | 6/7/2011 | 120 pills each containing 30 milligrams of oxycodone | P. J-M. |
| 100 | 3/25/2011 | 150 pills each containing 30 milligrams of oxycodone | A.M. |
| 101 | 5/31/2011 | 120 pills each containing 30 milligrams of oxycodone | A.M. |
| 102 | 7/27/2011 | 120 pills each containing 30 milligrams of oxycodone | A.M. |
| 103 | 1/29/2011 | 150 pills each containing 30 milligrams of oxycodone | E.M. |
| 104 | 2/26/2011 | 150 pills each containing 30 milligrams of oxycodone | E.M. |
| 105 | 2/11/2011 | 100 pills each containing 30 milligrams of oxycodone | J.S. |
| 106 | 3/15/2011 | 150 pills each containing 30 milligrams of oxycodone | J.S. |
| 107 | 8/8/2011 | 150 pills each containing 30 milligrams of oxycodone | J.S. |
| 108 | 1/21/2011 | 120 pills each containing 30 milligrams of oxycodone | E.W. |
| 109 | 7/23/2011 | 120 pills each containing 30 milligrams of oxycodone | E.W. |
| 110 | 1/7/2011 | 120 pills each containing 30 milligrams of oxycodone | M.W. |
| 111 | 2/8/2011 | 150 pills each containing 30 milligrams of oxycodone | M.W. |
| 112 | 6/29/2011 | 150 pills each containing 30 milligrams of oxycodone | N.W. |

All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT ONE HUNDRED AND THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 12, 2011, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

### ANTHONY DIPASQUALE

knowingly and intentionally possessed with the intent to distribute approximately 568 pills, each

of which is a mixture and substance containing a detectable about of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT ONE HUNDRED AND FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 3-10, and 12 of the Background of Count One of this Indictment are incorporated here.

## THE CONSPIRACY

2.      From in or about April 2009 through in or about August 2011, in the Eastern District of Pennsylvania, defendants

**NORMAN WERTHER,**
**TROY BRINKLEY,**
**a/k/a "Shyheed,"**
**EDWARD JACKSON,**
**a/k/a "Quill,"**
**EDWARD DOMINICK, SR.,**
**a/k/a "Uncle Eddie"**
**a/k/a "Kev," and**
**FREDERICK KELSEY,**
**a/k/a "Charles Johnson,"**
**a/k/a "Omar,"**

conspired and agreed, together and with others known and unknown to the grand jury, to knowingly and intentionally distribute and dispense, outside the usual course of professional practice and not for a legitimate medical purpose, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## MANNER AND MEANS

It was part of the conspiracy that:

3.      Paragraphs 14 and 19 through 21 of the Manner and Means of Count One of this Indictment are incorporated here.

85

4.     Defendant NORMAN WERTHER set aside a block of time at approximately 12:00 pm each business day for appointments for the pseudo-patients controlled by defendant TROY BRINKLEY.

5.     Defendant TROY BRINKLEY arranged for pseudo-patients to go to defendant NORMAN WERTHER's office and directed them to claim pain so that they could obtain a prescription for controlled substances, specifically, pills containing oxycodone, a Schedule II controlled substance.  Defendant BRINKLEY arranged the transportation of the pseudo-patients to defendant WERTHER's office, and then to a pharmacy to fill the prescriptions obtained from defendant WERTHER, whereupon the pseudo-patients turned over the controlled substances to one of defendant BRINKLEY's workers and were paid a fee for their services. Defendant BRINKLEY paid the office visit charge at the defendant WERTHER's medical office, and/or also paid for the prescription to be filled if the pseudo-patient did not use his/her own medical insurance to pay for the prescription.  Defendant BRINKLEY typically sought prescriptions for pills with high concentrations of oxycodone, pills containing 80 milligrams and 30 milligrams of oxycodone.  Defendant BRINKLEY would contact defendant WERTHER and his staff about the handling of pseudo-patients he sent to the office, and at times also paid the physician's staff a separate fee.  Defendant BRINKLEY then sold the controlled substances he obtained from the pseudo-patients to drug dealers for a significant profit.

6.     Defendants EDWARD JACKSON, EDWARD DOMINICK, SR., and FREDERICK KELSEY coordinated with defendant TROY BRINKLEY the transportation of pseudo-patients to defendant NORMAN WERTHER's medical office to obtain prescriptions for Schedule II narcotics, the payment of fees for the pseudo-patients, the payment for and filling of

86

the pseudo-patients' prescriptions, and the sale of the controlled substantces obtained.

Defendants JACKSON, DOMINICK, SR., and KELSEY were paid for their participation.

7.      Some of the defendants procuring drugs for resale from the pseudo-patients were themselves pseudo-patients at defendant NORMAN WERTHER's office, including defendants TROY BRINKLEY, EDWARD JACKSON, and EDWARD DOMINICK, SR., and FREDERICK KELSEY.  Defendant KELSEY used the alias of "Charles Johnson" when he played the role of pseudo patient.

8.      Defendant NORMAN WERTHER unlawfully prescribed, that is, outside the usual course of professional practice and not for a legitimate medical purpose, in excess of 300,000 pills each containing oxycodone, to pseudo-patients of defendant TROY BRINKLEY's group.  Defendant TROY BRINKLEY and others members of his group then sold the controlled substances distributed to him by the pseudo-patients to drug dealers for a significant profit.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, defendants NORMAN WERTHER, TROY BRINKLEY, EDWARD JACKSON, EDWARD DOMINICK, SR., and FREDERICK KELSEY, committed the following overt acts, among others, in the Eastern District of Pennsylvania:

### Pseudo-Patient Defendant FREDERICK KELSEY a/k/a Charles Johnson

1.      On or about April 27, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant FREDERICK KELSEY, a/k/a Charles Johnson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

87

2.      On or about July 16, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 40 milligrams of oxycodone, a Schedule II narcotic, to defendant FREDERICK KELSEY, a/k/a Charles Johnson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

3.      On or about August 14, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant FREDERICK KELSEY, a/k/a Charles Johnson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

4.      On or about January 4, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic to defendant FREDERICK KELSEY, a/k/a Charles Johnson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

On or about May 12, 2011:

5.      Defendant FREDERICK KELSEY drove four pseudo-patients, to office of defendant NORMAN WERTHER so that the pseudo-patients could all obtain prescriptions for pills containing oxycodone, a Schedule II narcotic, for sale on the street.

6.      Defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to D.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

7.      Defendant NORMAN WERTHER prescribed 100 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.L., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

8.      Defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to D.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

9.      Defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to S.R., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

10.      Defendant FREDERICK KELSEY drove the pseudo-patients to a pharmacy located in the 1700 block of Cottman Avenue, Philadelphia, in order that the pseudo-patients fill their prescriptions for pills containing oxycodone, a Schedule II narcotic.

11.      Defendant FREDERICK KELSEY met defendant EDWARD DOMINICK, SR., after filling the prescriptions and transferred a package to defendant DOMINICK, SR.

12.      On or about June 16, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic to defendant FREDERICK KELSEY, a/k/a Charles Johnson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

13.      On or about July 12, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic to defendant

89

FREDERICK KELSEY, a/k/a Charles Johnson, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

On or about May 18, 2011:

14.     Defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to C.Br., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

15.     Defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to T.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

16.     Defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to A.F., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Defendant EDWARD JACKSON

17.     On or about June 4, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant EDWARD JACKSON, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

18.     On or about September 8, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant EDWARD JACKSON, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

<u>Pseudo-Patient Defendant TROY BRINKLEY</u>

19.    On or about June 11, 2009, defendant NORMAN WERTHER prescribed 210 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant TROY BRINKLEY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

20.    On or about July 11, 2009, defendant NORMAN WERTHER prescribed 210 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant TROY BRINKLEY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

21.    On or about August 7, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant TROY BRINKLEY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

22.    On or about July 27, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant TROY BRINKLEY, a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

<u>Pseudo-Patient Defendant EDWARD DOMINICK, SR.</u>

<u>On or about February 9, 2010</u>:

23.    Defendant EDWARD DOMINICK, Sr., possessed with the intent to distribute approximately 520 pills each containing 10 milligrams of oxycodone, a Schedule II

narcotic, and 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and the pill bottles in the names of his pseudo-patients, C.B., H.B., T.B., K.J., and E.O.

24.     Defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to C.B., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

25.     Defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to H.B., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

26.     Defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to K.J., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

27.     Defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to E.O., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

28.     On or about October 20, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant EDWARD DOMINICK, SR., a pseudo-patient, switched his prescription to 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

29.     On or about November 18, 2010, defendant EDWARD DOMINICK, SR., drove five pseudo-patients to the office of defendant NORMAN WERTHER so that they could obtain prescriptions for pills containing oxycodone.

Pseudo-Patient T.B.

30.     On or about July 21, 2009, defendant NORMAN WERTHER prescribed and 30 pills each containing 80 milligrams of oxycodone and 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to T.B., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

31.     On or about February 5, 2010, defendant NORMAN WERTHER noted in the patient chart of T.B. that T.B. had tested positive for cocaine and defendant WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to T.B., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

32.     On or about September 3, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to T.B., a pseudo-patient, switched his prescription to 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

33.     On or about October 6, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to T.B.,

93

a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

34.     On or about January 5, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to T.B., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient C.Br.

35.     On or about July 12, 2011, after pseudo-patient C.Br. tested positive for cocaine, defendant WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to C.Br., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient D.C.

36.     On or about January 29, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to D.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

37.     On or about October 19, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic to D.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

38.     On or about November 13, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to D.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

39.     On or about July 28, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to D.C., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient A.F.

40.     On or about January 18, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to A.F., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

41.     On or about June 15, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.F., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

42.     On or about July 15, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.F., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient L.G.

43.     On or about September 30, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to L.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

44.     On or about January 16, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to L.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

45.     On or about November 5, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to L.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

46.     On or about July 25, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to L.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient T.G.

47.     On or about July 25, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to T.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

48.     On or about July 19, 2011, after pseudo-patient T.G. tested positive for cocaine, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to T.G., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient A.L.

49.     On or about December 21, 2010, defendant NORMAN WERTHER prescribed 100 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.L., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

50.     On or about July 8, 2011, defendant NORMAN WERTHER prescribed 100 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to A.L., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient D.M.

51.     On or about December 21, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, prescribed 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to D.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

52.     On or about August 1, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, prescribed 30 pills

each containing 30 milligrams of oxycodone, a Schedule II narcotic, to D.M., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient S.R.

53.     On or about October 28, 2010, defendant NORMAN WERTHER prescribed 135 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to S.R., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

54.     On or about November 18, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to S.R., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

55.     On or about August 1, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to S.R., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient M.S.

56.     On or about July 20, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to M.S., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

57.     On or about November 5, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to M.S.,

a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

58.     On or about July 22, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to M.S., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient E.W.

59.     On or about July 22, 2009, defendant NORMAN WERTHER prescribed 180 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to E.W., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

60.     On or about August 11, 2009, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to E.W., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

61.     On or about October 28, 2010, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to E.W., a pseudo-patient, outside the usual course of professional practice and not for a legitimate medical purpose.

62.     In or about September 2009, because of the increased cash proceeds then being paid at his office, defendant NORMAN WERTHER, through his staff, instructed those paying for pseudo-patients to pay using money orders.

In or about April of 2011:

63.     Defendant NORMAN WERTHER, in response to Sovereign Bank officials advising him that his Sovereign bank account for his business, PHL Compcare, LLC, would be closed, opened three bank accounts, one at Citizens Bank, one at Wells Fargo, and one at TD Bank, in order to spread out his deposits of the proceeds from his illegal prescribing of controlled substances.

64.     Defendant NORMAN WERTHER told his staff that because of his history of suspicious deposits of numerous sequentially numbered money orders, his bank had closed his account.  Defendant WERTHER instructed his staff to tell the drivers who were bringing groups of pseudo-patients to his office to go to different locations to obtain their money orders and to make sure that not more than four money orders were obtained from the same store.

65.     On or about April 5, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Wachovia (later Wells Fargo Bank "Wells Fargo") in the name of PHL Compcare, LLC, E____ K. W_____, which had both defendant WERTHER and his wife as signatories to the account.

66.     On or about April 7, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at TD Bank ("TD") in the name of NORMAN WERTHER, MD, LLC, which had both defendant WERTHER and his wife as signatories to the account.

100

67.     On or about April 13, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Citizens Bank ("Citizens") in the name of PHL Compcare, LLC, and Norman M. Werther MD, which had both defendant WERTHER and his wife as signatories to the account.

68.     On or about May 19, 2011, defendant NORMAN WERTHER called and spoke to an accountant known to the grand jury about the legality of structuring deposits and advised him that he (WERTHER) was concerned about sequentially numbered money orders aggregating to three thousands dollars and that he (WERTHER) had "three banks now so I don't put sequential in. ...I break it up."

All in violation of Title 21, United States Code, Section 846.

## COUNTS ONE HUNDRED AND FIFTEEN THROUGH HUNDRED AND SIXTY-FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates listed below, in the Eastern District of Pennsylvania, defendant

## NORMAN WERTHER

knowingly and intentionally distributed and dispensed, and aided and abetted the distribution and dispensing of, outside the usual course of professional practice and not for a legitimate medical purpose, the below-noted number of pills, each pill of which is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, each distribution constituting a separate count of this Indictment:

| COUNT | DATE | APPROXIMATE NUMBER OF PILLS, EACH CONTAINING OXYCODONE | TO WHOM DISTRIBUTED |
|---|---|---|---|
| 115 | 4/27/2009 | 180 pills each containing 10 milligrams of oxycodone | Defendant FREDERICK KELSEY a/k/a Charles Johnson |
| 116 | 7/16/2009 | 180 pills each containing 10 milligrams of oxycodone and 30 pills containing 40 milligrams of oxycodone | Defendant FREDERICK KELSEY a/k/a Charles Johnson |
| 117 | 8/14/2009 | 150 pills each containing 10 milligrams of oxycodone | Defendant FREDERICK KELSEY a/k/a Charles Johnson |
| 118 | 1/4/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills containing 30 milligrams of oxycodone | Defendant FREDERICK KELSEY a/k/a Charles Johnson |
| 119 | 6/16/2011 | 120 pills each containing 30 milligrams of oxycodone | Defendant FREDERICK KELSEY a/k/a Charles Johnson |
| 120 | 7/12/2011 | 120 pills each containing 30 milligrams of oxycodone | Defendant FREDERICK KELSEY a/k/a Charles Johnson |
| 121 | 8/6/2009 | 150 pills each containing 10 milligrams of oxycodone | Defendant EDWARD |

| 122 | | | JACKSON |
|-----|-----|-----|-----|
| 123 | 9/8/2009 | 150 pills each containing 10 milligrams of oxycodone | Defendant EDWARD JACKSON |
| 124 | 8/7/2009 | 150 pills each containing 10 milligrams of oxycodone | Defendant TROY BRINKLEY |
| 125 | 7/27/2011 | 120 pills each containing 30 milligrams of oxycodone | Defendant TROY BRINKLEY |
| 126 | 10/20/2010 | 120 pills each containing 30 milligrams of oxycodone | Defendant EDWARD DOMINICK, SR. |
| 127 | 2/5/2009 | 60 pills each containing 80 milligrams of oxycodone and 60 pills containing 10 milligrams of oxycodone | T.B. |
| 128 | 9/3/2010 | 150 pills each containing 10 milligrams of oxycodone | T.B. |
| 129 | 10/6/2010 | 120 pills each containing 30 milligrams of oxycodone | T.B. |
| 130 | 1/5/2011 | 120 pills each containing 30 milligrams of oxycodone | T.B. |
| 131 | 5/18/2011 | 120 pills each containing 30 milligrams of oxycodone | C.Br. |
| 132 | 7/12/2011 | 120 pills each containing 30 milligrams of oxycodone | C.Br. |
| 133 | 1/29/2010 | 150 pills each containing 10 milligrams of oxycodone | D.C. |
| 134 | 10/19/2010 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | D.C. |
| 135 | 11/13/2010 | 120 pills each containing 30 milligrams of oxycodone | D.C. |
| 136 | 5/12/2011 | 120 pills each containing 30 milligrams of oxycodone | D.C. |
| 137 | 7/28/2011 | 120 pills each containing 30 milligrams of oxycodone | D.C. |
| 138 | 1/18/2011 | 150 pills each containing 10 milligrams of oxycodone | A.F. |
| 139 | 5/18/2011 | 150 pills each containing 10 milligrams of oxycodone | A.F. |
| 140 | 6/15/2011 | 120 pills each containing 30 milligrams of oxycodone | A.F. |
| 141 | 7/15/2011 | 120 pills each containing 30 milligrams of oxycodone | A.F. |
| 142 | 9/30/2009 | 150 pills each containing 10 milligrams of oxycodone | L.G. |
| 143 | 1/16/2010 | 150 pills each containing 10 milligrams of oxycodone | L.G. |
| 144 | 11/5/2010 | 120 pills each containing 30 milligrams of oxycodone | L.G. |
| 145 | 7/25/2011 | 120 pills each containing 30 milligrams of oxycodone | L.G. |
| 146 | 7/25/2009 | 180 pills each containing 10 milligrams of oxycodone | T.G. |
| 147 | 5/18/2011 | 120 pills each containing 30 milligrams of oxycodone | T.G. |

| 148 | 7/19/2011 | 120 pills each containing 30 milligrams of oxycodone | T.G. |
| 149 | 12/21/2010 | 100 pills each containing 30 milligrams of oxycodone | A.L. |
| 150 | 5/12/2011 | 100 pills each containing 30 milligrams of oxycodone | A.L. |
| 151 | 7/8/2011 | 100 pills each containing 30 milligrams of oxycodone | A.L. |
| 152 | 12/21/2010 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | D.M. |
| 153 | 5/12/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | D.M. |
| 154 | 8/1/2011 | 150 pills each containing 10 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | D.M. |
| 155 | 10/28/2010 | 135 pills each containing 10 milligrams of oxycodone | S.R. |
| 156 | 11/18/2010 | 120 pills each containing 30 milligrams of oxycodone | S.R. |
| 157 | 5/12/2011 | 120 pills each containing 30 milligrams of oxycodone | S.R. |
| 158 | 8/1/2011 | 120 pills each containing 30 milligrams of oxycodone | S.R. |
| 159 | 7/20/2010 | 150 pills each containing 10 milligrams of oxycodone | M.S. |
| 160 | 11/5/2010 | 120 pills each containing 30 milligrams of oxycodone | M.S. |
| 161 | 7/22/2011 | 120 pills each containing 30 milligrams of oxycodone | M.S. |
| 162 | 7/22/2009 | 180 pills each containing 10 milligrams of oxycodone | E.W. |
| 163 | 8/11/2009 | 150 pills each containing 10 milligrams of oxycodone | E.W. |
| 164 | 10/5/2010 | 150 pills each containing 10 milligrams of oxycodone | E.W. |

All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## <u>COUNT ONE HUNDRED AND SIXTY-FIVE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 9, 2010, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

### EDWARD DOMINICK, SR.,

knowingly and intentionally possessed with the intent to distribute approximately 580 pills, each

of which is a mixture and substance containing a detectable about of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNT ONE HUNDRED AND SIXTY-SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1, 3-10, and 12 of the Background of Count One of this Indictment are incorporated here.

### THE CONSPIRACY

      2.      From in or about January 2010 through in or about August 2011, in the Eastern District of Pennsylvania, defendants

**NORMAN WERTHER,**
**KYLE JONES,**
**ALI ARMSTEAD,**
**TERRELL JACKSON, and**
**BERNARD JACKSON**

conspired and agreed, together and with others known and unknown to the grand jury, to knowingly and intentionally distribute and dispense, outside the usual course of professional practice and not for a legitimate medical purpose, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

### MANNER AND MEANS

      It was part of the conspiracy that:

      3.      Paragraphs 14 and 19 through 21 of the Manner and Means of Count One of this Indictment are incorporated here.

4.     Defendant NORMAN WERTHER saw pseudo-patients controlled by defendant KYLE JONES grouped together, one defendant JONES' pseudo-patient following the other.

5.     Defendant KYLE JONES began as a psuedo-patient at defendant NORMAN WERTHER's as a member of another group, William Stukes' group.  Then defendant KYLE JONES asked defendant WERTHER if he could start to bring his own people. Defendant WERTHER indicated he could and defendant JONES thereafter arranged for his group of pseudo-patients to go to defendant NORMAN WERTHER's office.  Defendant JONES directed his pseudo-patients to claim pain so that they could obtain a prescription for controlled substances, specifically, pills containing oxycodone, a Schedule II controlled substance from defendant WERTHER.   Defendant KYLE JONES typically sought prescriptions for pills with high concentrations of oxycodone, pills containing 80 milligrams and 30 milligrams of oxycodone.   Defendant JONES arranged the transportation of the pseudo-patients to defendant WERTHER's office, and then to a pharmacy to fill the prescriptions obtained from defendant WERTHER, whereupon the pseudo-patients turned over the controlled substances to defendant JONES or one of defendant JONES's associates and were paid a fee for their services. Defendant JONES paid the office visit charge at defendant WERTHER's medical office, and/or also paid for the prescription to be filled if the pseudo-patient did not use his/her own medical insurance to pay for the prescription.  Defendant JONES would contact defendant WERTHER and his staff about the handling of pseudo-patients he sent to the office, and at times also paid the physician's staff a separate fee.  Defendant JONES then sold the controlled substances distributed to him by the pseudo-patients to drug dealers for a significant profit.

6.       Defendants ALI ARMSTEAD, TERRELL JACKSON, and BERNARD JACKSON coordinated with defendant JONES about the pseudo-patients brought to defendant NORMAN WERTHER's medical office to obtain prescriptions for Schedule II narcotics.  Each of defendants ARMSTEAD, TERRELL JACKSON, and BERNARD JACKSON were brought into the group by defendant JONES and in turn each of defendants ARMSTEAD, TERRELL JACKSON, and BERNARD JACKSON then brought pseudo-patients whose transportation each arranged, and whose office fees and prescription fees for pseudo-patients each paid.  Defendants ARMSTEAD, TERRELL JACKSON, and BERNARD JACKSON coordinated with defendant JONES and gave defendant JONES a share of the profit for the patients brought to defendant WERTHER by defendants ARMSTEAD, TERRELL JACKSON, and BERNARD JACKSON.

7.       Some of the defendants procuring drugs for resale from the pseudo-patients were themselves pseudo-patients at defendant NORMAN WERTHER's office, including defendants KYLE JONES, ALI ARMSTEAD, TERRELL JACKSON, and BERNARD JACKSON.

8.       Defendant NORMAN WERTHER unlawfully prescribed, that is, outside the usual course of professional practice and not for a legitimate medical purpose, in excess of 15,000 pills each containing oxycodone to pseudo-patients of defendant KYLE JONES's group. Defendant JONES, ARMSTEAD, TERRELL JACKSON, and BERNARD JACKSON, and other members of defendant JONES' group then sold the controlled substances distributed to them by the pseudo-patients to drug dealers for a significant profit.

## **OVERT ACTS**

In furtherance of the conspiracy and to accomplish its object, defendants NORMAN WERTHER, KYLE JONES, ALI ARMSTEAD, TERRELL JACKSON and BERNARD JACKSON committed the following overt acts, among others, in the Eastern District of Pennsylvania:

Pseudo-Patient Defendant KYLE JONES

1.      On or about January 7, 2010, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 60 pills each containing 10 milligrams of oxycodone to defendant KYLE JONES outside the usual course of professional practice and not for a legitimate medical purpose.

2.      On or about September 13, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant KYLE JONES, switched his prescription to 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 30 milligrams of oxycodone, outside the usual course of professional practice and not for a legitimate medical purpose.

3.      On or about November 4, 2010, defendant NORMAN WERTHER, prescribed 120 pills each containing 30 milligrams of oxycodone to defendant KYLE JONES outside the usual course of professional practice and not for a legitimate medical purpose.

4.      On or about November 20, 2010, defendant NORMAN WERTHER, prescribed 120 pills each containing 30 milligrams of oxycodone to defendant KYLE JONES outside the usual course of professional practice and not for a legitimate medical purpose.

5.      On or about July 27, 2011, defendant NORMAN WERTHER, prescribed 120 pills each containing 30 milligrams of oxycodone to defendant KYLE JONES outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Defendant ALI ARMSTEAD

6.      On or about January 28, 2011, defendant NORMAN WERTHER prescribed 90 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant ALI ARMSTEAD outside the usual course of professional practice and not for a legitimate medical purpose.

7.      On or about February 24, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant ALI ARMSTEAD outside the usual course of professional practice and not for a legitimate medical purpose.

8.      On or about August 9, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant ALI ARMSTEAD outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Defendant TERRELL JACKSON

9.      On or about February 1, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to

110

defendant TERRELL JACKSON outside the usual course of professional practice and not for a legitimate medical purpose.

      10.    On or about June 9, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant TERRELL JACKSON outside the usual course of professional practice and not for a legitimate medical purpose.

      11.    On or about August 3, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant TERRELL JACKSON outside the usual course of professional practice and not for a legitimate medical purpose.

<u>Pseudo-Patient Defendant BERNARD JACKSON</u>

      12.    On or about January 27, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant BERNARD JACKSON outside the usual course of professional practice and not for a legitimate medical purpose.

      13.    On or about February 25, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant BERNARD JACKSON outside the usual course of professional practice and not for a legitimate medical purpose.

      14.    On or about March 24, 2011, defendant NORMAN WERTHER prescribed 90 pills each containing 40 milligrams of oxycodone, a Schedule II narcotic, and 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic to defendant BERNARD

111

JACKSON outside the usual course of professional practice and not for a legitimate medical purpose.

15.     On or about June 17, 2011, defendant NORMAN WERTHER prescribed 90 pills each containing 40 milligrams of oxycodone, a Schedule II narcotic, and 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic to defendant BERNARD JACKSON outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Defendant C.B.

16.     On or about April 11, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient C.B. outside the usual course of professional practice and not for a legitimate medical purpose.

17.     On or about July 27, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient C.B. outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Defendant S.D.

18.     On or about February 23, 2010, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.D. outside the usual course of professional practice and not for a legitimate medical purpose.

19.     On or about September 7, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule

112

II narcotic, to pseudo-patient S.D. switched his prescription to 52 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, and 14 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.D. outside the usual course of professional practice and not for a legitimate medical purpose.

20.     On or about September 23, 2010, defendant NORMAN WERTHER, prescribed 150 pills each containing 15 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.D. outside the usual course of professional practice and not for a legitimate medical purpose.

21.     On or about November 20, 2010, defendant NORMAN WERTHER, prescribed 105 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.D. outside the usual course of professional practice and not for a legitimate medical purpose.

22.     On or about July 7, 2011, defendant NORMAN WERTHER, prescribed 105 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.D. outside the usual course of professional practice and not for a legitimate medical purpose.

23.     On or about August 3, 2011, defendant NORMAN WERTHER, prescribed 105 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.D. outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Defendant Q.G.

24.     On or about January 25, 2011, defendant NORMAN WERTHER prescribed 75 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to

113

pseudo-patient Q.G. outside the usual course of professional practice and not for a legitimate medical purpose.

25.     On or about February 23, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient Q.G. outside the usual course of professional practice and not for a legitimate medical purpose.

26.     On or about March 17, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient Q.G. outside the usual course of professional practice and not for a legitimate medical purpose.

27.     On or about July 28, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient Q.G. outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Defendant W.S.

28.     On or about February 1, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient W.S. outside the usual course of professional practice and not for a legitimate medical purpose.

29.     On or about July 27, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient W.S. outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient Defendant S.T.

30.     On or about February 4, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.T. outside the usual course of professional practice and not for a legitimate medical purpose.

31.     On or about March 25, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.T. outside the usual course of professional practice and not for a legitimate medical purpose.

32.     On or about August 8, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.T. outside the usual course of professional practice and not for a legitimate medical purpose.

In or about April of 2011:

33.     Defendant NORMAN WERTHER, in response to Sovereign Bank officials advising him that his Sovereign bank account for his business, PHL Compcare, LLC, would be closed, opened three bank accounts, one at Citizens Bank, one at Wells Fargo, and one at TD Bank, in order to spread out his deposits of the proceeds from his illegal prescribing of controlled substances.

34.     Defendant NORMAN WERTHER told his staff that because of his history of suspicious deposits of numerous sequentially numbered money orders, his bank had closed his account.  Defendant WERTHER instructed his staff to tell the drivers who were bringing groups of pseudo-patients to his office to go to different locations to obtain their money orders and to make sure that not more than four money orders were obtained from the same store.

35.     On or about April 5, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Wachovia (later Wells Fargo Bank "Wells Fargo") in the name of PHL Compcare, LLC, E____ K. W_____, which had both defendant WERTHER and his wife as signatories to the account.

36.     On or about April 7, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at TD Bank ("TD") in the name of NORMAN WERTHER, MD, LLC, which had both defendant WERTHER and his wife as signatories to the account.

37.     On or about April 13, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Citizens Bank ("Citizens") in the name of PHL Compcare, LLC, and Norman M. Werther MD, which had both defendant WERTHER and his wife as signatories to the account.

All in violation of Title 21, United States Code, Section 846.

## COUNTS ONE HUNDRED AND SIXTY-SEVEN THROUGH ONE HUNDRED AND EIGHTY-NINE

THE GRAND JURY FURTHER CHARGES THAT:

On or about the dates listed below, in the Eastern District of Pennsylvania,

defendant

## NORMAN WERTHER

knowingly and intentionally distributed and dispensed, and aided and abetted the distribution and

dispensing of, outside the usual course of professional practice and not for a legitimate medical

purpose, the below-noted number of pills, each pill of which is a mixture and substance

containing a detectable amount of oxycodone, a Schedule II controlled substance, each

distribution constituting a separate count of this Indictment:

| COUNT | DATE | APPROXIMATE NUMBER OF PILLS, EACH CONTAINING OXYCODONE | TO WHOM DISTRIBUTED |
|---|---|---|---|
| 167 | 1/7/2010 | 60 pills each containing 80 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | Defendant KYLE JONES |
| 168 | 9/13/2010 | 30 pills each containing 30 milligrams of oxycodone and 150 pills each containing 10 milligrams of oxycodone | Defendant KYLE JONES |
| 169 | 11/4/2010 | 120 pills each containing 30 milligrams of oxycodone | Defendant KYLE JONES |
| 170 | 7/27/2011 | 120 pills each containing 30 milligrams of oxycodone | Defendant KYLE JONES |
| 171 | 1/28/2011 | 90 pills each containing 30 milligrams of oxycodone | Defendant ALI ARMSTEAD |
| 172 | 2/24/2011 | 120 pills each containing 30 milligrams of oxycodone | Defendant ALI ARMSTEAD |
| 173 | 8/9/2011 | 120 pills each containing 30 milligrams of oxycodone | Defendant ALI ARMSTEAD |
| 174 | 2/1/2011 | 150 pills each containing 30 milligrams of oxycodone | Defendant TERRELL JACKSON |
| 175 | 1/27/2010 | 120 pills each containing 10 milligrams of oxycodone | Defendant BERNARD JACKSON |
| 176 | 2/25/2010 | 150 pills each containing 10 milligrams of oxycodone | Defendant BERNARD |

117

| | | | JACKSON |
|---|---|---|---|
| 177 | 3/24/2010 | 90 pills each containing 40 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | Defendant BERNARD JACKSON |
| 178 | 6/17/2010 | 90 pills each containing 40 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | Defendant BERNARD JACKSON |
| 179 | 2/23/2010 | 60 pills each containing 80 milligrams of oxycodone and 60 pills each containing 10 milligrams of oxycodone | S.D. |
| 180 | 9/7/2010 | 52 pills each containing 10 milligrams of oxycodone and 14 pills each containing 30 milligrams of oxycodone | S.D. |
| 181 | 9/23/2010 | 150 pills each containing 15 milligrams of oxycodone and 30 pills each containing 30 milligrams of oxycodone | S.D. |
| 182 | 7/7/2011 | 105 pills each containing 30 milligrams of oxycodone | S.D. |
| 183 | 1/25/2011 | 75 pills each containing 30 milligrams of oxycodone | Q.G. |
| 184 | 2/23/2011 | 120 pills each containing 30 milligrams of oxycodone | Q.G. |
| 185 | 3/17/2011 | 150 pills each containing 30 milligrams of oxycodone | Q.G. |
| 186 | 7/28/2011 | 150 pills each containing 30 milligrams of oxycodone | Q.G. |
| 187 | 2/1/2011 | 120 pills each containing 30 milligrams of oxycodone | W.S. |
| 188 | 7/27/2011 | 120 pills each containing 30 milligrams of oxycodone | W.S. |
| 189 | 3/25/2011 | 120 pills each containing 30 milligrams of oxycodone | S.T. |

All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT ONE HUNDRED AND NINETY

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 3-10, and 12 of the Background of Count One of this Indictment are incorporated here.

## THE CONSPIRACY

2.      From in or about February 2009 through in or about August 2011, in the Eastern District of Pennsylvania, defendants

**NORMAN WERTHER and
RONALD CAMPBELL**

conspired and agreed, together and with others known and unknown to the grand jury, to knowingly and intentionally distribute and dispense, outside the usual course of professional practice and not for a legitimate medical purpose, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## MANNER AND MEANS

It was part of the conspiracy that:

3.       Paragraphs 14 and 19 through 21 of the Manner and Means of Count One of this Indictment are incorporated here.

4.      Defendant NORMAN WERTHER saw pseudo-patients controlled by defendant RONALD CAMPBELL grouped together, one defendant CAMPBELL pseudo-patient immediately following the other.

119

5.      Defendant RONALD CAMPBELL arranged for pseudo-patients, to include many family members, to go to defendant NORMAN WERTHER's office and directed them to claim pain so that they could obtain a prescription for controlled substances, specifically, pills containing oxycodone, a Schedule II controlled substance.   Defendant CAMPBELL typically sought prescriptions for pills with high concentrations of oxycodone, pills containing 80 milligrams and 30 milligrams of oxycodone.   Defendant CAMPBELL drove his pseudo-patients, and, when he could not drive his pseudo-patients, he arranged for others in his group to drive his pseudo-patients, to defendant WERTHER's office, and then to a pharmacy to fill the prescriptions obtained from defendant WERTHER.   The pseudo-patients then turned over the controlled substances to defendant CAMPBELL and were paid a fee for their services. Defendant CAMPBELL paid the office visit charge at the defendant WERTHER's medical office, and/or also paid for the prescription to be filled if the pseudo-patient did not use his/her own medical insurance to pay for the prescription.   Defendant CAMPBELL would contact defendant WERTHER and his staff about the handling of pseudo-patients he sent to the office, and at times also paid the physician's staff a separate fee.   Defendant CAMPBELL then sold the controlled substances distributed to him by the pseudo-patients to drug dealers for a significant profit.

6.      Defendant NORMAN WERTHER unlawfully prescribed, that is, outside the usual course of professional practice and not for a legitimate medical purpose, in excess of 40,000 pills each containing oxycodone, to pseudo-patients of defendant RONALD CAMPBELL's group.   Defendant CAMPBELL then sold the controlled substances distributed to him by the pseudo-patients to drug dealers for a significant profit.

120

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, defendants

NORMAN WERTHER and RONALD CAMPBELL committed the following overt acts, among

others, in the Eastern District of Pennsylvania:

Pseudo Patient and Defendant RONALD CAMPBELL

1.      On or about February 18, 2009, defendant NORMAN WERTHER

prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to

defendant RONALD CAMPBELL outside the usual course of professional practice and not for a

legitimate medical purpose.

2.      On or about July 11, 2009, defendant NORMAN WERTHER prescribed

90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 180 pills each

containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant RONALD

CAMPBELL outside the usual course of professional practice and not for a legitimate medical

purpose.

3.      On or about July 20, 2010, defendant NORMAN WERTHER prescribed

90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each

containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant RONALD

CAMPBELL outside the usual course of professional practice and not for a legitimate medical

purpose.

4.      On or about July 27, 2010, defendant NORMAN WERTHER prescribed

90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each

containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant RONALD

CAMPBELL outside the usual course of professional practice and not for a legitimate medical purpose.

       5.     On or about January 15, 2011, defendant NORMAN WERTHER, who had the previous month prescribed 90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 30 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to defendant RONALD CAMPBELL, switched his prescriptions to 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a legitimate medical purpose.

       6.     On or about May 13, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant RONALD CAMPBELL outside the usual course of professional practice and not for a legitimate medical purpose.

       7.     On or about May 13, 2011, defendant RONALD CAMPBELL possessed with the intent to distribute approximately 536 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, and the pill bottles in his name as well as those of his psuedo-patients, I.G. and D.A.

       8.     On or about August 3, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to defendant RONALD CAMPBELL outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient L.C.

9.      On or about February 16, 2010, defendant NORMAN WERTHER

prescribed 90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 30

pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient L.C.

outside the usual course of professional practice and not for a legitimate medical purpose.

10.     On or about October 29, 2010, defendant NORMAN WERTHER, who

had the previous month prescribed 90 pills each containing 80 milligrams of oxycodone, a

Schedule II narcotic, as well as 30 pills each containing 10 milligrams of oxycodone, a Schedule

II narcotic, to L.C., switched his prescriptions to 90 pills each containing 60 milligrams of

oxycodone, a Schedule II narcotic, as well as 30 pills each containing 10 milligrams of

oxycodone, a Schedule II narcotic, outside the usual course of professional practice and not for a

legitimate medical purpose.

11.     On or about January 4, 2011, defendant NORMAN WERTHER, who had

the previous visit prescribed 90 pills each containing 60 milligrams of oxycodone, a Schedule II

narcotic, as well as 30 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic,

to L.C. switched his prescriptions to 150 pills each containing 30 milligrams of oxycodone, a

Schedule II narcotic, outside the usual course of professional practice and not for a legitimate

medical purpose.

12.      On or about August 3, 2011, defendant NORMAN WERTHER

prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to

pseudo-patient L.C. outside the usual course of professional practice and not for a legitimate

medical purpose.

Pseudo-Patient I.G.

13.     On or about February 3, 2010, defendant NORMAN WERTHER prescribed 90 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 30 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient I.G. outside the usual course of professional practice and not for a legitimate medical purpose.

14.     On or about April 18, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient I.G. outside the usual course of professional practice and not for a legitimate medical purpose.

15.     On or about May 4, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient I.G. outside the usual course of professional practice and not for a legitimate medical purpose.

16.      On or about July 12, 2011, defendant NORMAN WERTHER prescribed 150 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient I.G. outside the usual course of professional practice and not for a legitimate medical purpose.

Pseudo-Patient S.H.

17.      On or about November 12, 2009, defendant NORMAN WERTHER prescribed 90 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.H. outside the usual course of professional practice and not for a legitimate medical purpose.

18.      On or about May 12, 2010, defendant NORMAN WERTHER prescribed 120 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.H. outside the usual course of professional practice and not for a legitimate medical purpose.

19.     On or about June 9, 2010, defendant NORMAN WERTHER prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, and 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.H. outside the usual course of professional practice and not for a legitimate medical purpose.

20.     On or about September 30, 2010, defendant NORMAN WERTHER, who had the previous month prescribed 60 pills each containing 80 milligrams of oxycodone, a Schedule II narcotic, as well as 60 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.H., switched his prescriptions to 30 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, as well as 150 pills each containing 10 milligrams of oxycodone, a Schedule II narcotic outside the usual course of professional practice and not for a legitimate medical purpose.

21.     On or about February 5, 2011, defendant NORMAN WERTHER prescribed 100 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.H. outside the usual course of professional practice and not for a legitimate medical purpose.

22.     On or about June 22, 2011, defendant NORMAN WERTHER prescribed 90 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.H. outside the usual course of professional practice and not for a legitimate medical purpose.

23.     On or about July 19, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.H. outside the usual course of professional practice and not for a legitimate medical purpose.

24.     On or about August 8, 2011, defendant NORMAN WERTHER prescribed 120 pills each containing 30 milligrams of oxycodone, a Schedule II narcotic, to pseudo-patient S.H. outside the usual course of professional practice and not for a legitimate medical purpose.

In or about April of 2011:

25.     Defendant NORMAN WERTHER, in response to Sovereign Bank officials advising him that his Sovereign bank account for his business, PHL Compcare, LLC, would be closed, opened three bank accounts, one at Citizens Bank, one at Wells Fargo, and one at TD Bank, in order to spread out his deposits of the proceeds from his illegal prescribing of controlled substances.

26.     Defendant NORMAN WERTHER told his staff that because of his history of suspicious deposits of numerous sequentially numbered money orders, his bank had closed his account.  Defendant WERTHER instructed his staff to tell the drivers who were bringing groups of pseudo-patients to his office to go to different locations to obtain their money orders and to make sure that not more than four money orders were obtained from the same store.

27.     On or about April 5, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Wachovia (later Wells Fargo Bank "Wells Fargo") in the name of PHL Compcare, LLC, E____ K. W_____, which had both defendant WERTHER and his wife as signatories to the account.

28.     On or about April 7, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at TD Bank ("TD") in the name of NORMAN

WERTHER, MD, LLC, which had both defendant WERTHER and his wife as signatories to the account.

29.     On or about April 13, 2011, defendant NORMAN WERTHER signed a signature card for the opening of an account at Citizens Bank ("Citizens") in the name of PHL Compcare, LLC, and Norman M. Werther MD, which had both defendant WERTHER and his wife as signatories to the account.

All in violation of Title 21, United States Code, Section 846.

## COUNTS ONE HUNDRED AND NINETY-ONE THROUGH TWO HUNDRED AND SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates listed below, in the Eastern District of Pennsylvania, defendant

## NORMAN WERTHER

knowingly and intentionally distributed and dispensed, and aided and abetted the distribution and dispensing of, outside the usual course of professional practice and not for a legitimate medical purpose, the below-noted number of pills, each pill of which is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, each distribution constituting a separate count of this Indictment:

| COUNT | DATE | APPROXIMATE NUMBER OF PILLS, EACH CONTAINING OXYCODONE | TO WHOM DISTRIBUTED |
|---|---|---|---|
| 191 | 2/18/2009 | 120 pills each containing 10 milligrams of oxycodone | Defendant RONALD CAMPBELL |
| 192 | 7/11/2009 | 90 pills each containing 80 milligrams of oxycodone and 180 pills each containing 10 milligrams of oxycodone | Defendant RONALD CAMPBELL |
| 193 | 7/27/2010 | 90 pills each containing 80 milligrams of oxycodone and 30 pills each containing 10 milligrams of oxycodone | Defendant RONALD CAMPBELL |
| 194 | 1/15/2011 | 150 pills each containing 30 milligrams of oxycodone | Defendant RONALD CAMPBELL |
| 195 | 5/13/2011 | 150 pills each containing 30 milligrams of oxycodone | Defendant RONALD CAMPBELL |
| 196 | 8/3/2011 | 150 pills each containing 30 milligrams of oxycodone | Defendant RONALD CAMPBELL |
| 197 | 2/16/2010 | 90 pills each containing 80 milligrams of oxycodone and 30 pills each containing 10 milligrams of oxycodone | L.C. |
| 198 | 10/29/2010 | 90 pills each containing 60 milligrams of oxycodone and 30 pills each containing 10 milligrams of oxycodone | L.C. |
| 199 | 1/4/2011 | 150 pills each containing 30 milligrams of oxycodone | L.C. |

128

| 200 | 8/3/2011 | 150 pills each containing 30 milligrams of oxycodone | L.C. |
| 201 | 4/18/2011 | 150 pills each containing 30 milligrams of oxycodone | I.G. |
| 202 | 5/4/2011 | 150 pills each containing 30 milligrams of oxycodone | I.G. |
| 203 | 11/12/2009 | 90 pills each containing 10 milligrams of oxycodone | S.H. |
| 204 | 9/30/2010 | 30 pills each containing 30 milligrams of oxycodone and 150 pills each containing 10 milligrams of oxycodone | S.H. |
| 205 | 6/22/2011 | 90 pills each containing 30 milligrams of oxycodone | S.H. |
| 206 | 8/8/2011 | 120 pills each containing 30 milligrams of oxycodone | S.H. |

All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and

Title 18, United States Code, Section 2.

## COUNT TWO HUNDRED AND SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 13, 2011, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

### RONALD CAMPBELL

knowingly and intentionally possessed with the intent to distribute approximately 536 pills, each

of which is a mixture and substance containing a detectable about of oxycodone, a Schedule II

controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

## COUNTS TWO HUNDRED AND EIGHT THROUGH
## THREE HUNDRED AND TWENTY-FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      On or about the dates set forth below, in the Eastern District of

Pennsylvania, defendant

## NORMAN WERTHER

knowingly conducted, and attempted to conduct, and aided, abetted and willfully caused, the

following financial transactions affecting interstate commerce, that is, the bank deposits listed

below, each of which constitutes a separate count in this Indictment:

| COUNT | DATE | BANK | TOTAL DEPOSIT | AMOUNT OF DEPOSIT IN MONEY ORDERS |
|-------|------|------|---------------|-----------------------------------|
| 208 | 4/19/2011 | Wells Fargo | $4,841 | $2,745 |
| 219 | 4/19/2011 | Citizens | $2,919 | $700 |
| 210 | 4/19/2011 | TD | $3,445 | $1,025 |
| 211 | 4/22/2011 | Wells Fargo | $1,191 | $450 |
| 212 | 4/22/2011 | Citizens | $1,775 | $1,025 |
| 213 | 4/22/2011 | TD | $4,175 | $2,020 |
| 214 | 4/25/2011 | Wells Fargo | $3,250 | $2,825 |
| 215 | 4/25/2011 | Citizens | $1,672 | $1,600 |
| 216 | 4/25/2011 | TD | $4,017 | $2,575 |
| 217 | 4/27/2011 | Wells Fargo | $3,712 | $300 |
| 218 | 4/27/2011 | Citizens | $3,991 | $1,325 |
| 219 | 4/27/2011 | TD | $1,945 | $1,200 |
| 220 | 4/29/2011 | Wells Fargo | $1,265 | $1,050 |
| 221 | 4/29/2011 | Citizens | $1,297 | $1,165 |
| 222 | 4/29/2011 | TD | $2,509 | $1,450 |

| COUNT | DATE | BANK | TOTAL DEPOSIT | AMOUNT OF DEPOSIT IN MONEY ORDERS |
|---|---|---|---|---|
| 223 | 5/3/2011 | Wells Fargo | $1,748 | $875 |
| 224 | 5/3/2011 | Citizens | $3,184 | $1,745 |
| 225 | 5/3/2011 | TD | $2,541 | $1,300 |
| 226 | 5/6/2011 | Wells Fargo | $1,450 | $1,300 |
| 227 | 5/6/2011 | Citizens | $3,507 | $2,450 |
| 228 | 5/6/2011 | TD | $4,575 | $700 |
| 229 | 5/16/2011 | Wells Fargo | $5,660 | $1,820 |
| 230 | 5/16/2011 | Citizens | $3,813 | $2,050 |
| 231 | 5/16/2011 | TD | $5,169 | $1,725 |
| 232 | 5/17/2011 | Wells Fargo | $1,590 | $1,025 |
| 233 | 5/17/2011 | Citizens | $1,609 | $1,125 |
| 234 | 5/17/2011 | TD | $1,765 | $1,225 |
| 235 | 5/18/2011 | Wells Fargo | $2,140 | $1,265 |
| 236 | 5/18/2011 | Citizens | $990 | $990 |
| 237 | 5/18/2011 | TD | $1,315 | $1,000 |
| 238 | 5/20/2011 | Wells Fargo | $3,115 | $1,950 |
| 239 | 5/20/2011 | Citizens | $2,870 | $2,095 |
| 240 | 5/20/2011 | TD | $5,663 | $425 |
| 241 | 5/25/2011 | Wells Fargo | $1,971 | $950 |
| 242 | 5/25/2011 | Citizens | $800 | $800 |
| 243 | 5/25/2011 | TD | $2,666 | $1,275 |
| 244 | 5/27/2011 | Wells Fargo | $2,431 | $1,375 |
| 245 | 5/27/2011 | Citizens | $3,132 | $1725 |
| 246 | 5/27/2011 | TD | $1,895 | $900 |
| 247 | 6/8/2011 | Wells Fargo | $2,922 | $1,650 |
| 248 | 6/8/2011 | Citizens | $1,165 | $855 |

| COUNT | DATE | BANK | TOTAL DEPOSIT | AMOUNT OF DEPOSIT IN MONEY ORDERS |
|---|---|---|---|---|
| 249 | 6/8/2011 | TD | $1,132 | $725 |
| 250 | 6/9/2011 | Wells Fargo | $1,412 | $1,075 |
| 251 | 6/9/2011 | Citizens | $1,405 | $875 |
| 252 | 6/9/2011 | TD | $920 | $400 |
| 253 | 6/10/2011 | Wells Fargo | $1,960 | $1,250 |
| 254 | 6/10/2011 | Citizens | $770 | $570 |
| 255 | 6/10/2011 | TD | $650 | $450 |
| 256 | 6/14/2011 | Wells Fargo | $3,518 | $2,100 |
| 257 | 6/14/2011 | Citizens | $3,222 | $1,650 |
| 258 | 6/14/2011 | TD | $3,062 | $1,550 |
| 259 | 6/15/2011 | Wells Fargo | $1,814 | $1,010 |
| 260 | 6/15/2011 | Citizens | $1,741 | $850 |
| 261 | 6/15/2011 | TD | $4,404 | $725 |
| 262 | 6/16/2011 | Wells Fargo | $1,080 | $700 |
| 263 | 6/16/2011 | Citizens | $1,385 | $1,025 |
| 264 | 6/16/2011 | TD | $1,170 | $825 |
| 265 | 6/17/2011 | Wells Fargo | $2,856 | $1,845 |
| 266 | 6/17/2011 | Citizens | $2,939 | $1,975 |
| 267 | 6/17/2011 | TD | $2,920 | $2,160 |
| 268 | 6/20/2011 | Wells Fargo | $3,197 | $425 |
| 269 | 6/20/2011 | Citizens | $2,595 | $1,540 |
| 270 | 6/20/2011 | TD | $2,374 | $1,275 |
| 271 | 6/22/2011 | Wells Fargo | $4,269 | $1,850 |
| 272 | 6/22/2011 | Citizens | $1,345 | $1,025 |
| 273 | 6/22/2011 | TD | $1,735 | $1,325 |
| 274 | 6/24/2011 | Wells Fargo | $3,485 | $2,925 |

| COUNT | DATE | BANK | TOTAL DEPOSIT | AMOUNT OF DEPOSIT IN MONEY ORDERS |
|---|---|---|---|---|
| 275 | 6/24/2011 | Citizens | $1,150 | $975 |
| 276 | 6/24/2011 | TD | $1,285 | $1,125 |
| 277 | 6/27/2011 | Wells Fargo | $2,013 | $850 |
| 278 | 6/27/2011 | Citizens | $1,860 | $1,175 |
| 279 | 6/27/2011 | TD | $1,675 | $1,325 |
| 280 | 6/28/2011 | Wells Fargo | $4,653 | $2,600 |
| 281 | 6/28/2011 | Citizens | $1,733 | $1,000 |
| 282 | 6/28/2011 | TD | $2,495 | $650 |
| 283 | 6/30/2011 | Wells Fargo | $1,911 | $850 |
| 284 | 6/30/2011 | Citizens | $1,185 | $675 |
| 285 | 6/30/2011 | TD | $1,675 | $1,075 |
| 286 | 7/6/2011 | Wells Fargo | $2,325 | $1,100 |
| 287 | 7/6/2011 | Citizens | $2,850 | $1,350 |
| 288 | 7/6/2011 | TD | $1,228 | $800 |
| 289 | 7/7/2011 | Wells Fargo | $3,100 | $1,550 |
| 290 | 7/7/2011 | Citizens | $2,180 | $1,030 |
| 291 | 7/7/2011 | TD | $1,575 | $975 |
| 292 | 7/11/2011 | Wells Fargo | $5,399 | $2,970 |
| 293 | 7/11/2011 | Citizens | $1,535 | $1,025 |
| 294 | 7/11/2011 | TD | $2,012 | $995 |
| 295 | 7/12/2011 | Wells Fargo | $2,368 | $1,175 |
| 296 | 7/12/2011 | Citizens | $1,388 | $975 |
| 297 | 7/12/2011 | TD | $1,917 | $1000 |
| 298 | 7/20/2011 | Wells Fargo | $2,339 | $805 |
| 299 | 7/20/2011 | Citizens | $1640 | $1,000 |
| 300 | 7/20/2011 | TD | $1,395 | $775 |

| COUNT | DATE | BANK | TOTAL DEPOSIT | AMOUNT OF DEPOSIT IN MONEY ORDERS |
|-------|------|------|---------------|-----------------------------------|
| 301 | 7/21/2011 | Wells Fargo | $4,092 | $2,505 |
| 302 | 7/21/2011 | Citizens | $1,219 | $850 |
| 303 | 7/21/2011 | TD | $976 | $675 |
| 304 | 7/22/2011 | Wells Fargo | $2,025 | $1600 |
| 305 | 7/22/2011 | Citizens | $1,135 | $875 |
| 306 | 7/22/2011 | TD | $1,300 | $1000 |
| 307 | 7/26/2011 | Wells Fargo | $4,066 | $1,690 |
| 308 | 7/26/2011 | Citizens | $2,054 | $860 |
| 309 | 7/26/2011 | TD | $1,485 | $1010 |
| 310 | 7/28/2011 | Wells Fargo | $2,649 | $1,650 |
| 311 | 7/28/2011 | Citizens | $2,023 | $1,325 |
| 312 | 7/28/2011 | TD | $1,270 | $1,050 |
| 313 | 8/1/2011 | Wells Fargo | $745 | $525 |
| 314 | 8/1/2011 | Citizens | $1,421 | $1,000 |
| 315 | 8/1/2011 | TD | $1,708 | $1,125 |
| 316 | 8/2/2011 | Wells Fargo | $1,960 | $1,550 |
| 317 | 8/2/2011 | Citizens | $1,375 | $975 |
| 318 | 8/2/2011 | TD | $1,300 | $1000 |
| 319 | 8/4/2011 | Wells Fargo | $1,555 | $825 |
| 320 | 8/4/2011 | Citizens | $870 | $450 |
| 321 | 8/4/2011 | TD | $1,025 | $575 |
| 322 | 8/8/2011 | Wells Fargo | $2,105 | $1,450 |
| 323 | 8/8/2011 | Citizens | $1,325 | $925 |
| 324 | 8/8/2011 | TD | $906 | $425 |

2.      When conducting, aiding, abetting, and willfully causing the financial

transactions described in paragraph 1 above, defendant NORMAN WERTHER knew that the

135

property involved in those financial transactions represented the proceeds of some form of unlawful activity.

3.      The financial transactions described in paragraph 1 above involved the proceeds of a specified unlawful activity, that is, the conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and defendant NORMAN WERTHER acted with that knowledge that the transaction was designed in whole and in part to conceal or disguise the nature, and source, ownership, and control of the proceeds of specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS THREE HUNDRED AND TWENTY-FIVE THROUGH THREE HUNDRED AND FORTY-ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this Indictment:

## BACKGROUND

1.      The Medicaid program was created by the federal government in 1965 under Title XIX of the Social Security Act.  The program was jointly financed by the federal and state governments and administered at the state level.  Medicaid provided health insurance and prescription coverage for many low-income individuals; offered long-term care assistance to individuals over the age of 65 and individuals with disabilities; covered gaps in the Medicare program; and funded institutions that served a disproportionate number of low-income patients with special needs.  The federal government reimbursed states for a portion of the cost of their Medicaid programs depending on the state's per capita income.

2.      These health insurance companies provide for insurance coverage for medically necessary prescriptions for their members.  The Medicaid Managed Care Organizations included Health Partners.  The Medicaid plans and contracts are "health care benefit programs" as defined in 18 U.S.C. § 24(b).

## THE SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

3.      Paragraphs 1 and 3 through 11 and Overt Acts 1 through 90 of Count Forty-Two of this Indictment are realleged here.

137

4.      From in or about February 2009 through in or about June 2009,

defendants ANGEL DUPREY and FERDINAND NIEVES, a/k/a "Fernando," caused claims to

be submitted for payment by Medicaid and health care benefit plans and contracts for

prescriptions for pills each containing oxycodone.  The claims were for prescriptions provided to

individuals who did not have a genuine medical need for the pills prescribed by Norman Werther

and who intended that the prescribed pills would be distributed to others.

5.      Pharmacists filled the fraudulent prescriptions written by Norman Werther

to individuals for pills each containing oxycodone.  The pharmacists billed the individuals'

insurance companies, including Medicaid, for payment for the prescriptions.  Based on the

fraudulent claims that defendant ANGEL DUPREY caused to be submitted to health care benefit

programs, the health care benefit programs made payments to pharmacists in a total amount that

is in excess of  $1300.

6.      On or about each of the dates listed below, in the Eastern District of

Pennsylvania, defendants

**ANGEL DUPREY and
FERDINAND NIEVES,
a/k/a "Fernando,"**

knowingly and willfully executed, and aided and abetted the execution of, a scheme and artifice

to defraud the health care benefit program listed below, and to obtain money and property owned

by and under the custody and control of that health care benefit program by means of false and

fraudulent pretenses, representations, and promises, in connection with the delivery of and

payment for health care benefits, items and services, by submitting and causing to be submitted

fraudulent health care insurance claims for services purportedly provided to the defendants, in the

138

approximate amounts listed below, in connection with the filling of prescriptions which were not

medically necessary, each claim constituting a separate count of this Indictment:

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 325 | 2/18/2009 | ANGEL DUPREY | Health Partners | $5.04 |
| 326 | 3/4/2009 | ANGEL DUPREY | Health Partners | $71.15 |
| 327 | 3/16/2009 | ANGEL DUPREY | Health Partners | $5.04 |
| 328 | 4/20/2009 | ANGEL DUPREY | Health Partners | $106.10 |
| 329 | 5/15/2009 | ANGEL DUPREY | Health Partners | $94.45 |
| 330 | 6/19/2009 | ANGEL DUPREY | Health Partners | $97.10 |
| 331 | 4/23/2009 | FERDINAND NIEVES | Health Partners | $106.10 |
| 332 | 5/23/2009 | FERDINAND NIEVES | Health Partners | $106.10 |
| 333 | 6/19/2009 | FERDINAND NIEVES | Health Partners | $97.10 |
| 334 | 7/21/2009 | FERDINAND NIEVES | Health Partners | $97.10 |
| 335 | 8/19/2009 | FERDINAND NIEVES | Health Partners | $81.13 |
| 336 | 9/18/2009 | FERDINAND NIEVES | Health Partners | $76.25 |
| 337 | 10/15/2009 | FERDINAND NIEVES | Health Partners | $76.25 |
| 338 | 4/3/2010 | FERDINAND NIEVES | Health Partners | $76.25 |
| 339 | 4/30/2010 | FERDINAND NIEVES | Health Partners | $76.25 |
| 340 | 6/4/2010 | FERDINAND NIEVES | Health Partners | $76.25 |
| 341 | 6/30/2010 | FERDINAND NIEVES | Health Partners | $76.25 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS THREE HUNDRED AND FORTY-TWO THROUGH THREE HUNDRED AND SIXTY-EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this Indictment:

## BACKGROUND

1.     The Medicaid program was created by the federal government in 1965 under Title XIX of the Social Security Act.  The program was jointly financed by the federal and state governments and administered at the state level.  Medicaid provided health insurance and prescription coverage for many low-income individuals; offered long-term care assistance to individuals over the age of 65 and individuals with disabilities; covered gaps in the Medicare program; and funded institutions that served a disproportionate number of low-income patients with special needs.  The federal government reimbursed states for a portion of the cost of their Medicaid programs depending on the state's per capita income.

2.     These health insurance companies provide for insurance coverage for medically necessary prescriptions for their members.  The Medicaid Managed Care Organizations included Health Partners.  The Medicaid plans and contracts are "health care benefit programs" as defined in 18 U.S.C. § 24(b).

## THE SCHEME TO DEFRAUD

It was part of the scheme that:

3.     Paragraphs 1 through 12 and 14 through 26 and Overt Acts 1 through 104 of Count One of this Indictment are realleged here.

140

4.        Defendant KIM CARTER and Zaniah Beard, Donald Brown, Andre Dawkins, Evette Gringrow, Leon Harris, Denise Hawkins, Ronnie Jackson, Carla Jenkins, Beatrice Lewis, Michael Littlejohn, Vernell McDaniels, Eric Perry, Mark Reid, Michael Rominiecki, Wayne Rucker, Patricia Simmons, Lawrence Stith, Debra Stukes, Viola Stukes, Steven Thompson, Eric Treadwell, Julia Turner, Geraldine Watkins, and Yolanda Williams (all charged elsewhere) caused claims to be submitted for payment by Medicaid, Medicare, and private insurance companies and health care benefit plans and contracts for prescriptions for pills each containing oxycodone.  The claims were for prescriptions provided to individuals who did not have a genuine medical need for the pills prescribed by Norman Werther and who intended that the prescribed pills would be distributed to others.

8.        Pharmacists filled the fraudulent prescriptions written by Norman Werther to individuals for pills each containing oxycodone.  The pharmacists billed the individuals' insurance companies, including Medicaid, Medicare, and the private health insurance companies for payment for the prescriptions.  Based on the fraudulent claims that defendant KIM CARTER caused to be submitted to health care benefit programs, the health care benefit programs made payments to pharmacists in a total amount that is in excess of $2000.

9.        On or about each of the dates listed below, in the Eastern District of Pennsylvania, defendant

**KIM CARTER**

knowingly and willfully executed, and aided and abetted the execution of, a scheme and artifice to defraud the health care benefit program listed below, and to obtain money and property owned by and under the custody and control of that health care benefit program by means of false and

fraudulent pretenses, representations, and promises, in connection with the delivery of and

payment for health care benefits, items and services, by submitting and causing to be submitted

fraudulent health care insurance claims for services purportedly provided to defendant KIM

CARTER, in the approximate amounts listed below, in connection with the filling of

prescriptions

which were not medically necessary below, each claim constituting a separate count of this

Indictment:

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 342 | 6/9/2009 | KIM CARTER | Health Partners | $106.10 |
| 343 | 7/9/2009 | KIM CARTER | Health Partners | $97.10 |
| 344 | 8/10/2009 | KIM CARTER | Health Partners | $81.13 |
| 345 | 9/10/2009 | KIM CARTER | Health Partners | $76.25 |
| 346 | 10/7/2009 | KIM CARTER | Health Partners | $76.25 |
| 347 | 11/6/2009 | KIM CARTER | Health Partners | $76.25 |
| 348 | 12/7/2009 | KIM CARTER | Health Partners | $76.25 |
| 349 | 1/6/2010 | KIM CARTER | Health Partners | $76.25 |
| 350 | 2/4/2010 | KIM CARTER | Health Partners | $76.25 |
| 351 | 3/1/2010 | KIM CARTER | Health Partners | $76.25 |
| 352 | 3/31/2010 | KIM CARTER | Health Partners | $76.25 |
| 353 | 4/29/2010 | KIM CARTER | Health Partners | $76.25 |
| 354 | 5/28/2010 | KIM CARTER | Health Partners | $76.25 |
| 355 | 6/28/2010 | KIM CARTER | Health Partners | $76.25 |
| 356 | 7/27/2010 | KIM CARTER | Health Partners | $76.25 |

| COUNT | APPROXIMATE DATE OF CLAIM | PSEUDO-PATIENT/ HEALTH CARE BENEFIT PROGRAM BENEFICIARY | HEALTH CARE BENEFIT PROGRAM | APPROXIMATE AMOUNT PAID BY HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|
| 357 | 8/31/2010 | KIM CARTER | Health Partners | $76.25 |
| 358 | 9/28/2010 | KIM CARTER | Health Partners | $76.25 |
| 359 | 10/27/2010 | KIM CARTER | Health Partners | $76.25 |
| 360 | 11/29/2010 | KIM CARTER | Health Partners | $76.25 |
| 361 | 12/27/2010 | KIM CARTER | Health Partners | $76.25 |
| 362 | 1/26/2011 | KIM CARTER | Health Partners | $76.25 |
| 363 | 2/25/2011 | KIM CARTER | Health Partners | $76.25 |
| 364 | 3/28/2011 | KIM CARTER | Health Partners | $76.25 |
| 365 | 4/28/2011 | KIM CARTER | Health Partners | $76.25 |
| 366 | 5/23/2011 | KIM CARTER | Health Partners | $59.75 |
| 367 | 6/23/2011 | KIM CARTER | Health Partners | $53.27 |
| 368 | 7/22/2011 | KIM CARTER | Health Partners | $59.05 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 21, United States Code, Sections 846

and 841(a)(1) set forth in this Indictment, defendants

**NORMAN WERTHER,**
**KIM CARTER,**
**ANGEL DUPREY,**
**FERDINAND NIEVES,**
**ANTHONY DIPASQUALE,**
**TROY BRINKLEY,**
**a/k/a "Shyheed,"**
**EDWARD JACKSON,**
**a/k/a "Quill,"**
**EDWARD DOMINICK, SR.,**
**a/k/a "Kev,"**
**a/k/a "Uncle Eddie"**
**FREDERICK KELSEY,**
**a/k/a "Charles Johnson,"**
**a/k/a "Omar,"**
**KYLE JONES,**
**ALI ARMSTEAD,**
**TERRELL JACKSON,**
**BERNARD JACKSON, and**
**RONALD CAMPBELL**

shall forfeit to the United States of America:

(a)      any property used or intended to be used, in any manner or part, to

commit, or to facilitate the commission of, such offenses;

(b)      any property constituting, or derived from, proceeds obtained

directly or indirectly from the commission of such offenses, including, but not limited to:

144

I.      A sum of money equal to at least $5,000,000 in United States currency, representing the amount of proceeds obtained as a result of the conspiracy to violate the Controlled Substances Act, for which the defendants are jointly and severally liable;

ii.      All funds in Citizens Bank Account Number xxxxxx6043 (approximately $36,108.38) titled to PHL Compcare, LLC and defendant NORMAN WERTHER, MD;

iii.      All funds in Wells Fargo Bank Account Number xxxxxxxxx3631 (approximately $25,958.00) titled to PHL Compcare, LLC, E____ K. W_____;

iv.      All funds in TD Bank Account Number xxxxxx2753 (approximately $33,203.38) titled to defendant NORMAN WERTHER, MD, LLC;

v.      The real property known as 740 Welsh Road, Horsham, Pennsylvania 19044, but also known as 888 Welsh Road, Horsham, Pennsylvania 19044 and recorded on the same book and page in the Recorder of Deeds Office;

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant(s):

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of the defendant(s) up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL:

_____

**GRAND JURY FOREPERSON**

**LOUIS D. LAPPEN**
**Attorney for the United States,**
**Acting Under Authority Conferred by 28 U.S.C. §515**

_____

**LOUIS D. LAPPEN**
**FIRST ASSISTANT UNITED STATES ATTORNEY**

146